# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Howard Kenneth Shapiro** | ) | |
| **Plaintiff** | ) | |
| | ) | **CIVIL ACTION NO.** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | |
| | ) | COMPLAINT FOR BREACH OF |
| Secant Pharma, L.L.C.    ) | | CONTRACT AND COMPLAINT |
| Defendant | ) | FOR DAMAGES |
| | ) | |
| | ) | Title 18 U.S.C. § 2, § 1962(d), § 1341, |
| | ) | § 1346, § 1708, § 1956 and § 2314, |
| | ) | and Title 26 U.S.C. § 7206 |

## COMPLAINT

1

COMES NOW Howard Kenneth Shapiro, plaintiff in the above entitled case, Citizen of Pennsylvania, to file this, his COMPLAINT FOR BREACH OF CONTRACT AND COMPLAINT FOR DAMAGES, and to provide formal Notice to all interested Party(s) of same.

Plaintiff hereby charges the following named corporation and individuals acting on behalf thereof with the corresponding criminal violations enumerated *infra* and seeks relief from the Federal District Court for the Eastern District of Pennsylvania based thereon. As the plaintiff is, in part, alleging <u>fraud</u>, the plaintiff is hereby pleading the <u>facts</u> of the alleged fraud with particularity. (FRCP 9(b)).

**Federal Jurisdiction of the Present Civil Lawsuit**

In the present civil lawsuit complaint, the plaintiff petitions for redress of grievances in Federal District Court on the grounds that a contract has been materially violated by the alleged commission of criminal acts that were (1) dependant upon use of United States government documents, namely, United States Patents, and (2) were dependant upon and affected interstate commerce. The plaintiff alleges that the two executives who control Secant Pharma, LLC have engaged in a pattern of violation of Federal laws that includes violation of Title 18 U.S.C. § 1962(d), Title 18 U.S.C. § 1341, Title 18 U.S.C. § 1346, Title 18 U.S.C. § 1708, Title 18 U.S.C. § 1956, Title 18 U.S.C. § 2314, Title 18 U.S.C. § 2, and Title 26 U.S.C. § 7206. Furthermore, although the plaintiff, the defendant corporation and Dale M. Lombardi all reside somewhere in Southeast Pennsylvania, Richard DiRocco resides in New Jersey. Hence, these grounds form the basis for jurisdiction of the present civil lawsuit in the United States District Court for the District of Eastern Pennsylvania.

**Non-Applicability of Previous Contractual Mandatory Arbitration Requirements**

Although the plaintiff has attempted to reach an out of court settlement with the defendant corporation as represented by Mr. Lombardi and Mr. DiRocco, the plaintiff's detailed and good faith effort has failed. Attachments B and J are contracts involving patents between the plaintiff and Secant Pharma, LLC that include terms of mandatory arbitration. Two sections of Federal law provide a basis for the plaintiff's present claim of non-applicability of mandatory arbitration.

The first relevant section is Title 9 U.S.C. § 2 (Validity, irrevocability, and enforcement of agreements to arbitrate). This states in part, "A written provision in…a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal,

2

shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract* (emphasis added)."

The second section of Federal law that provides a basis for the plaintiff's present claim of non-applicability of mandatory arbitration is Title 35 U.S.C. § 294 (Voluntary arbitration). This Federal law states in part "(a) A contract involving a patent or any right under a patent may contain a provision requiring arbitration of any dispute relating to patent validity or infringement arising under the contract. In the absence of such a provision, the parties to an existing patent validity or infringement dispute may agree in writing to settle such dispute by arbitration. Any such provision or agreement shall be valid, irrevocable, and enforceable, *except for any grounds that exist at law or in equity for revocation of a contract* (emphasis added)." The plaintiff presently maintains that his rights as a patent inventor have been infringed upon by way of a racketeering scheme committed by Mr. Lombardi and Mr. DiRocco. On August 17, 2009 the plaintiff filed an Affidavit for Redress of Grievances at the Office of the United States Attorney for the District of Eastern Pennsylvania that alleges criminal conduct by Mr. Lombardi and Mr. DiRocco based on alleged violations of Federal law. Said alleged violations of Federal law constitute a form of infringement upon the plaintiff's original patent rights as assigned to Secant Pharma, LLC. On these grounds the plaintiff maintains that a requirement for mandatory arbitration does not supercede the present civil lawsuit.

**Summary of Civil Lawsuit Complaint**

On the following grounds, the plaintiff alleges that material violations of the previously reached contractual agreements between the plaintiff and Secant Pharma, LLC as embodied in Attachments B and J have occurred, i.e., breaches of contract, and the plaintiff hereby prays that the *United States District Court for the Eastern District of Pennsylvania* will accordingly determine that said previously reached contractual agreements are null and void.

In the present civil lawsuit complaint, the plaintiff presents particular evidence that the executives of Secant Pharma, LLC in the personages of Mr. Lombardi and Mr. DiRocco have committed material violations of their contractual obligations to the plaintiff, i.e., breaches of contract. Said material violations of contract terms include acts of fraud committed against the plaintiff with knowledge of their falsity by Mr. Lombardi and Mr. DiRocco. The plaintiff's evidence shows a criminal pattern of conduct by Mr. Lombardi and Mr. DiRocco, as summarized below in the completely restated text of the plaintiff's Affidavit for Redress of Grievances as filed on 8-17-09. On these grounds, the plaintiff requests a redress of grievances by the *United States District Court for the Eastern District of Pennsylvania*, so as to nullify all of the plaintiff's contractual agreements with Secant Pharma, LLC, return to the plaintiff the ownership of the intellectual property that the plaintiff assigned to Secant Pharma, LLC on 3-17-06, and otherwise grant the plaintiff's present requests of the Court for damages.

3

Plaintiff hereby formally charges:

**Particular Aspects of the Alleged Racketeering Scheme and Other Alleged Crimes as Cited Herein as Material Breaches of Contract**

The following text is a quoted complete recitation of the Affidavit for Redress of Grievances on which the present civil lawsuit complaint is based.  For the filing of the Affidavit for Redress of Grievances at the Office of the United States Attorney for the District of Eastern Pennsylvania, appendix documents were referred to as "Attachments."  However, with respect to convention of the United States District Court for the Eastern District of Pennsylvania, in the present civil lawsuit complaint said mentioned "Attachments" refer to the corresponding "Exhibits" as attached hereto.  So, for example, Attachment A of the plaintiff's Affidavit for Redress of Grievances as filed at the Office of the United States Attorney for the District of Eastern Pennsylvania is represented herein as Exhibit A.

Affidavit for Redress of Grievances
Submitted to
Richard Zack, Chief of the Fraud Section
United States Attorney's Office for the Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476

DATE FILED:    August 17, 2009

COMPLAINANT: Howard Kenneth Shapiro
                             214 Price Avenue, Apt. F-32
                             Narberth, PA 19072

DEFENDANTS:   Dale M. Lombardi
                             907 Edgewood Lane [business address]
                             Langhorne, PA 19053
                             [home address unknown]

                             and

                             Richard DiRocco
                             41 Probasco Drive [home address]
                             Allentown, NJ 08501

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief, and hereby petition for redress of grievances.

4

**COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSES OR VIOLATIONS:**

The complainant alleges that a documented record exists which supports a Title 18 U.S.C. § 1962(d) indictment of the defendants, Dale M. Lombardi and Richard DiRocco, based on their running an organized crime syndicate. Application of Title 18 U.S.C. § 1962(d) to the present Affidavit is based on (1) there being more than one defendant, (2) the defendants conspiring with one another to commit various crimes, (3) the two defendants' use of an enterprise, i.e., their executive control of Secant Pharma, LLC, as a mechanism for the execution of their crimes, (4) the defendants having violated Federal law that regulates interstate commerce, and (5) the defendants having stolen from the complainant more than ten thousand dollars.

From on or about September 26, 2007 to the present, in Langhorne and elsewhere, the defendants unlawfully and willfully devised a scheme to defraud and obtain money by means of false or fraudulent pretenses and representations, and for the purpose of executing the scheme to defraud knowingly caused to be delivered to the complainant, Howard K. Shapiro, by U.S. Mail and electronic mail statements which falsely represented the defendants' conduct regarding the distribution of license royalty payments received via United States Postal Service mail or commercial interstate carrier and their claimed authority. The defendants received royalty payments from third party licensees via United States Postal Service or commercial interstate carrier, and then conspired to defraud the complainant out of part of his rightfully due share of said royalty income. The complainant alleges that these acts violated Title 18 U.S.C. § 1341, § 1346 and § 1708.

As available documents indicate that on or about 9-26-07 and on or about 8-22-08 defendant Lombardi did embezzle and then fraudulently transfer across state line from Pennsylvania to New Jersey royalty income rightfully due to the complainant to the personal bank account of defendant DiRocco on the pretext that said fraudulently transferred royalty income was Secant Pharma, LLC and/or its subsidiary SylvanLabs, LLC management fee compensation, the complainant alleges that said transfers across state line constituted violations of Title 18 U.S.C. § 2314.

The complainant provides reasonable grounds, to the best that available enterprise records provided to him allow, for alleging that the defendants claimed in their respective Federal personal income tax returns for 2007 and 2008 income received from Secant Pharma, LLC or its subsidiary SylvanLabs, LLC which in part was stolen royalty income rightfully due to the complainant, in violation of Title 26 U.S.C. § 7206(1). The complainant alleges that this process of officially classifying and declaring embezzled money as legitimate "management fees" constituted a form of money laundering, in violation of Title 18 U.S.C. § 1956.

The complainant alleges that insofar as the racketeering scheme of the defendants involves their stealing money obtained from third parties based on the

5

licensing of intellectual property rights embodied in three United States Patents, the defendants' acts involve use of United States documents in the perpetuation of their alleged racketeering scheme, in violation of Title 18 U.S.C. § 2.

As noted on the Internet web site for the United States Attorney's Office for the Eastern District of Pennsylvania, "In addition to laws prohibiting specific unlawful activity, broad federal statutes protect against fraud, making any fraudulent scheme a federal crime if the United States mail or a courier service is used in its commission, or if interstate wire transfers, telephone calls, fax transmissions, e-mails or other interstate communications are used in the fraud."   The complainant presently submits a detailed explanation of his complaint and submits copies of the written documents that support his view.

**ALLEGED VIOLATIONS:**
Title 18 U.S.C. § 1962(d) (Conspiracy to participate in a racketeering enterprise)
Title 18 U.S.C. § 1341 and § 1346 (Frauds and swindles, i.e., mail fraud)
Title 18 U.S.C. § 1708 (Theft or receipt of stolen mail matter generally)
Title 18 U.S.C. § 1956 (Laundering of monetary instruments)
Title 18 U.S.C. § 2314 (Transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting)
Title 26 U.S.C. § 7206 (Tax return fraud and false statements)
Title 18 U.S.C. § 2 (Principals/aiding and abetting)

**PROPOSED COUNT ONE**
**CONSPIRACY TO PARTICIPATE IN A RACKETEERING (RICO) ENTERPRISE**
**18 U.S.C. § 1962(d)**
**THE COMPLAINANT CHARGES THAT:**
THE RACKETEERING CONSPIRACY
1.    From a time of on or about 9-26-07 to the present, in the Eastern District of Pennsylvania, and elsewhere, defendants

Dale M. Lombardi

and

Richard DiRocco

being the executives who control Secant Pharma, LLC, which is engaged in, and the activities of which affected, interstate commerce, conspired and agreed with each other to violate Title 18, United States Code, Section 1962(c), that is, to knowingly and unlawfully conduct and participate, directly and indirectly, in the conduct of the affairs of the executive control Secant Pharma, LLC through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which consisted of multiple acts that are indictable under Title 18, United States Code, Section 1956 (the laundering of monetary instruments), by conducting and attempting to conduct financial transactions which involve the proceeds of specified unlawful activity, that is, repeated theft of royalty income, knowing that these financial transactions represent

6

some form of unlawful activity, and knowing that the transactions are designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

## THE RACKETEERING ENTERPRISE

At all times material to this proposed indictment:

**2.** The defendants are voting rights Members and Managers of Secant Pharma, LLC. Their executive control of Secant Pharma, LLC is the alleged racketeering enterprise. They have vested all executive authority of Secant Pharma, LLC in themselves. At all times material to this proposed indictment, defendant Lombardi and defendant DiRocco each owned a forty-two and one-quarter percent (42.25%) member equity interest in Secant Pharma, LLC. At all times material to this proposed indictment, defendant Lombardi was the Chief Executive Officer of Secant Pharma, LLC. At all times material to this proposed indictment, defendant DiRocco was the Vice President of Secant Pharma, LLC, the Chief Scientific Officer of Secant Pharma, LLC and the Chief Executive Officer of SylvanLabs, LLC, a subsidiary wholly owned by Secant Pharma, LLC.

**3.** The executive leadership of Secant Pharma, LLC in the personage of defendants Lombardi and DiRocco, constituted an enterprise, as that term is defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose participants in the personage of defendants Lombardi and DiRocco functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

**4.** This enterprise in the personage of defendants Lombardi and DiRocco was engaged in, and its activities affected, interstate commerce, and functioned as follows: Secant Pharma, LLC received financial compensation in the form of royalty payments based on the licensing of intellectual property to third parties located outside Pennsylvania and then during 2007 – 2009 the enterprise proceeded to defraud the complainant out of half of the complainant's rightfully due royalty payments from Secant Pharma, LLC and to divert said defrauded complainant's rightfully due royalty payments to the personal income of the defendants. Said third parties, understood by the complainant to be completely innocent, are Zylera Pharmaceuticals, LLC and Altheus Therapeutics, Inc.

## PURPOSE OF THE ENTERPRISE

**5.** It was a purpose of the enterprise in the personage of defendants Lombardi and DiRocco that it would obtain money, enrich both defendants, and generate revenue for the enterprise by committing criminal acts, consisting defrauding the complainant out of half of the complainant's rightfully due royalty payments during 2007 – 2009 in the Eastern District of Pennsylvania, and elsewhere.

7

## MANNER AND MEANS OF THE ENTERPRISE

**6.**     The manner and means used by the enterprise to further its goals and achieve its purposes included the following:

**(1)**  The complainant has reason to believe that half of the rightfully due royalty payments that were withheld by defendant Lombardi and defendant DiRocco were diverted to the personal possession of said defendants and were otherwise used at the discretion of the defendants for operation of the enterprise.

**(2)**  When the complainant exercised his rights as a Manager of Secant Pharma, LLC and notified defendant Lombardi requiring that defendant Lombardi provide the complainant with a complete set of all Secant Pharma, LLC Federal and Pennsylvania state tax report forms for 2007, defendant Lombardi only provided a limited and incomplete selection of said tax report forms.  Said limited and incomplete tax report forms were selected so as to deliberately withhold from the complainant any detailed and particular information regarding financial compensation received by the two defendants from Secant Pharma, LLC.

**(3)**  When the complainant exercised his rights as a Manager of Secant Pharma, LLC and notified defendant Lombardi requiring that defendant Lombardi provide the complainant with a complete set of all 2007-2008 escrow bank account monthly statements for the account having royalty payment compensation received by Secant Pharma, LLC from Zylera, LLC, defendant Lombardi refused to provide copies of said escrow bank account records to the complainant.

**(4)**  In a further manner and means of the enterprise, when the complainant exercised his rights as a Manager of Secant Pharma, LLC and notified defendant Lombardi requiring that defendant Lombardi provide the complainant with a complete set of all Secant Pharma, LLC 2007 and 2008 Federal and Pennsylvania state tax report forms and provide the complainant with a complete set of all 2007-2008 escrow bank account monthly statements, defendants Lombardi and DiRocco proceeded to conspire to pass an *ad hoc* Secant Pharma voting rights Member resolution on March 30, 2009 that purported to remove the complainant as a Secant Pharma, LLC Manager.

**(5)**  When defendants Lombardi and DiRocco proceeded to conspire to pass an *ad hoc* Secant Pharma voting rights Member resolution on March 30, 2009 that purported to remove the complainant as a Secant Pharma, LLC Manager, they failed to provide the complainant with notification in advance of their meeting, as required by term of contract (Attachment B, page 4, Section 5.4).  Accordingly, the resolution on March 30, 2009 that removed the complainant as a Secant Pharma, LLC Manager is *prima facie* without legal standing.

**(6)**  Defendants Lombardi and DiRocco allegedly engaged in monetary transactions of criminally derived property in a value equal or greater than $$13,219.34, which property was in the form of royalty income illegally diverted for their own personal use.

8

**THE DEFENDANTS AND THEIR ALLEGED ROLES IN THE ENTERPRISE**

**7.**    The defendants' alleged roles in the enterprise are as follows:

**(1)**  Defendant Lombardi is a voting rights Member of Secant Pharma, LLC.  At all times material to this proposed indictment, defendant Lombardi owned a forty-two and one-quarter percent (42.25%) member equity interest in Secant Pharma, LLC.  At all times material to this proposed indictment, defendant Lombardi was the Chief Executive Officer of Secant Pharma, LLC.

**(2)**  Defendant DiRocco is a voting rights Member of Secant Pharma, LLC.  At all times material to this proposed indictment, defendant DiRocco owned a forty-two and one-quarter percent (42.25%) member equity interest in Secant Pharma, LLC.  At all times material to this proposed indictment, defendant DiRocco was the Vice President of Secant Pharma, LLC, Chief Scientific Officer of Secant Pharma, LLC and Chief Executive Officer of SylvanLabs, LLC, a subsidiary wholly owned by Secant Pharma, LLC.

**8.**    The complainant alleges that the defendants conspired to abuse their managerial authority so as to steal half of the royalty-based financial compensation rightfully due to the complainant during 2007 – 2009 and to divert some portion of said diverted financial compensation to their own personal possession.

**THE AGREEMENT**

**9.**    It was a part of the conspiracy that each defendant agreed to conspire with the other so as to steal financial compensation rightfully due to the complainant from income received by Secant Pharma, LLC based on interstate commerce.

**OVERT ACTS**

**10.**    On 5-3-06, defendant Lombardi personally signed a legally binding contract with the complainant that stated in part that, in return for having assigned ownership of intellectual property to Secant Pharma, LLC (see Appendices dated 3-17-06 to Attachment A), the complainant would receive royalty compensation at a rate of twenty percent of royalty payment received from a licensing third party (Attachment A).  The complainant's acts of assignment of patent rights was also acknowledged in Schedule I of Attachment B, which was also personally signed by both defendants Lombardi and DiRocco as well as by the complainant.  At first, during 2006 the defendants complied with their contractual obligation to compensate the complainant at a royalty rate of twenty percent (Attachments C, D, E, F, G, H, and I).  Yet, subsequently during 2007 - 2009 the defendants conspired to defraud the complainant out of half of the royalty payments rightfully due to the complainant.  In furtherance of the conspiracy, and to effect the objects and purposes thereof, the defendants committed various overt acts, including but not limited to the following:

**(1)**  On or about 9-26-07, in the Eastern District of Pennsylvania, defendant Lombardi defrauded the complainant out of $7,500.00 of rightfully due royalty payment (Attachments L, M, and N).  From a royalty payment received by Secant Pharma, LLC

from Altheus Therapeutics, Inc. in the amount of $75,000.00, defendant Lombardi provided the complainant with a royalty payment of $7,500.00 (i.e., 10%), when in fact Secant Pharma, LLC owed the complainant a royalty payment of $15,000.00 (i.e., 20%).

**(2)**  On 4-13-08, in the Eastern District of Pennsylvania, defendant Lombardi personally signed Attachment N (Year 2007 IRS Form 1065 "U.S. Return of Partnership Income" for SylvanLabs, LLC).  In this document on the page entitled "SYLVANLABS, LLC (Financial Statement for fiscal year 2007)" is the statement in the "Expenses" section that notes "Mgmt. Consultants 48,427.00."  Defendants Lombardi and DiRocco have refused to provide the complainant with their respective IRS Schedule K-1 (Form 1065) statements.  Said Federal tax forms would document exactly how much of said "Mgmt. Consultants" compensation each of the defendants personally received.  As the complainant understands that during 2007 that Secant Pharma, LLC only received income based on license agreements dependent upon the intellectual property assigned to it by the complainant, than management fees awarded by the defendants to themselves could have only been derived from incoming license royalty payments from third parties.  In the complainant's view, there is probable cause to believe that some portion of wrongfully withheld royalty payments due to the complainant was diverted to personal income of the defendants.

**(3)**  On 4-13-08, in the Eastern District of Pennsylvania, defendant Lombardi personally signed Attachment O (Year 2007 Form PA-20S/PA-65 "PA S Corporation/Partner-ship").  In this document on the page entitled "Pa Schedule E "Rents and Royalty" for SylvanLabs, LLC is the statement in the "Expenses" section that notes "7.  Manage-ment fees 48,427.00."  Defendants Lombardi and DiRocco have refused to provide the complainant with their respective Pennsylvania state PA Schedule RK-1 and PA Schedule NRK-1 statements.  Said Pennsylvania state tax forms would document exactly how much of said "management fees" compensation each of the defendants personally received.  As the complainant understands that during 2007 that Secant Pharma, LLC only received income based on license agreements dependent upon the intellectual property assigned to it by the complainant, than management fees awarded by the defendants to themselves could have only been derived from incoming license royalty payments from third parties.  In the complainant's view, there is probable cause to believe that some portion of wrongfully withheld royalty payments due to the complainant was diverted to personal income of the defendants.

**(4)**  On or about 4-1-09, in the Eastern District of Pennsylvania, defendant Lombardi provided the complainant with a signed letter dated 3-31-09 (Attachment FF).  This letter stated in part the following.  "I have also enclosed several other attachments for your files: -A hard-copy of your IRS form K-1 for 2008 to be used when filing your taxes for calendar year 2008, -A copy of both of the Federal tax forms as filed for Secant Pharma and SylvanLabs for calendar year 2007, -A copy of both of the tax forms as filed with the State of Pennsylvania for Secant Pharma and SylvanLabs for calendar

10

year 2007." However, the complainant presently notes that the Federal (Attachment N) and state (Attachment O) 2007 tax records provided by defendant Lombardi were selectively incomplete [see immediately above, points (2) and (3)]. Defendant Lombardi noted at the bottom of his 3-31-09 letter to the complainant that defendant DiRocco was copied on this letter. This is *prima facie* evidence that defendant DiRocco has colluded with defendant Lombardi so as to withhold company records that would further define their diversion of royalty income away from the complainant and to the defendants. The complainant is of the view that the defendants' acts of deliberately withholding documentation regarding their income from SylvanLabs, LLC during 2007 was a deliberate attempt on their part to further deceive the complainant as to their misappropriation of company assets. The defendants' acts of deliberately withholding documentation regarding their income from SylvanLabs, LLC during 2007 is additionally untenable in light of the complainant's status as the Corporate Officer Secretary of Secant Pharma, LLC (see Attachment P). The defendants' acts of deliberately withholding documentation regarding their income from SylvanLabs, LLC during 2007 is additionally untenable in light of the fact that corresponding records for year 2006 were willingly provided to the complainant by defendant Lombardi, even though in 2006 the complainant was a nonvoting Member of Secant Pharma, LLC and did not request a full set of 2006 Federal and state tax reports.

**(5)** On or about 8-22-08, in the Eastern District of Pennsylvania, defendant Lombardi defrauded the complainant out of $5,000.00 of rightfully due royalty payment (Attachments L, R, and S). From a royalty payment received by Secant Pharma, LLC from Altheus Therapeutics, Inc. in the amount of $50,000.00, defendant Lombardi provided the complainant with a royalty payment of $5,000.00 (i.e., 10%), when in fact Secant Pharma, LLC owed the complainant a royalty payment of $10,000.00 (i.e., 20%).

**(6)** In the complainant's USPS Certified Mail letter number 7005-1160-0004-0651-6435 mailed 2-2-09 and delivered to defendant Lombardi on 2-6-09 (Attachment U), the complainant instructed defendant Lombardi to provide copies of any and all email or written letter communications between said defendant and/or any other designated representative of Secant and representatives of TRx/Zylera Pharmaceuticals LLC/David Preston regarding the TRx/Zylera Pharmaceuticals LLC/David Preston alleged payment to Secant of $4,700 as a royalty payment for the fourth quarter of 2008. Under terms of Sections 8.1 and 19.1 of Attachment A, in light of the complainant's status as a Secant Pharma, LLC Manager [Section 9.1(a) of Attachment J], under terms of Section 9.1(d) of Attachment J, and in light of the complainant's status as the Corporate Officer Secretary of Secant Pharma, LLC (see Attachment P), the complainant was fully within his rights to make such a request, and defendant Lombardi was fully obligated to comply. Attachment J was personally signed by defendants Lombardi and DiRocco as well as by the complainant. However, as of the time of filing this Affidavit, defendant Lombardi has completely failed to comply with the complainant's request. Defendant Lombardi's refusal to comply with the complainant's

11

*bona fide* request for said records serves to document the ongoing nature of the pattern of racketeering activity.

**(7)**  In the complainant's USPS Certified Mail letter number 7005-1160-0004-0651-6435 mailed 2-2-09 and delivered to defendant Lombardi on 2-6-09 (Attachment U), the complainant also instructed defendant Lombardi to provide copies of any and all email or written letter communications between said defendant and/or any other designated representative of Secant and representatives of Altheus Therapeutics, Inc. regarding the delay in the milestone royalty payment that previously was anticipated to be forthcoming in either February of March of this year.  Under terms of Sections 8.1 and 19.1 of Attachment A, in light of the complainant's status as a Secant Pharma, LLC Manager [Section 9.1(a) of Attachment J], under terms of Section 9.1(d) of Attachment J, and in light of the complainant's status as the Corporate Officer Secretary of Secant Pharma, LLC (see Attachment P), the complainant was fully within his rights to make such a request, and defendant Lombardi was fully obligated to comply.  However, as of the time of filing this Affidavit, defendant Lombardi has completely failed to comply with the complainant's request.  Defendant Lombardi's refusal to comply with the complainant's *bona fide* request for said records serves to document the ongoing nature of the pattern of racketeering activity.

**(8)**  In the complainant's USPS Certified Mail letter number 7005-1160-0004-0651-6435 mailed 2-2-09 and delivered to defendant Lombardi on 2-6-09 (Attachment U), the complainant also instructed defendant Lombardi to provide "copies of any and all written letter and email communications either received from TRx/Zylera Pharmaceuticals LLC/David Preston or Altheus, on one hand, and Secant, on the other."  Under terms of Sections 8.1 and 19.1 of Attachment A, in light of the complainant's status as a Secant Pharma, LLC Manager [Section 9.1(a) of Attachment J], under terms of Section 9.1(d) of Attachment J, and in light of the complainant's status as the Corporate Officer Secretary of Secant Pharma, LLC (see Attachment P), the complainant was fully within his rights to make such a request, and defendant Lombardi was fully obligated to comply.  However, as of the time of filing this Affidavit, defendant Lombardi has completely failed to comply with the complainant's request. Defendant Lombardi's refusal to comply with the complainant's *bona fide* request for said records serves to document the ongoing nature of the pattern of racketeering activity.

**(9)**  In the complainant's USPS Certified Mail letter number 7005-1160-0004-0651-6435 mailed 2-2-09 and delivered to defendant Lombardi on 2-6-09 (Attachment U), the complainant also instructed defendant Lombardi to provide "any and all email or written letter communications between TRx/Zylera Pharmaceuticals LLC/David Preston or Altheus, on one hand, and Secant, on the other regarding any anticipated or received future payments, such as future quarterly royalty payments from TRx/Zylera Pharmaceuticals LLC/David Preston or future milestone royalty payments from Altheus."  Under terms of Sections 8.1 and 19.1 of Attachment A, in light of the complainant's status as a Secant Pharma, LLC Manager [Section 9.1(a) of Attachment

J], under terms of Section 9.1(d) of Attachment J, and in light of the complainant's status as the Corporate Officer Secretary of Secant Pharma, LLC (see Attachment P), the complainant was fully within his rights to make such a request, and defendant Lombardi was fully obligated to comply.  However, as of the time of filing this Affidavit, defendant Lombardi has neither provided the complainant with a copy of a single such communication, if any exist, nor indicated his willingness to comply with the request of the complainant in the future, as such records come into existence.  Defendant Lombardi's refusal to respond to this *bona fide* request of the complainant for said records on an ongoing basis serves to document the ongoing nature of the pattern of racketeering activity.

**(10)**  In the complainant's USPS Certified Mail letter number 7005-1160-0004-0651-6435 mailed 2-2-09 and delivered to defendant Lombardi on 2-6-09 (Attachment U), the complainant also instructed defendant Lombardi that "I am presently requesting that on any such future communications between TRx/Zylera Pharmaceuticals LLC/David Preston or Altheus, on one hand, and Secant, on the other that I be formally copied on the original documents themselves and that any such documents be forwarded to my attention without delay."  Under terms of Sections 8.1 and 19.1 of Attachment A, in light of the complainant's status as a Secant Pharma, LLC Manager [Section 9.1(a) of Attachment J], under terms of Section 9.1(d) of Attachment J, and in light of the complainant's status as the Corporate Officer Secretary of Secant Pharma, LLC (see Attachment P), the complainant was fully within his rights to make such a request, and defendant Lombardi was fully obligated to comply.  However, as of the time of filing this Affidavit, defendant Lombardi has neither provided the complainant with a copy of a single such communication, if any exist, nor indicated his willingness to comply with the request of the complainant in the future, as such records come into existence.  Defendant Lombardi's refusal to respond to this *bona fide* request of the complainant for said records on an ongoing basis serves to document the ongoing nature of the pattern of racketeering activity (see paragraph 1 of Attachment X).

**(11)**  In the complainant's USPS Certified Mail letter number 7005-1160-0004-0651-6435 mailed 2-2-09 and delivered to defendant Lombardi on 2-6-09 (Attachment U), the complainant also informed defendant Lombardi that "Henceforth, I am not willing to accept your policy of selectively keeping me informed on such matters in the form of unscheduled telephone calls at your discretion, wherein you tell me only what you feel like telling me and you provide me with little or no third party documentation."  Yet, as noted in Attachment V, defendant Lombardi has continued to state his personal priority for communications with the complainant via telephone calls.  Such telephone calls would not provide the complainant with the opportunity to have the communications witnessed by one or more third parties trusted by the complainant, which defendant Lombardi fully understands.  Defendant Lombardi's repeatedly stated preference for unwitnessed telephone call conversations with the complainant serves to document the defendant's preference for as little permanent record of communication with the complainant as possible and the ongoing nature of the pattern of racketeering activity.

13

**(12)**  In the complainant's USPS Certified Mail letter number 7005-1160-0004-0651-6435 mailed 2-2-09 and delivered to defendant Lombardi on 2-6-09 (Attachment U), the complainant also informed defendant Lombardi that "Furthermore, I am presently instructing you or other Secant representatives to henceforth not communicate with me via unscheduled telephone calls… I am presently requesting that you respond to this communication in a written and signed letter that is mailed to me via USPS Certified Mail or comparable private mail service."

**(13)**  In response to the complainant's USPS Certified Mail letter number 7005-1160-0004-0651-6435 mailed 2-2-09 and delivered to defendant Lombardi on 2-6-09 (Attachment U), defendant Lombardi engaged in an unscheduled telephone call to the complainant's cell phone number on 2-6-09, where defendant left a voicemail message (Attachment V).  In doing so, defendant Lombardi directly contradicted the complainant's *bona fide* instructions [see immediately above, point (12)].  Defendant Lombardi stated in part "I just wanted to respond to your letter.  I know you said not to call you."  In doing so, defendant Lombardi deliberately engaged in a form of communication that selectively minimized the complainant's opportunity to preserve a record of defendant Lombardi's statements.  To preserve said record, the complainant was obligated to first re-record defendant Lombardi's voicemail statement with a tape recorder, then use the saved tape recording to type out a complete transcript.  As the complainant has a muscular dystrophy-type physical disability (i.e., peroneal muscular atrophy, also known as Charcot-Marie-Tooth disease), the process of preparing such a typed transcript from a tape recording is both physically difficult and time-wasting for the complainant.  That defendant Lombardi would use such a voicemail message to communicate, rather than the written response instructed by the complainant [see immediately above, point (12)], is further evidence of the ongoing nature of the pattern of racketeering activity.

Defendant Lombardi concluded his voicemail message of 2-6-09 by stating "So, give me a call, because you will not get any other response from me on this matter."  This statement by defendant Lombardi was in direct violation of Sections 8.1 and 19.1 of Attachment A, was a violation of the complainant's rights as a Secant Pharma, LLC Manager [Section 9.1(a) of Attachment J], was in direct violation of Section 9.1(d) of Attachment J, and was a violation of the complainant's rights as the Corporate Officer Secretary of Secant Pharma, LLC (see Attachment P), thereby providing further evidence of the ongoing nature of the pattern of racketeering activity.

**(14)**  In defendant Lombardi's voicemail message to the complainant on 2-6-09 (Attachment V), defendant Lombardi stated in part "You better call me back, because I am not responding to your letter by mail, by email, or by any other way.  If you wanna sue me, fine…Let me tell you what we are required to give you.  Nothing!  Only thing we are required to give you is a royalty report on any cash we bring in.  We do not under any circumstances have to give you any information on the business dealings of the company.  And that includes our deals with Altheus and Zylera, or TRx.  All we have, all our obligations is based on money, royalties, and that's it.  When we get a

14

royalty report, you get a copy of it and you get whatever money comes to you.  So, if you got a problem with all of that, you know what your options are."  Under terms of Sections 8.1 and 19.1 of Attachment A, in light of the complainant's status as a Secant Pharma, LLC Manager [Section 9.1(a) of Attachment J], under terms of Section 9.1(d) of Attachment J, and in light of the complainant's status as the Corporate Officer Secretary of Secant Pharma, LLC (see Attachment P), the complainant was fully within his rights to make the requests for information noted above in points (6) through (10).  In defendant Lombardi's voicemail message of 2-6-09 (Attachment V), the defendant completely rejected the complainant's requests for Secant Pharma, LLC records to which the complainant is entitled.  Defendant Lombardi's refusal to comply with the complainant's *bona fide* request for said records serves to provide further evidence of the ongoing nature of the pattern of racketeering activity.

**(15)**  In defendant Lombardi's voicemail message to the complainant on 2-6-09 (Attachment V), defendant Lombardi also stated in part "But I wanna give you two options.  If you don't like what we're doing, and if you think that in some way we're cheating you or keeping you out of the loop in a way that is not beneficial to you, uh, we can terminate the deal.  I am more than willing to do that…You wanna terminate the deal, fine, we'll terminate the deal…Ya know, I'll be glad to take your fifteen and a half percent equity away from you, that you own in Secant."  In this statement, defendant Lombardi stated his recorded verbal equivalent of a contractual letter of intent in which he stated for the record that he was willing to return to the complainant the intellectual property rights that the complainant assigned to Secant Pharma, LLC on 3-17-06 in return for the complainant returning his 15.5% Member equity interest in Secant Pharma, LLC.

**(16)**  The complainant's USPS Certified Mail letter number 7005-1820-0002-4777-9971 mailed 2-7-09 and delivered to defendant Lombardi on 2-11-09 (Attachment W) was a confirming copy of the same message sent to defendant Lombardi via email on 2-6-09 in response to defendant Lombardi's voicemail message of 2-6-09.  In Attachment W, the complainant stated in part  "In other comments of yours today, you offered me the option of my leaving Secant and my surrendering my entire 15.5% Member interest, and in return you would return ownership to me of the patent portfolio that I assigned to Secant on March 17, 2006.  I believe we now have an agreement in principal on these basic terms.  I am telling you now that I accept your offer on the condition that a few minor details are also resolved."  The complainant then went on to describe minor details involving changing the name of SylvanLabs, LLC to something else, having defendant DiRocco return a box of medical journal references that the complainant loaned to him in June of 2006 and the complainant arranging to return to defendant a laptop computer that defendant Lombardi had loaned to the complainant.  The complainant also noted defendant Lombardi's agreement in principal in the complainant's email of 3-7-09 [Attachment Y, point (I)(1)].

**(17)**  However, in subsequent communications (Attachments X and BB), defendant Lombardi contradicted his 2-6-09 voicemail recorded verbal equivalent of a contractual

letter of intent [above point (15)] by inserting his insistence that he was willing to return the intellectual property assigned to Secant Pharma, LLC on 3-17-06 to the complainant only if the complainant accepted receipt of complete transfer of ownership of SylvanLabs, LLC.  In Attachment X, defendant Lombardi asserted that his requirement that the complainant accept full ownership of SylvanLabs, LLC amounted to his doing a favor for the complainant.  He asserted in part "we have come up with the easiest and quickest way to accomplish this.  Since SylvanLabs is a wholly owned subsidiary of Secant, we can just transfer all of the ownership rights to SylvanLabs to you, therefore the sole owner would be Howard Shapiro…If we do it this way, none of the deals that are currently in place (TRX, M&M Veterinary, and Altheus) need to be redone."  However, this was a fundamental modification of the terms offered by defendant Lombardi in Attachment V and the complainant never asked for any such purported favor.  Defendant DiRocco was copied on Attachments X and BB, further documenting his ongoing participation in the pattern of racketeering activity.

The complainant has consistently and repeatedly rejected this suspicious requirement of defendant Lombardi (Attachments Y and CC).  That defendant Lombardi would purportedly offer to exchange the complainant's equity interest in Secant Pharma, LLC for return to the complainant of the intellectual property assigned on 3-17-06 and would then suspiciously complicate said offer by the requirement that the complainant accept full ownership of SylvanLabs, LLC is further evidence of the ongoing nature of the pattern of racketeering activity.

**(18)**  In Attachment X, defendant Lombardi also stated "…if you set up a new company to take over the deals, we will need to set up assignment and assumption agreements for each of the deals and that would cost a lot of money and take a good deal of time to get all of the required signatures.  But, if you really want to go that route we can certainly do it that way recognizing that you will have to foot your part of the legal expense which could be significant."  The statement that "…we will need to set up assignment and assumption agreements for each of the deals…" was a false and directly contradicted Section 16.2.1 of Attachment A.  This statement on the part of defendant Lombardi was designed to manipulate the complainant into accepting full ownership of SylvanLabs, LLC on false pretext and is further evidence of the ongoing nature of the pattern of racketeering activity.  Under terms of Section 16.2.1 of Attachment A the complainant would – at his own choosing – have the option of either electing to continue each pre-existing license agreement or electing to terminate each pre-existing license agreement and thereby require the licensee to re-negotiate a new agreement (as the complainant noted in Section IV of Attachment Y and in Attachment CC).

**(19)**  In the complainant's email to defendant Lombardi on 3-7-09 (Attachment Y), the complainant reminded defendant Lombardi once again that according to Section 5.1.1 of Attachment A the complainant's royalty payment is to be calculated as twenty percent of the royalty payment received from licensing parties.  In Attachment Y, the complainant said in part "Your decisions to pay me royalties of $7,500 in 2007 and

16

$5,000 in 2008 amount to giving me nice round numbers that happen to precisely correspond to 10%. This indicates no effort on your part to deduct particular patent-related expenses. Rather, it documents arbitrary decisions on your part to pay me royalties at a rate of 10%, not 20%. These arbitrary decisions on your part constitute substantive violations of your contractual obligations to me."

**(20)** As regards the escrow bank account for royalties received from TRx/Zylera Pharmaceuticals, LLC, in the complainant's email to defendant Lombardi on 3-7-09 (Attachment Y), the complainant stated that "I am presently instructing you to provide me with copies of all monthly bank statements on this bank escrow account from October of 2007 to the present." As of the time of the filing of the present Affidavit, defendant Lombardi has provided no such monthly bank statement copies to the complainant, and this failure constitutes further evidence of the ongoing nature of the pattern of racketeering activity.

**(21)** In the complainant's email to defendant Lombardi on 3-7-09 (Attachment Y), the complainant stated "I am also instructing you to forthwith provide me with a royalty check corresponding to the twenty percent of the royalties received from TRx/Zylera from the fourth quarter of 2007 through the third quarter of 2008, including bank interest thereon. If you wish to dispute my claim to payment based at twenty percent of gross royalties received from TRx/Zylera as a licensing party, than I am presently instructing you to forthwith provide me with a personally signed written statement via USPS Certified Mail or corresponding private mail service (e.g., Federal Express) in which you cite explicit text in the MAY 3, 2006 BUSINESS AGREEMENT and any other documentation that supports your claim that SECANT owes me a royalty payment at a lower rate…If you wish to dispute my presently stated understanding, than I am instructing you to do so in a personally signed letter sent to me via USPS Certified Mail or corresponding private mail service (e.g., Federal Express). In said letter I am instructing you to explicitly cite your grounds for paying me a royalty at a rate of less than twenty percent, to refer explicitly to section(s) of the MAY 3, 2006 BUSINESS AGREEMENT and any other documentation your conclusion is based on and to provide me with copies of documentation related to any claimed patent-related expenses."

**(22)** In the complainant's email to defendant Lombardi on 3-7-09 (Attachment Y), the complainant stated "I am also instructing you to provide me with a complete set of documents related to any and all royalty or any other payments received by SECANT or its affiliates from Altheus Therapeutics Inc. This includes any and all written letters sent via USPS Certified Mail or corresponding private mail service (e.g., Federal Express) either from or to Altheus Therapeutics Inc., as well as printed copies of any and all email communications. This also includes copies of any and all monthly bank account statements that document where any and all income of any nature from Altheus Therapeutics Inc. was deposited. You are explicitly required to provide me with any and all such SECANT documentation under terms of Section 9.1(a) of the 7-28-2007 Amended and Restated Limited Liability Company Operating Agreement of

Secant Pharma, LLC.  Section  9.1(a) (see text quoted above) and Section 19.1 of the MAY 3, 2006 BUSINESS AGREEMENT (see text quoted above).  Failure on your part to fully comply with this request would constitute a substantive violation of your contractual obligations to me."  As of the time of the filing of the present Affidavit, defendant Lombardi has provided no such records whatsoever to the complainant, and this failure constitutes further evidence of the ongoing nature of the pattern of racketeering activity.

**(23)**  In the complainant's email to defendant Lombardi on 3-7-09 [Section III(2) of Attachment Y], the complainant noted documented evidence of defendant Lombardi's new home address at 1647A Bluebird Drive, Yardley, PA 19067-6320 as of January of 2009.  Yet, the defendant refused to accept Certified Mail letter number 7004-2890-0004-1879-4755 at this address, thereby providing further evidence of the ongoing nature of the pattern of racketeering activity.

**(24)**  In paragraph 2 of Attachment Z, defendant Lombardi responded to the complainant's previous requests for information directly related to and directly dependent upon the intellectual property that the complainant assigned to Secant Pharma, LLC on 3-17-06 (see Appendices of Attachment A).  Said previous requests are referenced above in points (6), (7), (8), (9), (10), (20), and (22).  Under terms of Sections 8.1 and 19.1 of Attachment A, in light of the complainant's status as a Secant Pharma, LLC Manager [Section 9.1(a) of Attachment J], under terms of Section 9.1(d) of Attachment J, and in light of the complainant's status as the Corporate Officer Secretary of Secant Pharma, LLC (see Attachment P), the complainant was fully within his rights to make such requests, and defendant Lombardi was fully obligated to comply.  However, in paragraph 2 of Attachment Z, defendant Lombardi completely refused to comply with the complainant's previous requests.  Defendant Lombardi's refusal to comply with the complainant's *bona fide* requests for said records serves to further document the ongoing nature of the pattern of racketeering activity.  Likewise, the fact that defendant DiRocco was copied on Attachment Z serves to further document his ongoing participation in the pattern of racketeering activity.

**(25)**  In paragraph 3 of Attachment Z, defendant Lombardi stated "If you had issues with our arrangement you could have called me instead."  As noted above in point (11), the complainant had previously informed defendant Lombardi not to communicate via telephone calls.  Such telephone calls would not provide the complainant with the opportunity to have the communications witnessed by one or more third parties trusted by the complainant, which defendant Lombardi fully understands.  Defendant Lombardi's repeatedly stated preference for unwitnessed telephone call conversations with the complainant serves to document the defendant's preference for as little permanent record of communication with the complainant as possible and the ongoing nature of the pattern of racketeering activity.

**(26)**  In paragraph 6 of Attachment Z, defendant Lombardi invented the fictitious LLC membership status of "**non-voting** manager member" as his justification of and authority to deny the complainant access to Secant Pharma, LLC and SylvanLabs,

LLC company records that the complainant had previously requested.  Defendant Lombardi stated "As a **'non-voting'** manager member of Secant there is no specific obligation that any information needs to be made available to you unless we choose to do so."  In making this false and deceptive statement, defendant Lombardi specifically denied the complainant's status as a voting Member according to Schedule I of Attachment J.  This outright deception serves to further document defendant Lombardi's refusal to comply with the complainant's *bona fide* requests for said records and serves to further document the ongoing nature of the pattern of racketeering activity.  In paragraph 1 of Attachment AA, the complainant referred defendant Lombardi to Schedule I of Attachment J and corrected the defendant's erroneous classification of the complainant as a "**non-voting** manager member."  In Attachment BB, defendant Lombardi conceded that the complainant is indeed a voting Member and offered that he had simply made a mistake.  Yet the defendant still refused to provide any of the company records that the complainant requested.

**(27)**  In paragraph 7 of Attachment Z, defendant Lombardi falsely stated "By the way, if you check the Operating Agreement carefully, there is no language that says that the voting members (Rich and I) have to release company information at your request."  In making this false and deceptive statement, defendant Lombardi specifically denied once again the complainant's status as a voting Member according to Schedule I of Attachment J.  Yet in this statement, defendant Lombardi directly asserted that voting Members do have the authority to have access to the records requested by the complainant, namely himself and defendant DiRocco.  This outright deception serves to further document defendant Lombardi's refusal to comply with the complainant's *bona fide* requests for said records and serves to further document the ongoing nature of the pattern of racketeering activity.

**(28)**  In paragraph 10 of Attachment Z, defendant Lombardi responded to the complainant's instructions to provide reference to documentation that would justify the defendant's having paid the complainant royalties at a rate of 10% during 2007-2008 [point (21) above].  Defendant Lombardi falsely stated "I know it is convenient now to forget what transpired more than a year ago, but I must also remind you and for the benefit of everyone else who is copied on these emails, that Secant formally changed its arrangement with you back in July of 2007 shortly after Shawn left the company.  At that time, in exchange for the additional equity you received in Secant (the additional 8.5% to bring you up to 15.5%) you agreed to accept a lower royalty of 10% and would no longer request patent reimbursement of the sunk expenses of $316,000.  That is why you have been paid the 10% royalty of any monies we received since that time (almost 18 months ago).  You are well aware that was the quid-pro-quo in order for you to get the additional membership interests in Secant.  We discussed it at length and you agreed that the potential of holding Secant equity was greater than the 20% royalty that might come your way.  And each time any money was received either from Altheus or TRX we discussed how much you would get and you never once told me you thought you were owed 20%.  I can only speculate as to why you failed to mention

that you agreed to such terms (10% royalty) in your previous email and of course you knew all along that these terms were the ones we were operating under since July 2007."

Defendant Lombardi has been employed in the field of pharmaceutical patent licensing for approximately twenty-five years.  This includes years of work at the Center for Technology Transfer of the University of Pennsylvania and years of work at British Technology Group.  Defendant Lombardi has extensive experience negotiating and drafting intellectual property licensing agreements.   In Attachment J and Attachment Q, defendant Lombardi asserted that he was working professionally enough to explicitly specify and write down that the complainant's member equity would be increased from 7.0% to 15.5%, he was working professionally enough to explicitly specify and write down that the complainant's nonvoting membership would be changed to voting membership, and he was working professionally enough to explicitly specify and write down that the complainant would be designated as a Manager.  In fact, the increased status of the complainant in Attachment J was a redefinition of member standing subsequent to the resignation of Shawn Bridy from his status as a 31% voting rights Member and Manager.

Yet in Attachment Z defendant Lombardi preposterously asserted that concomitant to the enactment of Attachment J he reached a secret and unwritten supplemental agreement wherein the complainant agreed to have his royalty payment rate cut in half.  As evidence of the secret nature of this claimed verbal agreement, the complainant presently notes that neither defendant Lombardi nor defendant DiRocco ever communicated this secret verbal agreement to the Secant Pharma, LLC company attorney, Kathleen Shay, when the defendants were providing the attorney with written evidence of the other changes in the complainant's status (Attachments J and Q).

To the best of the complainant's knowledge, there is no record that attorney Kathleen Shay ever asked Lombardi or DiRocco "where is the contractual statement that Shapiro's royalty payment rate is being cut in half?" because defendants Lombardi and DiRocco never mentioned to the attorney that such a contractual term had ever been proposed to the complainant.  Hence, neither the complainant nor the company attorney were ever informed in any written or email document during 2007 or 2008 that the alleged reduction in royalty payment rate had been proposed to and accepted by the complainant.

In paragraph 7 of Attachment Z, defendant Lombardi stated "While we never sent you certified letters, I think you would agree and you would be hard-pressed to show how you were not very well informed on everything we were involved in or was ongoing within Secant, Enteron or SylvanLabs.  Indeed, there is a long email trail that documents the history of all of our communications to you that explicitly shows your deep involvement in our strategies and other aspects of our business.  To suggest that you have been kept in the dark about anything that the company has done and specifically about your IP is disingenuous and very surprising."  The complainant notes that It strains credulity to accept that defendant Lombardi would refer to his "long email

trial" in his communications with the complainant, yet nowhere in this previous "long email trail" did defendant Lombardi state that the complainant had agreed to a diminution of his royalty payment rate from 20% to 10%.

This claimed two-track approach for redefining the status of the complainant during July of 2007, wherein defendant Lombardi asserts that some changes were written down in a signed business agreement (Attachment J) which was then sent to the company attorney (Attachment Q) and another essential term was kept secret and unwritten, is fictitious. The claimed secret and verbal agreement between defendant Lombardi and the complainant never happened. That is why it was never written down in a signed agreement, this is why it never appeared in the "long email trial" of 2007-2008, and this is why said fictitious verbal agreement was never communicated to the company attorney. The fact that defendant DiRocco now asserts that he witnessed the "handshake" of the fictitious verbal contract (paragraph 2 of Attachment BB) is nothing more than one more example of defendant DiRocco aiding and abetting various crimes that were committed by defendant Lombardi. This illegal conduct on the part of the defendants is an essential part of their racketeering scheme.

**(29)** In paragraph 14 of Attachment Z, defendant Lombardi stated "Let me now address your comments about certified mailing. I do not know how you ever came to the conclusion I lived at or currently live at the address you sent certified letters to in Yardley. (*1647A Bluebird Drive, Yardley, PA 19067-6320*), I have no idea how you got that address. I moved to Levittown, PA. My new address is of no concern to our current discussions. However, the legal address for Secant, SylvanLabs and Enteron is still 907 Edgewood Lane. I did move my residence but not the legal address for the company(s). They will remain at the 907 Edgewood Lane address. Also, I did not pick up the certified letter in time at the PO Box in Langhorne before it was returned to you. Once I moved out of the area, I wasn't able to get to the PO Box often enough before the USPS returned it to you. By the way, the PO Box is not the legal address for SylvanLabs. And furthermore, since I moved out of the area, I recently closed that PO Box (end of February) so if you send something there it will be returned."

Although the defendant verbally informed the complainant [i.e., the Corporate Officer Secretary of Secant Pharma, LLC (see Attachment P)] during October and November of 2008 that he was moving/had moved his personal residence out of 907 Edgewood Lane on 10-31-08, defendant Lombardi did not clarify the basic question of the company mailing address until his email to the complainant on 3-8-09. Hence, defendant Lombardi kept the complainant misinformed as to the true mailing address of Secant Pharma, LLC for more than five months. The complainant had no way of knowing that the company address would remain at 907 Edgewood Lane even after the defendant had moved out. On 1-20-09, the complainant sent an email to defendant Lombardi requesting that the defendant clarify the correct mailing address of the company (Attachment T). However, defendant Lombardi never responded to said email.

The defendant stated in Attachment Z that he had "no idea" how the complainant obtained the address for Dale M. Lombardi at 1647A Bluebird Drive.  The complainant originally got the address at 1647A Bluebird Drive on or about 11-15-08, when defendant Lombardi mentioned it as his new home address in an unscheduled telephone conversation with the complainant.  At that time, the complainant asked for the complete mailing address at 1647A Bluebird Drive.  The defendant refused to repeat the full address including zip code, adding that he would email the full address to the complainant.  But he never did.  In paragraph 14 of Attachment Z, defendant Lombardi never explained how there could be a listing at the Internet web site for usps.com for Dale Lombardi at this mailing address along with the description "Job Title: Owner" of "Company: Enteron Therapeutics" immediately beside the name [see Section III(2) of Attachment Y].  In paragraph 14 of Attachment Z, defendant Lombardi referred to the complainant's Certified Mail letter sent to SylvanLabs, LLC at mailing address at P.O. Box 0694, Langhorne, PA 19047-0694 and stated "By the way, the PO Box is not the legal address for SylvanLabs."  However, defendant Lombardi's statement directly contradicts information at usps.com, which states that the Dale Lombardi at this mailing address is the "Job Title: Owner" of "Company: Sylvan Labs" [see Section III(3) of Attachment Y].  These acts of deception on the part of defendant Lombardi over a five-month period as to his correct mailing address are further evidence of the ongoing pattern of racketeering activity.

**(30)**  In paragraph 15 of Attachment Z, defendant Lombardi stated "On another point, I will provide you with all of the copies of bank statements related to the escrow account and any other royalties we received from Altheus and TRX.  It would be very easy to do this in person rather than send them through the mail.  So, I hope you will consider meeting with me to discuss the financial aspects we need to discuss."  In this statement defendant Lombardi held out the possibility of his surrendering copies of some of the company records the complainant had asked for as a kind of bait, in an attempt to force the complainant into an unwitnessed personal meeting.  For some unexplained reason, the defendant objected to his providing these records through the mail.  The complainant has repeatedly instructed the defendant to provide these company records without any preconditions whatsoever.  That the defendant offered to provide the complainant with only a limited number of the records requested and only on the precondition that said records would be surrendered as part of a personal meeting is further evidence of the ongoing pattern of racketeering activity.  In Attachment AA, the complainant rejected the defendant's proposal of a personal meeting on the grounds that such a meeting, like the defendant's earlier unscheduled telephone calls, would not be a form of communication for which there would be a legal record.  In fact, as of the time of filing this Affidavit, defendant Lombardi had provided none of the records that he referred to in his statement quoted immediately above.

**(31)**  In paragraph 7 of Attachment AA, the complainant challenged defendant Lombardi by stating "I am instructing you now that, if you wish to continue to assert that since 7-28-2007 that I am only due royalty payments at a rate of ten percent, than

you should quote me the section that supports such a claim of yours." By way of response, in paragraph 2 of Attachment BB, defendant Lombardi stated "There is no place in the Operating agreement that states that you were to get 10% royalty instead of the 20%. That was an agreement we made verbally and shook hands on in the presence of Rich and was the basis for why we offered you the additional equity in Secant. And that arrangement is as legally binding as any language in a written document. Otherwise, why do you think you were given an additional 8.5% equity in Secant?" The complainant has rebutted this outright lie by defendant Lombardi in point (28) above.

The complainant also rebutted this outright lie by defendant Lombardi in paragraphs 4-7 of Attachment CC, where the complainant stated in part "Your 3-9-09 email statement that I agreed to have my royalty payment rate cut from twenty percent to ten percent by way of a verbal agreement with a handshake in the presence of Richard DiRocco (DIROCCO) is a complete lie. It never happened. In my view, that statement of yours is desperate, stupid and unbelievable. It strains credulity to believe that you obtained such a material and fundamental concession from me, but that we never defined such a concession in a written and signed document. In July of 2007 it was your decision to upgrade my status from non-voting Member to voting Member/Manager and to increase my membership interest in SECANT from 7.0% to 15.5% at a time when voting rights Member Shawn Bridy was leaving SECANT. Your statement that I agreed to have my royalty payment rate cut from twenty percent to ten percent by way of a verbal agreement may provide a basis for criminal prosecution against both you and DIROCCO. The mere supposition that DIROCCO is willing to back up your fictitious statement adds little, if anything, to its credibility. In light of my extremely detailed official record of contractual agreements with SECANT, it strains credulity for anyone to believe that I would agree to have my royalty payment rate cut in half, and that said agreement on my part would never be explicitly defined in a written and signed legal document. It is also becoming more obvious from one day to the next at this point that you have no hesitation about interpreting your contractual obligations to me in any way you like."

"On September 26, 2007 I received from you a check for $7,500 as a ten percent royalty payment from the $75,000 royalty payment that SECANT had recently received from Altheus Therapeutics Inc., and I deposited said payment in my personal bank account. Several days before you gave me that check, you gave me an unscheduled telephone call and you announced that you had either just received the $75,000 check or that you would receive it soon. "

"When you phoned me and told me that I would receive a royalty payment at a rate of ten percent, I told you that I thought I should be paid at a rate of twenty percent. You then responded by telling me that there was a schedule for deducting business expenses from my twenty percent royalty rate in my business agreement with SECANT, and you could deduct various business expenses from my royalty payment and thereby pay me "a lot less than ten percent." Then you told me that you were

doing me a favor by paying me at ten percent, even though you didn't have to. I felt that your statement was a form of intimidation, a threat. But I had no other source of income. I felt that your comments implied that if I wanted to dispute your ten percent payment rate, you could just make it five percent, or less. Maybe nothing. I did not know what business agreement text you were referring to, and you never explained your decision further. I remember clearly that during this telephone call you never mentioned any previous verbal agreement with me to cut my royalty rate in half. My silence on this issue during 2007 and 2008 was not an indication on my part that I accepted your action. Rather, it reflected the point that I did not know how to confront you. I am holding you accountable for your actions now."

"…if your 3-9-09 email assertion that I had verbally agreed to have my royalty payment rate cut in half was true, than you never took a few minutes in a time frame of 7-28-2007 to type out a confirming email to me. That would have provided at least some documentation, albeit unsigned, that I had verbally agreed to your reduction in my royalty payment rate. No such confirming email exists because there never was any agreement on my part to a reduction in my royalty payment rate from twenty percent to ten percent. If there ever were such a confirming email in which you stipulated that my royalty payment rate was being cut in half, would you please be so kind as to forward said alleged email to my attention once again?" Yet, as of the time of filing this Affidavit, defendant Lombardi has failed to produce any such email record.

In paragraph 8 of Attachment CC, the complainant went on to describe his discovery of defendant Lombardi's 7-3-08 email to attorney Kathleen M. Shay at Duane Morris (Attachment Q). The content of Attachment Q irrefutably documents that defendant Lombardi informed the attorney of various changes in the complainant's status in Secant Pharma, LLC regarding the drafting and signing of Attachment J on July of 2007, but never mentioned any changes whatsoever in the terms for royalty compensation to the complainant (i.e., the defendant's statement "There were no other changes to the document that were made").

**(32)** In paragraph 6 of Attachment BB, defendant Lombardi stated "We remain puzzled by your desire to terminate the deals that are ongoing.…If you can, please tell me why these deals are not something you would want to keep as a basis for moving forward with your IP." Yet, the complainant bears no burden to inform the defendant as to what the complainant intends to do with the intellectual property, in the event that the ownership of said intellectual property is returned to the complainant.

**(33)** In paragraph 6 of Attachment BB, defendant Lombardi stated "Also, just so you know, Secant and SylvanLabs have no legal authority to terminate the deals just because you want us to. That is not the way it works and is not the way the language in our agreement reads." This misleading statement by defendant Lombardi directly contradicts the terms of Section 16.2.1 of Attachment A. Under said terms, the complainant would – at his own choosing – have the option of either electing to continue each pre-existing license agreement or electing to terminate each pre-existing

license agreement and thereby require the licensee to re-negotiate a new agreement (as the complainant noted in Section IV of Attachment Y).

**(34)**  In bullet point 7 of the proposed new "letter agreement" of defendant Lombardi's Attachment BB, defendant Lombardi stated "Secant agreed to give Howard Shapiro an additional 8.5% equity in Secant Pharma in exchange for Howard Shapiro's agreement to lower the royalty rate to 10% and to forgo recovery of his sunk patent expenses in the amount of ($278,289)."  Here, defendant Lombardi attempted to embody into a written form his lie regarding his illegal reduction of the complainant's royalty compensation rate.  The defendant attempted to establish a purportedly legal facade for his illegal conduct during 2007-2009 and to have the complainant affix his signature to the defendant's "get out of jail free" card.  If this statement were true, than it should have been part of Attachment J as signed on 7-28-07.  But it was not.  The defendant's self-serving attempt to modify the printed terms of Attachment J 21 months after the document was signed is yet further evidence of the ongoing nature of the pattern of racketeering activity.

**(35)**  In paragraph 3 of Attachment CC, the complainant observed that defendant Lombardi had conceded on the record that the complainant is both a voting rights Member and a Manager of Secant Pharma, LLC.  With his credentials no longer in dispute, the complainant went on to state that "…you are in fact conceding that I am fully entitled to any SECANT documentation whatsoever that I may wish to request. That being the case, I am presently instructing you to completely and promptly honor my previous Certified Mail letter and email requests for SECANT documentation.  You have no legal basis whatsoever for refusing to accept and completely respond to my instructions that you (1) provide me with previously existing information and (2) that you provide me with information regarding SECANT communications with TRx/Zylera and Altheus Therapeutics Inc. on an ongoing and continuing basis.  Your refusal to provide me with said information up to this point is a substantive failure on your part to honor your presently existing contractual obligations."  Yet, as of the time of filing this Affidavit, defendant Lombardi had continued to refuse to comply with the complainant's *bona fide* requests for said records and this refusal serves to further document the ongoing nature of the pattern of racketeering activity.

**(36)**  In Attachment CC, the complainant defined itemized tax reports (a) through (p) for 2006 as being a complete set of Secant Pharma, LLC tax reports.  The complainant then instructed defendant Lombardi to provide him with complete sets of corresponding tax documents for both 2007 and 2008.  Defendant Lombardi has refused to comply with this *bona fide* request (Attachments N, O and FF).  This refusal provides further evidence of the ongoing nature of the pattern of racketeering activity.

**(37)**  In Attachment DD, the complainant drew the attention of defendants Lombardi and DiRocco to the fact that defendant DiRocco was copied on Attachment Q, the email communication from defendant Lombardi to attorney Kathleen M. Shay dated 7-3-08.  The complainant noted in Attachment DD that this documents defendant DiRocco's role in the ongoing pattern of racketeering activity.  Likewise, in Attachment

DD the complainant noted that defendant DiRocco was copied on Attachment BB, and this too documents defendant DiRocco's role in the ongoing pattern of racketeering activity.

**(38)**  Attachment EE is entitled "Written Consent of a Majority in Interest of the Voting Members of Secant Pharma LLC in Lieu of Annual Meeting" dated 3-30-09 and signed by defendants Lombardi and DiRocco.  This was within defendant Lombardi's Priority Mail package number 0308-3390-0000-3104-2666 mailed 4-1-09 and received by the complainant on 4-2-09.  In this signed document, the defendants attempted to absolve themselves of the responsibility of providing copies of the Secant Pharma, LLC company documents requested by the complainant by removing the complainant's authority as a Manager.  In doing so, they pretended to authorize themselves as a matter of legal record to provide none of the company documents previously requested by the complainant.  *Prima facie*, the action on 3-30-09 of the defendants to attempt to remove the complainant from his status as a company Manager was an attempt to hide evidence of their previous misconduct, e.g., any evidence that royalty income allegedly stolen from the complainant had in fact been diverted to the personal income of the defendants.  This deliberate and conspiratorial action on the part of both defendants provides further evidence of the ongoing nature of the pattern of racketeering activity.

**(39)**  The complainant notes that Attachment EE is not legally binding on the following grounds.  In their signing of Attachment EE, the defendants held a Member meeting. They held said Member meeting and then signed a Member resolution.  However, Member meetings are regulated in part by Section 5.4 of Attachment J.  This section reads in part " No meetings of the Members need be held.  However, meetings of Members may be called by any Member upon at least five days' prior written notice." As the defendants colluded with one another to hold a rump Member meeting without giving all Members the required prior notice, the complainant is of the belief that any Member resolution approved at such a meeting is without legal merit.  Accordingly, it is the complainant's understanding that he is still a Manager of Secant Pharma, LLC in the eyes of the law.  The deliberate and conspiratorial action on the part of both defendants to convene an *ad hoc* Member meeting with the intent of signing a Member resolution intended to deny a voting rights Member Manager of his legitimate rights is further evidence of the ongoing nature of the pattern of racketeering activity.

**(40)**  Defendant Lombardi's Priority Mail package number 0308-3390-0000-3104-2666 also contained Attachment FF.  In this signed letter, defendant Lombardi stated that he was providing "…A copy of both of the Federal tax forms as filed for Secant Pharma and SylvanLabs for calendar year 2007 [and] A copy of both of the tax forms as filed with the State of Pennsylvania for Secant Pharma and SylvanLabs for calendar year 2007."  Accompanying Attachment FF was Attachment N (i.e., 2007 Federal tax return documents) and Attachment O (i.e., 2007 Commonwealth of Pennsylvania tax return documents).

26

However, the complainant notes that defendant Lombardi did not send all of the tax forms for 2007.  In Attachment CC, the complainant defined itemized tax reports (a) through (p) for 2006 as being a complete set of Secant Pharma, LLC tax reports.  In Attachment CC, the complainant then instructed defendant Lombardi to provide him with complete sets of corresponding tax documents for both 2007 and 2008.  If defendant Lombardi had sent a complete set of 2007 tax forms, than he would have sent the entire set of tax forms corresponding to those of 2006.  The complete set of 2006 tax forms was prepared by Shawn Bridy, a voting Member Manager and Chief Financial Officer of Secant Pharma, LLC who resigned from active company work in 2007.

In fact, defendant Lombardi's signed letter Attachment FF as quoted above differs from his recorded voicemail message statement of 4-2-09 (Attachment HH).  In the defendant's verbal statement as transcribed in Attachment HH, the defendant stated "I also sent you yesterday in the mail uh all of the tax forms for 2007."  So, in the verbal statement which the defendant apparently assumed would not be preserved as a legal record the defendant stated "uh all of the tax forms," while in his signed letter the defendant only stated "the tax forms."  This is a documented example of the defendant attempting to deceive the complainant into assuming that the defendant had provided the complainant with a complete set of 2007 tax forms, when in fact he had not.  In Attachments N and O, defendant Lombardi provided the complainant with an incomplete set of Secant Pharma, LLC and SylvanLabs, LLC tax forms characterized by the selective absence of information regarding financial compensation received by both defendants cited herein.  Defendant Lombardi deliberately withheld the 2007 IRS Schedule K-1 (Form 1065) for himself, the PA Schedule RK-1 for himself, the 2007 IRS Schedule K-1 (Form 1065) for defendant DiRocco and the PA Schedule NJRK-1 for defendant DiRocco.  Hence, the complainant was denied access to tax reporting records that, in the complainant's view, would have documented that royalty income that rightfully belongs to the complainant was in fact diverted to personal income drawn from Secant Pharma, LLC and/or SylvanLabs, LLC for defendants Lombardi and DiRocco.  This selective withholding of 2007 Federal and state tax return information from the complainant constitutes further evidence of the ongoing pattern of racketeering activity.

**(41)**  Defendant Lombardi noted at the bottom of his 3-31-09 letter to the complainant (Attachment FF) that defendant DiRocco was copied on this letter.  This is *prima facie* evidence that defendant DiRocco colluded with defendant Lombardi so as to withhold company records that would further define their diversion of royalty income away from the complainant and to the defendants.  The complainant is of the view that the defendants' acts of deliberately withholding documentation regarding their income from SylvanLabs, LLC during 2007 was a deliberate attempt on their part to further their ongoing pattern of racketeering activity.

**(42)**  In defendant Lombardi's 3-31-09 letter (Attachment FF), he also stated "I will shortly be sending you all of the tax forms as filed with the State of Pennsylvania and

the IRS for secant Pharma and SylvanLabs for calendar year 2008." Yet, with the exception of the complainant's 2008 Schedule K-1 (Form 1065) (Attachment QQ), defendant Lombardi has provided the complainant with no other 2008 tax forms for either Secant pharma, LLC or SylvanLabs, LLC as of the filing date of this Affidavit. This extensive withholding of 2008 Federal and state tax return information from the complainant constitutes further evidence of the ongoing pattern of racketeering activity.

**(43)**  Attachment GG dated 3-31-09 constitutes a signed statement transferring the intellectual property management responsibilities from Secant Pharma, LLC to SylvanLabs, LLC.  In Attachment GG, defendant Lombardi specifically instructed the complainant henceforth to communicate with defendant DiRocco regarding "all future inquiries or requests" related to the intellectual property.  This serves to further implicate defendant DiRocco in the ongoing pattern of racketeering activity.

**(44)**  On or about 4-1-09, defendant Lombardi terminated the secantpharma.com email address for the complainant (i.e., the Corporate Officer Secretary of Secant Pharma, LLC (see Attachment P) on Outlook Express.  Yet on 4-16-09, defendant Lombardi left another voicemail message for the complainant in which the defendant expressed frustration that the complainant had not accepted delivery of a USPS Certified Mail letter that the defendant stated he had mailed on 4-8-09.  Outlook Express has a "confirm receipt" option for email messages, while the complainant's comcast.net email address does not.  Unfortunately, comcast.net had a network server problem on or about April 1st – April 10th (noted by defendant Lombardi in paragraph 1 of Attachment MM), so apparently several emails were not delivered to the complainant during this system outage.  The complainant responded to defendant Lombardi's voicemail message of 4-16-09 with an email to the complainant on 4-16-09 (Attachment II).  In complaining about his inability to communicate with the complainant via email and complaining about his inability to communicate with the complainant via Certified Mail, defendant Lombardi blamed the complainant, noting "we have no way of communicating with you" (Attachment II).  Yet the complainant bore no responsibility.  The email problem was first created by the defendant, who terminated the secantpharma.com email address for the complainant.  Then the delay in delivery of the defendant's Certified Mail package of 4-8-09 was entirely due to slowness on the part of the US Postal Service.  In his 4-16-09 voicemail message the defendant attempted to affix blame upon the complainant, when in fact the complainant had done nothing wrong.  Furthermore, while the defendant alleged that the complainant was delaying receipt of the defendant's Certified Mail package, the defendant provided no Certified Mail identification number to the complainant, leaving the complainant with no way of filing an inquiry with the USPS.  Such conduct on the part of the defendant was of a harassing nature.

**(45)**  In defendant Lombardi's email to the complainant on 4-17-09 (Attachment JJ), the defendant provided the complainant with the Certified Mail identification number of 7007-2680-0000-3114-7558 for the defendant's mailing of 4-8-09.  Using this identification number, on 4-17-09 the complainant checked the usps.com "Track &

Confirm" web page to determine the status of the defendant's letter (Attachment KK). The Track & Confirm listing indicates that as of 4-17-09 that the item had not been received by the Narberth Post Office and that no attempt had been made to deliver the item to the complainant.  On the 4-17-09 Track & Confirm listing, the statement "Status: Acceptance" merely indicates that the item was accepted for mailing at the Levittown, PA Post Office at 3:04 PM on 4-8-09.  Attachment KK documents that the complainant bore no responsibility for the delay in delivery of said Certified Mail package.

**(46)**  Attachment LL is the USPS Certified Mail attempted delivery notice for item 7007-2680-0000-3114-7558, which the complainant found in his mailbox on 4-17-09.  To the right of the complainant's signature is the handwritten date "4-18-09," indicating when the complainant signed for receipt of delivery.

**(47)**  The 4-7-09 letter of defendant Lombardi (Attachment MM, which was within Certified Mail package 7007-2680-0000-3114-7558) noted the accompanying check in the amount of $719.34 (Attachment PP).  This amounted to a royalty payment rate of 10% of funds withdrawn on or about 2-24-09 by defendants Lombardi and DiRocco from the bank escrow account for royalties received from TRx/Zylera Pharmaceuticals, LLC, according to the accompanying *ad hoc* summary bank account statement (Attachment OO).  So, in providing this payment at a rate of 10%, another $719.34 was stolen from the complainant by the defendants.

**(48)**  Defendant DiRocco was listed as a copy recipient of Attachment MM, thus serving to further implicate him in the ongoing pattern of racketeering activity.

**(49)**  Defendant DiRocco was listed as a copy recipient of Attachment OO, thus serving to further implicate him in the ongoing pattern of racketeering activity.

**(50)**  A printed copy of defendant Lombardi's 3-30-09 6:42 PM email (Attachment NN) to the complainant (never received at the complainant's comcast.com email address) was delivered to the complainant within Certified Mail package 7007-2680-0000-3114-7558.  Point 3 of Attachment NN confirms the resolution passed by the defendants at their 3-30-09 *ad hoc* Member meeting, in which they purported to legally remove the complainant from his status as a Secant Pharma, LLC Manager.  With inferred reference to point 3, Point 5 of Attachment NN states in part "We have confirmed that Secant is under no obligation to provide you with copies of the information you are requesting."

In the remaining text of point 5, defendant Lombardi offered the complainant the opportunity to "examine" certain company records, but only at the location of 907 Edgewood Lane.  The disingenuous nature of this purported opportunity for disclosure should be noted.  By offering the complainant the opportunity to "examine," i.e., to view, unspecified documents, defendant Lombardi would provide no provision for the complainant to make photocopies thereof.  So photocopies of records that the complainant might want as evidence in a criminal complaint such as the present Affidavit would not be available under the conditions of access to documents as defined by defendant Lombardi.

Also, defendant Lombardi knows that the complainant has no car.  In order for the complainant to travel to 907 Edgewood Lane, the complainant would first have to take a train from Narberth to Langhorne.  Then the complainant would have to take a SEPTA bus to travel approximately two miles west of Langhorne.  Then the complainant, who has a muscular dystrophy-type disability, would have to walk about one mile, going up one of the steepest hills in the greater Philadelphia area.  This is what defendant Lombardi defines as reasonable access to company records for the complainant.  Such a pretense is in fact further evidence of the ongoing pattern of racketeering activity.

**(51)**  In point 6 of Attachment NN, defendant Lombardi stated "Secant Pharma, as well as Rich DiRocco and I personally, stand by our position that your membership interest in Secant Pharma was increased from 7% to 15.5% on July 25, 2007 in consideration of your agreement to reduce the royalty payments under the Revenue Share Agreement from 20% to 10%, as noted in my prior emails.  Please note that Secant Pharma has filed tax reports with the Internal Revenue service and State of Pennsylvania consistent with that position."  In this statement, defendant is re-stating the most essential point of his racketeering scheme, his undocumented assertion that the 20% royalty payment rate for the complainant as stated in Attachment A was reduced to 10% by way of a verbal agreement that in fact never happened.  In point 6 of Attachment NN, defendant Lombardi also explicitly referred to his having attempted to legitimize his criminal misconduct by filing false Federal and state tax returns.  In the view of the complainant, the filing of fictitious Federal and state tax returns does not effectively forgive the defendants for their criminal acts.  Rather, doing so further implicates them.

**(52)**  Defendant DiRocco was listed as a copy recipient of Attachment NN.  This serves to further implicate him in the ongoing pattern of racketeering activity, including the filing of false Federal and state tax returns.

**(53)**  Attachment QQ is the 2008 Schedule K-1 (Form 1065) for the complainant.  This printed copy was provided by defendant Lombardi within Certified Mail package 7007-2680-0000-3114-7558.  This single 2008 tax form is the only 2008 tax form from either Secant Pharma, LLC or SylvanLabs, LLC that either defendant Lombardi or defendant DiRocco has provided to the complainant as of the time of filing the present Affidavit.  This almost complete pattern of withholding access to 2008 tax reporting information is further evidence of the ongoing pattern of racketeering activity.

**(54)**  Attachment RR is the bank deposit slip for the complainant's personal bank account.  It documents that on 4-18-09 a deposit was made in the amount of $719.34, corresponding to check number 139 from SylvanLabs, LLC (Attachment PP).

With reference to the present Affidavit, the complainant maintains that 18 U.S.C. § 1962(d) is material in the following respects.  Section 18 U.S.C. § 1962(a) applies wherein the defendants unlawfully received income derived directly from a pattern of racketeering activity in which the defendants participated as principals within the meaning of section 2, title 18, United States Code to directly use said income in the

operation of an enterprise which is engaged in, and the activities of which affect, interstate commerce.  Section 18 U.S.C. § 1962(b) applies wherein the defendants engaged in a pattern of racketeering activity to directly maintain an interest in and control of an enterprise that is engaged in and the activities of which affect interstate commerce.  Section 18 U.S.C. § 1962(c) applies wherein the defendants were employed by an enterprise engaged in and the activities of which affect interstate commerce, to directly conduct and participate in the conduct of such enterprise's affairs through a pattern of racketeering activity.

All in violation of Title 18, United States Code, Section 1962(d).


**PROPOSED COUNT TWO**
**MAIL FRAUD AND SWINDLE**
**18 U.S.C. § 1341 and § 1346**
**THE COMPLAINANT FURTHER CHARGES THAT:**

**11.**    With reference to the present Affidavit, the complainant maintains that 18 U.S.C. § 1341 is material in the following respects.  Section 18 U.S.C. § 1341 applies wherein the defendants devised and executed a scheme to defraud for obtaining money by means of false or fraudulent pretenses and representations, said scheme having been predicated upon initial receipt from a post office or any private or commercial interstate carrier of a license royalty payment from a licensing company.

With reference to the present Affidavit, the complainant maintains that 18 U.S.C. § 1346 is material in the following respects.  Section 18 U.S.C. § 1346 applies wherein the term "scheme" includes a scheme to deprive another of the intangible right of honest services.

On or about 9-26-07 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did violate 18 U.S.C. § 1341 and 18 U.S.C. § 1346 in that as Chief Executive Officer of Secant Pharma, LLC he received a $75,000.00 royalty payment from Altheus Therapeutics, Inc. via the United States Postal Service or commercial interstate carrier, where upon he defrauded the complainant out of $7,500.00 of rightfully due royalty payment.

In violation of Title 18, United States Code, Section 1341 and Section 1346.


**PROPOSED COUNT THREE**
**MAIL FRAUD AND SWINDLE**
**18 U.S.C. § 1341 and § 1346**
**THE COMPLAINANT FURTHER CHARGES THAT:**

**12.**    On or about 9-26-07 at Langhorne, in the Eastern District of Pennsylvania, or in another location defendant DiRocco did aid and abet defendant Lombardi so as to violate 18 U.S.C. § 1341 and 18 U.S.C. § 1346 in that as Vice President of Secant Pharma, LLC and Chief Executive Officer of SylvanLabs, LLC defendant DiRocco participated in the receipt of a $75,000.00 royalty payment from Altheus Therapeutics, Inc. via the United States Postal Service or commercial interstate carrier, where upon

he assisted in defrauding the complainant out of $7,500.00 of rightfully due royalty payment.

In violation of Title 18, United States Code, Section 1341 and Section 1346.

## PROPOSED COUNT FOUR
## MAIL FRAUD AND SWINDLE
## 18 U.S.C. § 1341 and § 1346
## THE COMPLAINANT FURTHER CHARGES THAT:

**13.**    On or about 8-22-08 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did violate 18 U.S.C. § 1341 and 18 U.S.C. § 1346 in that as Chief Executive Officer of Secant Pharma, LLC he received a $50,000.00 royalty payment from Altheus Therapeutics, Inc. via the United States Postal Service or commercial interstate carrier, where upon he defrauded the complainant out of $5,000.00 of rightfully due royalty payment.

In violation of Title 18, United States Code, Section 1341 and Section 1346.

## PROPOSED COUNT FIVE
## MAIL FRAUD AND SWINDLE
## 18 U.S.C. § 1341 and § 1346
## THE COMPLAINANT FURTHER CHARGES THAT:

**14.**    On or about 8-22-08 at Langhorne, in the Eastern District of Pennsylvania, or in another location defendant DiRocco did aid and abet defendant Lombardi so as to violate 18 U.S.C. § 1341 and 18 U.S.C. § 1346 in that as Vice President of Secant Pharma, LLC and Chief Executive Officer of SylvanLabs, LLC defendant DiRocco participated in the receipt of a $50,000.00 royalty payment from Altheus Therapeutics, Inc. via the United States Postal Service or commercial interstate carrier, where upon he assisted in defrauding the complainant out of $5,000.00 of rightfully due royalty payment.

In violation of Title 18, United States Code, Section 1341 and Section 1346.

## PROPOSED COUNT SIX
## MAIL FRAUD AND SWINDLE
## 18 U.S.C. § 1341 and § 1346
## THE COMPLAINANT FURTHER CHARGES THAT:

**15.**    On or about 4-1-09 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did violate 18 U.S.C. § 1341 and 18 U.S.C. § 1346 in that as Chief Executive Officer of Secant Pharma, LLC he withdrew $7,193.36 from an escrow bank account for royalty payments received from TRx/Zylera Pharmaceuticals, LLC via the United States Postal Service or commercial interstate carrier, where upon he defrauded the complainant out of $719.34 of rightfully due royalty payment.

In violation of Title 18, United States Code, Section 1341 and Section 1346.

**PROPOSED COUNT SEVEN**
**MAIL FRAUD AND SWINDLE**
**18 U.S.C. § 1341 and § 1346**
**THE COMPLAINANT FURTHER CHARGES THAT:**

16.    On or about 4-1-09 at Langhorne, in the Eastern District of Pennsylvania, or in another location defendant DiRocco did aid and abet defendant Lombardi so as to violate 18 U.S.C. § 1341 and 18 U.S.C. § 1346 in that as Vice President of Secant Pharma, LLC and Chief Executive Officer of SylvanLabs, LLC defendant DiRocco participated in the withdrawal of $7,193.36 from an escrow bank account for royalty payments received from TRx/Zylera Pharmaceuticals, LLC via the United States Postal Service or commercial interstate carrier, where upon he assisted in defrauding the complainant out of $719.34 of rightfully due royalty payment.

    In violation of Title 18, United States Code, Section 1341 and Section 1346.


**PROPOSED COUNT EIGHT**
**THEFT OR RECEIPT OF STOLEN MAIL MATTER GENERALLY**
18 U.S.C. § 1708
**THE COMPLAINANT FURTHER CHARGES THAT:**

17.    With reference to the present Affidavit, the complainant maintains that 18 U.S.C. § 1708 is material in the following respects.  Section 18 U.S.C. § 1708 applies wherein the defendants did steal and by fraud and deception obtain a part of a license royalty payment from a licensing company originally transmitted to Secant Pharma, LLC within a letter via a post office or any private or commercial interstate carrier, whereby the defendants embezzled said royalty payment contained therein.

    On or about 9-26-07 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did violate 18 U.S.C. § 1708 in that as Chief Executive Officer of Secant Pharma, LLC he received a $75,000.00 royalty payment from Altheus Therapeutics, Inc. via the United States Postal Service or commercial interstate carrier, where upon he defrauded the complainant out of $7,500.00 of rightfully due royalty payment.

    In violation of Title 18, United States Code, Section 1708.


**PROPOSED COUNT NINE**
**THEFT OR RECEIPT OF STOLEN MAIL MATTER GENERALLY**
18 U.S.C. § 1708
**THE COMPLAINANT FURTHER CHARGES THAT:**

18.    On or about 9-26-07 at Langhorne, in the Eastern District of Pennsylvania, or in another location defendant DiRocco did aid and abet defendant Lombardi so as to violate 18 U.S.C. § 1708 in that as Vice President of Secant Pharma, LLC and Chief Executive Officer of SylvanLabs, LLC defendant DiRocco participated in the receipt of a $75,000.00 royalty payment from Altheus Therapeutics, Inc. via the United States

Postal Service or commercial interstate carrier, where upon he assisted in defrauding the complainant out of $7,500.00 of rightfully due royalty payment.

In violation of Title 18, United States Code, Section 1708.

## PROPOSED COUNT TEN
## THEFT OR RECEIPT OF STOLEN MAIL MATTER GENERALLY
## 18 U.S.C. § 1708
## THE COMPLAINANT FURTHER CHARGES THAT:

**19.**    On or about 8-22-08 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did violate 18 U.S.C. § 1708 in that as Chief Executive Officer of Secant Pharma, LLC he received a $50,000.00 royalty payment from Altheus Therapeutics, Inc. via the United States Postal Service or commercial interstate carrier, where upon he defrauded the complainant out of $5,000.00 of rightfully due royalty payment.

In violation of Title 18, United States Code, Section 1708.

## PROPOSED COUNT ELEVEN
## THEFT OR RECEIPT OF STOLEN MAIL MATTER GENERALLY
## 18 U.S.C. § 1708
## THE COMPLAINANT FURTHER CHARGES THAT:

**20.**    On or about 8-22-08 at Langhorne, in the Eastern District of Pennsylvania, or in another location defendant DiRocco did aid and abet defendant Lombardi so as to violate 18 U.S.C. § 1708 in that as Vice President of Secant Pharma, LLC and Chief Executive Officer of SylvanLabs, LLC defendant DiRocco participated in the receipt of a $50,000.00 royalty payment from Altheus Therapeutics, Inc. via the United States Postal Service or commercial interstate carrier, where upon he assisted in defrauding the complainant out of $5,000.00 of rightfully due royalty payment.

In violation of Title 18, United States Code, Section 1708.

## PROPOSED COUNT TWELVE
## THEFT OR RECEIPT OF STOLEN MAIL MATTER GENERALLY
## 18 U.S.C. § 1708
## THE COMPLAINANT FURTHER CHARGES THAT:

**21.**    On or about 4-1-09 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did violate 18 U.S.C. § 1708 in that as Chief Executive Officer of Secant Pharma, LLC he withdrew $7,193.36 from an escrow bank account for royalty payments received from TRx/Zylera Pharmaceuticals, LLC via the United States Postal Service or commercial interstate carrier, where upon he defrauded the complainant out of $719.34 of rightfully due royalty payment.

In violation of Title 18, United States Code, Section 1708.

**PROPOSED COUNT THIRTEEN**
**THEFT OR RECEIPT OF STOLEN MAIL MATTER GENERALLY**
**18 U.S.C. § 1708**
**THE COMPLAINANT FURTHER CHARGES THAT:**

**22.**   On or about 4-1-09 at Langhorne, in the Eastern District of Pennsylvania, or in another location defendant DiRocco did aid and abet defendant Lombardi so as to violate 18 U.S.C. § 1708 in that as Vice President of Secant Pharma, LLC and Chief Executive Officer of SylvanLabs, LLC defendant DiRocco participated in the withdrawal of $7,193.36 from an escrow bank account for royalty payments received from TRx/Zylera Pharmaceuticals, LLC via the United States Postal Service or commercial interstate carrier, where upon he assisted in defrauding the complainant out of $719.34 of rightfully due royalty payment.

In violation of Title 18, United States Code, Section 1708.


**PROPOSED COUNT FOURTEEN**
**LAUNDERING OF MONETARY INSTRUMENTS**
**18 U.S.C. § 1956**
**THE COMPLAINANT FURTHER CHARGES THAT:**

**23.**   With reference to the present Affidavit, the complainant maintains that 18 U.S.C. § 1956 is material in the following respects.  Section 18 U.S.C. § 1956 applies wherein the financial transaction involved the proceeds of specified unlawful activity that was part of a set of parallel or dependent transactions, at least one of which involved the proceeds of specified unlawful activity, and all of which were part of a single plan or arrangement.  As used in 18 U.S.C. § 1956, the term "transaction" includes a transfer, delivery, or other disposition, and with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, to a financial institution, by whatever means effected.  As used in 18 U.S.C. § 1956, the term "financial transaction" means a transaction which in any way or degree affects interstate or foreign commerce, involves the movement of funds by wire or other means, involves one or more monetary instruments, or involves the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.  As used in 18 U.S.C. § 1956, the term "monetary instruments" means coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders.  As used in 18 U.S.C. § 1956, the term "specified unlawful activity" includes any act or activity constituting an offense listed in section 1961 (1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31 and includes an offense under section 1708 (theft from the mail).  As used in 18 U.S.C. § 1956, any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.  For purposes of 18 U.S.C. § 1956, a transfer of funds from 1 place to another, by wire or any other means, shall constitute a single, continuing transaction and any person who conducts (as that term is defined in subsection (c)(2)) any portion of the transaction may be charged in any district in which the transaction takes place.  As used in 18 U.S.C. § 1961, the definition of "racketeering activity" includes any act that is indictable under title 18, United States Code, section 1341 (relating to mail fraud) and 1956 (relating to

35

the laundering of monetary instruments).  As used in 18 U.S.C. § 1961, the definition of "person" includes any individual or entity capable of holding a legal or beneficial interest in property.  As used in 18 U.S.C. § 1961, the definition of  "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.  As used in 18 U.S.C. § 1961, the definition of "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the initial effective date and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.  As used in 18 U.S.C. § 1961, the definition of "documentary material" includes any book, paper, document, record, recording, or other material.

On or about 9-26-07 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did fraudulently transfer embezzled royalty income rightfully due to the complainant to his own personal bank account on the pretext that said fraudulently transferred royalty income was Secant Pharma, LLC or SylvanLabs, LLC management fee compensation.  With reference to 18 U.S.C. § 1956, the defendant did (1) know that the property involved in this financial transaction represents the proceeds of some form of unlawful activity, (2) proceed with the intent to promote the carrying on of this specified unlawful activity, and (3) know that the transaction was designed in whole or in part to conceal or disguise the nature and the source of the proceeds of said specified unlawful activity.

In violation of Title 18, United States Code, Section 1956.

## PROPOSED COUNT FIFTEEN
## LAUNDERING OF MONETARY INSTRUMENTS
## 18 U.S.C. § 1956
## THE COMPLAINANT FURTHER CHARGES THAT:

**24.**    On or about 9-26-07 at Langhorne, in the Eastern District of Pennsylvania, defendant DiRocco did fraudulently transfer embezzled royalty income rightfully due to the complainant to his own personal bank account on the pretext that said fraudulently transferred royalty income was Secant Pharma, LLC or SylvanLabs, LLC management fee compensation.  With reference to 18 U.S.C. § 1956, the defendant did (1) know that the property involved in this financial transaction represents the proceeds of some form of unlawful activity, (2) proceed with the intent to promote the carrying on of this specified unlawful activity, and (3) know that the transaction was designed in whole or in part to conceal or disguise the nature and the source of the proceeds of said specified unlawful activity.

In violation of Title 18, United States Code, Section 1956.

## PROPOSED COUNT SIXTEEN
## LAUNDERING OF MONETARY INSTRUMENTS
## 18 U.S.C. § 1956

**THE COMPLAINANT FURTHER CHARGES THAT:**

**25.** On or about 8-22-08 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did fraudulently transfer embezzled royalty income rightfully due to the complainant to his own personal bank account on the pretext that said fraudulently transferred royalty income was Secant Pharma, LLC or SylvanLabs, LLC management fee compensation. With reference to 18 U.S.C. § 1956, the defendant did (1) know that the property involved in this financial transaction represents the proceeds of some form of unlawful activity, (2) proceed with the intent to promote the carrying on of this specified unlawful activity, and (3) know that the transaction was designed in whole or in part to conceal or disguise the nature and the source of the proceeds of said specified unlawful activity.

In violation of Title 18, United States Code, Section 1956.

**PROPOSED COUNT SEVENTEEN**
**LAUNDERING OF MONETARY INSTRUMENTS**
**18 U.S.C. § 1956**
**THE COMPLAINANT FURTHER CHARGES THAT:**

**26.** On or about 8-22-08 at Langhorne, in the Eastern District of Pennsylvania, defendant DiRocco did fraudulently transfer embezzled royalty income rightfully due to the complainant to his own personal bank account on the pretext that said fraudulently transferred royalty income was Secant Pharma, LLC or SylvanLabs, LLC management fee compensation. With reference to 18 U.S.C. § 1956, the defendant did (1) know that the property involved in this financial transaction represents the proceeds of some form of unlawful activity, (2) proceed with the intent to promote the carrying on of this specified unlawful activity, and (3) know that the transaction was designed in whole or in part to conceal or disguise the nature and the source of the proceeds of said specified unlawful activity.

In violation of Title 18, United States Code, Section 1956.

**PROPOSED COUNT EIGHTEEN**
**LAUNDERING OF MONETARY INSTRUMENTS**
**18 U.S.C. § 1956**
**THE COMPLAINANT FURTHER CHARGES THAT:**

**27.** On or about 4-1-09 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did fraudulently transfer embezzled royalty income rightfully due to the complainant to his own personal bank account on the pretext that said fraudulently transferred royalty income was Secant Pharma, LLC or SylvanLabs, LLC management fee compensation. With reference to 18 U.S.C. § 1956, the defendant did (1) know that the property involved in this financial transaction represents the proceeds of some form of unlawful activity, (2) proceed with the intent to promote the carrying on of this specified unlawful activity, and (3) know that the transaction was

designed in whole or in part to conceal or disguise the nature and the source of the proceeds of said specified unlawful activity.

In violation of Title 18, United States Code, Section 1956.

**PROPOSED COUNT NINETEEN**
**LAUNDERING OF MONETARY INSTRUMENTS**
18 U.S.C. § 1956
THE COMPLAINANT FURTHER CHARGES THAT:
28.    On or about 4-1-09 at Langhorne, in the Eastern District of Pennsylvania, defendant DiRocco did fraudulently transfer embezzled royalty income rightfully due to the complainant to his own personal bank account on the pretext that said fraudulently transferred royalty income was Secant Pharma, LLC or SylvanLabs, LLC management fee compensation.  With reference to 18 U.S.C. § 1956, the defendant did (1) know that the property involved in this financial transaction represents the proceeds of some form of unlawful activity, (2) proceed with the intent to promote the carrying on of this specified unlawful activity, and (3) know that the transaction was designed in whole or in part to conceal or disguise the nature and the source of the proceeds of said specified unlawful activity.

In violation of Title 18, United States Code, Section 1956.

**PROPOSED COUNT TWENTY**
**TRANSPORTATION OF STOLEN GOODS, SECURITIES, MONEYS, FRAUDULENT STATE TAX STAMPS, OR ARTICLES USED IN COUNTERFEITING**
**18 U.S.C. § 2314**
**THE COMPLAINANT FURTHER CHARGES THAT:**
**29.**    With reference to the present Affidavit, the complainant maintains that 18 U.S.C. § 2314 is material in the following respect.  Section 18 U.S.C. § 2314 applies wherein the defendants did transfer in interstate commerce money of the value of $5,000 or more, knowing the same to have been taken by fraud and wherein the defendants did devise a scheme to obtain money by means of false or fraudulent pretenses and cause said money to be transported in interstate commerce in the execution of a scheme to defraud the complainant of money having a value of $5,000 or more.

On or about 9-26-07 and on or about 8-22-08 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did embezzle and then fraudulently transfer across state line from Pennsylvania to New Jersey royalty income rightfully due to the complainant to the personal bank account of defendant DiRocco on the pretext that said fraudulently transferred royalty income was Secant Pharma, LLC and/or SylvanLabs, LLC management fee compensation.

In violation of Title 18, United States Code, Section 2314.

**PROPOSED COUNT TWENTY-ONE**
**TRANSPORTATION OF STOLEN GOODS, SECURITIES, MONEYS, FRAUDULENT**
**STATE TAX STAMPS, OR ARTICLES USED IN COUNTERFEITING**
**18 U.S.C. § 2314**
**THE COMPLAINANT FURTHER CHARGES THAT:**

**30.**    On or about 9-26-07 and on or about 8-22-08 at Langhorne, in the Eastern
District of Pennsylvania, defendant DiRocco did embezzle and then fraudulently
transfer across state line from Pennsylvania to New Jersey royalty income rightfully
due to the complainant to the personal bank account of defendant DiRocco on the
pretext that said fraudulently transferred royalty income was Secant Pharma, LLC
and/or SylvanLabs, LLC management fee compensation.

    In violation of Title 18, United States Code, Section 2314.


**PROPOSED COUNT TWENTY-TWO**
**TAX RETURN FRAUD AND FALSE STATEMENTS**
**26 U.S.C. § 7206**
**THE COMPLAINANT FURTHER CHARGES THAT:**

**31.**    With reference to the present Affidavit, the complainant maintains that 26 U.S.C. § 7206 is material in the
following respect.  Section 26 U.S.C. § 7206 applies wherein the defendants did
willfully make tax returns which they did not believe to be true and correct as to every
material matter; or wherein the defendants falsified any book, document, or record, or
made any false statement, relating to the estate or financial condition of the taxpayer
or other person liable in respect of the tax.

    On or about 4-15-08 at Langhorne, in the Eastern District of Pennsylvania,
defendant Lombardi did file a Federal personal income tax return that falsely
represented embezzled royalty income defrauded from the complainant in 2007 as
legally obtained management fee compensation obtained from Secant Pharma, LLC
and/or SylvanLabs, LLC management fee compensation.

    In violation of Title 26, United States Code, Section 7206.


**PROPOSED COUNT TWENTY-THREE**
**TAX RETURN FRAUD AND FALSE STATEMENTS**
**26 U.S.C. § 7206**
**THE COMPLAINANT FURTHER CHARGES THAT:**

**32.**    On or about 4-15-08 at Allentown, New Jersey, defendant DiRocco did file a
Federal personal income tax return that falsely represented embezzled royalty income
defrauded from the complainant in 2007 as legally obtained management fee
compensation obtained from Secant Pharma, LLC and/or SylvanLabs, LLC
management fee compensation.

    In violation of Title 26, United States Code, Section 7206.

**PROPOSED COUNT TWENTY-FOUR**
**TAX RETURN FRAUD AND FALSE STATEMENTS**
**26 U.S.C. § 7206**
**THE COMPLAINANT FURTHER CHARGES THAT:**
**33.**    On or about 4-15-09 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did file a Federal personal income tax return that falsely represented embezzled royalty income defrauded from the complainant in 2008 as legally obtained management fee compensation obtained from Secant Pharma, LLC and/or SylvanLabs, LLC management fee compensation.
        In violation of Title 26, United States Code, Section 7206.


**PROPOSED COUNT TWENTY-FIVE**
**TAX RETURN FRAUD AND FALSE STATEMENTS**
**26 U.S.C. § 7206**
**THE COMPLAINANT FURTHER CHARGES THAT:**
**34.**    On or about 4-15-09 at Allentown, New Jersey, defendant DiRocco did file a Federal personal income tax return that falsely represented embezzled royalty income defrauded from the complainant in 2008 as legally obtained management fee compensation obtained from Secant Pharma, LLC and/or SylvanLabs, LLC management fee compensation.
        In violation of Title 26, United States Code, Section 7206.


**PROPOSED COUNT TWENTY-SIX**
**PRINCIPALS – AIDING AND ABETTING**
**18 U.S.C. § 2**
**THE COMPLAINANT FURTHER CHARGES THAT:**
**35.**    With reference to the present Affidavit, the complainant maintains that 18 U.S.C. § 2 is material in the following respect.  Section 18 U.S.C. § 2 applies wherein the defendants did willfully commit offenses against the United States.
        On or about 9-26-07 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did violate 18 U.S.C. § 1341 and 18 U.S.C. § 1346 in that as Chief Executive Officer of Secant Pharma, LLC he received a $75,000.00 royalty payment from Altheus Therapeutics, Inc. via the United States Postal Service or commercial interstate carrier, where upon he defrauded the complainant out of $7,500.00 of rightfully due royalty payment, said embezzlement scheme being predicated upon a license agreement between Secant Pharma, LLC and Altheus Therapeutics, Inc. involving rights to one or more United States Patents and Patent Applications. Accordingly, the United States is a victim of said alleged crime insofar as documents issued by the United States Government have been used to aid and abet in the racketeering scheme.
        In violation of Title 18, United States Code, Section 2.


40

**PROPOSED COUNT TWENTY-SEVEN**
**PRINCIPALS – AIDING AND ABETTING**
**18 U.S.C. § 2**
**THE COMPLAINANT FURTHER CHARGES THAT:**
**36.**    On or about 9-26-07 at Langhorne, in the Eastern District of Pennsylvania, or in another location defendant DiRocco did aid and abet defendant Lombardi so as to violate 18 U.S.C. § 1341 and 18 U.S.C. § 1346 in that as Vice President of Secant Pharma, LLC and Chief Executive Officer of SylvanLabs, LLC defendant DiRocco participated in the receipt of a $75,000.00 royalty payment from Altheus Therapeutics, Inc. via the United States Postal Service or commercial interstate carrier, where upon he assisted in defrauding the complainant out of $7,500.00 of rightfully due royalty payment, said embezzlement scheme being predicated upon a license agreement between Secant Pharma, LLC and Altheus Therapeutics, Inc. involving rights to one or more United States Patents and Patent Applications.  Accordingly, the United States is a victim of said alleged crime insofar as documents issued by the United States Government have been used to aid and abet in the racketeering scheme.
    In violation of Title 18, United States Code, Section 2.

**PROPOSED COUNT TWENTY-EIGHT**
**PRINCIPALS – AIDING AND ABETTING**
**18 U.S.C. § 2**
**THE COMPLAINANT FURTHER CHARGES THAT:**
**37.**    On or about 8-22-08 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did violate 18 U.S.C. § 1341 and 18 U.S.C. § 1346 in that as Chief Executive Officer of Secant Pharma, LLC he received a $50,000.00 royalty payment from Altheus Therapeutics, Inc. via the United States Postal Service or commercial interstate carrier, where upon he defrauded the complainant out of $5,000.00 of rightfully due royalty payment, said embezzlement scheme being predicated upon a license agreement between Secant Pharma, LLC and Altheus Therapeutics, Inc. involving rights to one or more United States Patents and Patent Applications. Accordingly, the United States is a victim of said alleged crime insofar as documents issued by the United States Government have been used to aid and abet in the racketeering scheme.
    In violation of Title 18, United States Code, Section 2.

**PROPOSED COUNT TWENTY-NINE**
**PRINCIPALS – AIDING AND ABETTING**
**18 U.S.C. § 2**
**THE COMPLAINANT FURTHER CHARGES THAT:**
**38.**    On or about 8-22-08 at Langhorne, in the Eastern District of Pennsylvania, or in another location defendant DiRocco did aid and abet defendant Lombardi so as to violate 18 U.S.C. § 1341 and 18 U.S.C. § 1346 in that as Vice President of Secant

Pharma, LLC and Chief Executive Officer of SylvanLabs, LLC defendant DiRocco participated in the receipt of a $50,000.00 royalty payment from Altheus Therapeutics, Inc. via the United States Postal Service or commercial interstate carrier, where upon he assisted in defrauding the complainant out of $5,000.00 of rightfully due royalty payment, said embezzlement scheme being predicated upon a license agreement between Secant Pharma, LLC and Altheus Therapeutics, Inc. involving rights to one or more United States Patents and Patent Applications.  Accordingly, the United States is a victim of said alleged crime insofar as documents issued by the United States Government have been used to aid and abet in the racketeering scheme.

In violation of Title 18, United States Code, Section 2.

**PROPOSED COUNT THIRTY**
**PRINCIPALS – AIDING AND ABETTING**
**18 U.S.C. § 2**
**THE COMPLAINANT FURTHER CHARGES THAT:**

**39.**     On or about 4-1-09 at Langhorne, in the Eastern District of Pennsylvania, defendant Lombardi did violate 18 U.S.C. § 1341 and 18 U.S.C. § 1346 in that as Chief Executive Officer of Secant Pharma, LLC he withdrew $7,193.36 from an escrow bank account for royalty payments received from TRx/Zylera Pharmaceuticals, LLC via the United States Postal Service or commercial interstate carrier, where upon he defrauded the complainant out of $719.34 of rightfully due royalty payment, said embezzlement scheme being predicated upon a license agreement between Secant Pharma, LLC and TRx/Zylera Pharmaceuticals, LLC involving rights to one or more United States Patents and Patent Applications.  Accordingly, the United States is a victim of said alleged crime insofar as documents issued by the United States Government have been used to aid and abet in the racketeering scheme.

In violation of Title 18, United States Code, Section 2.

**PROPOSED COUNT THIRTY-ONE**
**PRINCIPALS – AIDING AND ABETTING**
**18 U.S.C. § 2**
**THE COMPLAINANT FURTHER CHARGES THAT:**

**40.**     On or about 4-1-09 at Langhorne, in the Eastern District of Pennsylvania, or in another location defendant DiRocco did aid and abet defendant Lombardi so as to violate 18 U.S.C. § 1341 and 18 U.S.C. § 1346 in that as Vice President of Secant Pharma, LLC and Chief Executive Officer of SylvanLabs, LLC defendant DiRocco participated in the withdrawal of $7,193.36 from an escrow bank account for royalty payments received from TRx/Zylera Pharmaceuticals, LLC via the United States Postal Service or commercial interstate carrier, where upon he assisted in defrauding the complainant out of $719.34 of rightfully due royalty payment, said embezzlement

scheme being predicated upon a license agreement between Secant Pharma, LLC and TRx/Zylera Pharmaceuticals, LLC involving rights to one or more United States Patents and Patent Applications.  Accordingly, the United States is a victim of said alleged crime insofar as documents issued by the United States Government have been used to aid and abet in the racketeering scheme.

In violation of Title 18, United States Code, Section 2.

## NOTICE OF SPECIAL FINDINGS

**41.**    The allegations of Proposed Counts 1 –31 of this Affidavit are hereby realleged and incorporated by reference as if fully set forth herein.

## DEFENDANT DALE M. LOMBARDI

As to Proposed Counts 1, 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, and 30, defendant Lombardi:

1. was aware of the contractual terms of Attachment A, which defendant Lombardi personally wrote and signed, and which defined the royalty payment rate for the complainant as being twenty percent (20%) in sub-sections 5.1.1 and 5.1.2;

2.  was aware of the contractual terms of Attachment J, which defendant Lombardi personally wrote and signed, and which did not specify a change in the royalty payment rate for the complainant;

3.  was aware of the text of the 7-3-08 email communication to attorney Kathleen Shay (Attachment Q), which defendant Lombardi personally wrote and which did not specify a change in the royalty payment rate for the complainant; and

4.  intentionally conspired with defendant DiRocco in the email statement of Attachment BB so as to falsely claim that he entered into a verbal contract with the complainant and that said verbal contract was witnessed by defendant DiRocco on or about 7-28-07.


## DEFENDANT RICHARD DIROCCO

As to Proposed Counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, and 31, defendant DiRocco:

1. was aware of the contractual terms of Attachment A;

2.  was aware of the contractual terms of Attachment J, which defendant DiRocco personally signed;

3.  was aware of the text of the email communication from defendant Lombardi to attorney Kathleen Shay (Attachment Q), which defendant Lombardi additionally addressed to defendant DiRocco; and

4.  intentionally conspired with defendant Lombardi in the email statement of Attachment BB so as to bear false witness in the form of claiming that he had witnessed a verbal contract between the complainant and defendant Lombardi on or about 7-28-07.

## CONCLUSIONS

**42.**    Based on the foregoing facts, the complainant submits that there is probable cause to believe that during 2007 – 2009 defendants Lombardi and DiRocco misappropriated royalty income payments received via United States Postal Service mail or corresponding private mail service and thereby engaged in a racketeering scheme, committed mail fraud, laundered money obtained by a criminal enterprise, transported money obtained by a criminal enterprise across a state line, filed false Federal government documents in the form of false income tax returns for 2007 and 2008, and used Federal government documents in the form of United States Patents in the course of commission of various crimes involving interstate commerce. Accordingly, the complainant maintains that the defendants have violated Title 18 U.S.C. § 1962(d), Title 18 U.S.C. § 1341, Title 18 U.S.C. § 1346, Title 18 U.S.C. § 1708, Title 18 U.S.C. § 1956, Title 18 U.S.C. § 2314, Title 26 U.S.C. § 7206, and Title 18 U.S.C. § 2.  The complainant hereby petitions the United States Attorney for the Eastern District of Pennsylvania to forward to the United States Federal Court a complaint for these violations and a request for issuance of arrest warrants, thereby authorizing seizure of Dale M. Lombardi and Richard DiRocco when found.

_____                    _____

Howard K. Shapiro                                                      Date
affiant and complainant

## VERIFICATION

I, Howard Kenneth Shapiro, plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the Federal government of the United States of America, that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to <u>28 U.S.C. 1746</u>(1).

Date:    August 17, 2009

Signed:
_____

Printed:      Howard Kenneth Shapiro

[end of quoted text of plaintiff's Affidavit for Redress of Grievances as filed on 8-17-09 at the office of the United States Attorney for the Eastern District of Pennsylvania]

44

**Complaint Regarding Use by Secant Pharma, LLC of the Name "SylvanLabs" for a Subsidiary Corporation**

On 4–5-96 the plaintiff mailed via the USPS an "Application for Registration of Fictitious Name DSCB:54-311 (Rev 90)" to the Department of State of the Commonwealth of Pennsylvania. This application was personally signed by the plaintiff and included a payment as check number 3968 from the plaintiff's personal bank account. The fictitious name registered was "SylvanLab." The plaintiff received the acknowledgement post card for the registration dated 4-10-96.

The plaintiff also received from the Corporation Bureau of the Pennsylvania Department of State a 4-10-96 date-stamped copy of the plaintiff's "Application for Registration of Fictitious Name DSCB:54-311 (Rev 90)." This date-stamped document included a notation of Entity Number 2689433 and a notation of microfilm number 9626-1190. On 4–5-96 the plaintiff also mailed with his "Application for Registration of Fictitious Name DSCB:54-311 (Rev 90)" a personally signed "Consent to Use of Similar Name DSCB:17.3 (Rev 90)." On the "Consent to Use of Similar Name DSCB:17.3 (Rev 90)," the plaintiff represented himself as President of SylvanLab, Inc., a corporation previously registered in Pennsylvania. In the 4-10-96 mailing from the Corporation Bureau of the Pennsylvania Department of State, the plaintiff also received the original signed copy of his "Consent to Use of Similar Name DSCB:17.3 (Rev 90)" with the notation of microfilm number 9626-1189. To accomplish public notification of the fictitious name "SylvanLab," a letter with announcement payment in the amount of $66.00 was mailed to The Montgomery County Law Reporter, 100 West Airy Street, Norristown, PA 19404 as USPS Certified Mail number Z-015-600-618 postmarked 6-19-96.

In Attachment W, the plaintiff stated in part "I would like you to agree to change the name of SylvanLabs, L.L.C. to something else and abandon use of the term SylvanLabs or anything like it. I think that is a simple matter for you to accept. I note that I incorporated a corporation in Pennsylvania named SylvanLab, Inc. in 1994. I also registered the name officially in Pennsylvania at that time. If you wish, I can provide you with copies of documentation on these points. So, I have filing date precedent, which I never assigned to Secant. But in addition, you may loose interest in having a subsidiary LLC named after my father."

The "Application for Registration of Fictitious Name" mailed 4-5-96 included an attached form "Consent to Use of Similar Name DSCB:17.3 (Rev 90)" The "Consent to Use of Similar Name" form was also personally signed by the plaintiff, was also dated 4-5-96, and noted that on 8-15-89 the plaintiff had incorporated SylvanLab, Inc. in the Commonwealth of Pennsylvania.

Yet Mr. Lombardi and Mr. DiRocco have refused to accept this request. In doing so, these parties have continued to use the name "SylvanmLabs," over the written objection of the plaintiff as contained within his USPS Certified Mail letter number 7005-1820-0002-4777-9971 mailed 2-7-09 (Attachment W) and the plaintiff's previous

45

legal registration of the name "SylvanLab."  Having failed to obtain an out-of-court resolution of this dispute because of intransigence on the part of Mr. Lombardi and Mr. DiRocco, the plaintiff is compelled to now plead this matter in Federal District Court.

## Plaintiff's Concluding Statement

As the plaintiff is, in part, alleging <u>fraud</u>, the plaintiff is hereby pleading the <u>facts</u> of the alleged fraud with particularity. (FRCP 9(b)).  On the aforementioned grounds, the plaintiff alleges that material violations of the previously reached contractual agreements between the plaintiff and Secant Pharma, LLC have occurred, amounting to material breach of contract, and accordingly the plaintiff hereby prays that the *United States District Court for the Eastern District of Pennsylvania* will determine that said previously reached contractual agreements are null and void.  In the present civil lawsuit complaint, the plaintiff has presented clear evidence that the executives of Secant Pharma, LLC in the personages of Mr. Lombardi and Mr. DiRocco have committed material violations, i.e., breaches of contract, of their contractual obligations to the plaintiff.  Said material violations of contract terms include acts of fraud committed against the plaintiff with knowledge of their falsity by Mr. Lombardi and Mr. DiRocco.  The plaintiff's evidence shows a criminal pattern of conduct by Mr. Lombardi and Mr. DiRocco, as restated above in the quoted Affidavit for Redress of Grievances as filed by the plaintiff on 8-17-09 at the office of the United States Attorney for the Eastern District of Pennsylvania.  In this alleged criminal pattern of conduct, Mr. Lombardi and Mr. DiRocco showed intent to deceive, manipulate and defraud.  On these grounds, the plaintiff requests the granting of damages as itemized below by the *United States District Court for the Eastern District of Pennsylvania*, thereby nullifying all of the plaintiff's contractual agreements with Secant Pharma, LLC, returning to the plaintiff the ownership of the intellectual property that the plaintiff assigned to Secant Pharma, LLC on 3-17-06, and otherwise granting the plaintiff's present requests of the Court.

## Damages Requested by the Plaintiff

In filing the present civil lawsuit complaint, the plaintiff maintains that he has provided a preponderance of evidence so as to document that Mr. Lombardi and Mr. DiRocco have committed the acts in question.   In the content of the present complaint, the plaintiff maintains that he has succeeded in pleading fraud and misrepresentation with particularity, as required by FED. R. Civ. P. 9(b).  "[A] plaintiff must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir. 1984).  The plaintiff asserts that these acts constitute material breaches of contract, in addition to constituting violations of Federal criminal law.  As allegations of fraud and breach of good faith are

presented herein by the plaintiff, involving intentional wrongdoing, the plaintiff maintains that a basis exists for the award of punitive damages.

The plaintiff hereby petitions the Court for the following damages:

(1) injunctive relief in the form of a declaratory judgment to the effect that any and all contractual agreements such as Attachment A, Attachment B and Attachment J between the plaintiff, on one hand, and Secant Pharma, LLC, on the other, are null and void;

(2) injunctive relief in the form of a declaratory judgment to the effect that hereby Australian Standard Patent No. 698881, issued February 25, 1999 and entitled "Compositions for treatment of chronic inflammatory diseases" is re-assigned from Secant Pharma, LLC to the plaintiff;

(3) injunctive relief in the form of a declaratory judgment to the effect that hereby European Patent No. EP 0-604-641 B1, issued March 20, 2002 and entitled "Use of a combination containing an amine or amine-related derivative of benzoic acid and an amino-polysaccharide in the manufacture of a medicament for the treatment of inflammatory diseases" is re-assigned from Secant Pharma, LLC to the plaintiff;

(4) injunctive relief in the form of a declaratory judgment to the effect that hereby European Patent No. EP 0-572-560 B1, issued January 29, 2003 and entitled "Use of pharmaceutical compounds in the treatment of symptoms of disorders related to neurological diseases and etiologically related symptomology" is re-assigned from Secant Pharma, LLC to the plaintiff;

(5) injunctive relief in the form of a declaratory judgment to the effect that hereby Mexican Patent No. 218894, issued February 3, 2004 and entitled "Compositions and use of pharmaceutical compositions in the treatment of disorders related to chronic inflammatory diseases and etiologically related symptomology" is re-assigned from Secant Pharma, LLC to the plaintiff;

(6) injunctive relief in the form of a declaratory judgment to the effect that hereby Mexican Patent No. 219655, issued March 31, 2004 and entitled "Method of treating neurological diseases and etiologically related symptomology" is re-assigned from Secant Pharma, LLC to the plaintiff;

(7) injunctive relief in the form of a declaratory judgment to the effect that hereby Canadian Patent No. 2,104,594, issued May 11, 2004 and entitled "Use of pharmaceutical compounds in the treatment of symptoms of disorders related to neurological diseases and etiologically related symptomology" is re-assigned from Secant Pharma, LLC to the plaintiff;

(8) injunctive relief in the form of a declaratory judgment to the effect that hereby Canadian Patent No. 2,120,367, issued May 11, 2004 and entitled "Compositions and use of pharmaceutical compositions in the treatment of symptoms of disorders related to chronic inflammatory diseases and etiologically related symptomology" is re-assigned from Secant Pharma, LLC to the plaintiff;

47

(9) injunctive relief in the form of a declaratory judgment to the effect that hereby Canadian Patent Application No. 2,190,107, Filing Date May 11, 1995 and entitled "Compositions for treatment of chronic inflammatory diseases" is re-assigned from Secant Pharma, LLC to the plaintiff;

(10) injunctive relief in the form of a declaratory judgment to the effect that hereby US Patent No. 5,668,117, issued September 16, 1997 and entitled "Methods of treating neurological diseases and etiologically related symptomology using carbonyl trapping agents in combination with previously known medicaments" is re-assigned from Secant Pharma, LLC to the plaintiff;

(11) injunctive relief in the form of a declaratory judgment to the effect that hereby US Patent No. 6,444,221 B1, issued September 3, 2002 and entitled "Methods of treating chronic inflammatory diseases using carbonyl trapping agents" is re-assigned from Secant Pharma, LLC to the plaintiff;

(12) injunctive relief in the form of a declaratory judgment to the effect that hereby US Patent No. 6,746,678 B1, issued June 8, 2004 and entitled "Method of treating neurological diseases and etiologically related symptomology using carbonyl trapping agents in combination with medicaments" is re-assigned from Secant Pharma, LLC to the plaintiff;

(13) injunctive relief in the form of a declaratory judgment to the effect that hereby US Patent Application No. 12/070,518, Filing Date 02/20/2008 and entitled "Compositions and method for treatment of chronic inflammatory diseases" is re-assigned from Secant Pharma, LLC to the plaintiff;

(14) injunctive relief in the form of a declaratory judgment to the effect that hereby Australian Standard Patent No. 668682, issued September 4, 1996 and entitled "Use of pharmaceutical compounds in the treatment of symptoms of disorders related to neurological diseases and etiologically related symptomology" is re-assigned from Secant Pharma, LLC to the plaintiff;

(15) injunctive relief in the form of a declaratory judgment to the effect that hereby Australian Standard Patent No. 674330, issued April 9, 1997 and entitled "Compositions containing amine and amine-related derivatives of benzoic acid and uses therefore including treating inflammatory diseases" is re-assigned from Secant Pharma, LLC to the plaintiff;

(16) injunctive relief in the form of a declaratory judgment to the effect that hereby Australian Standard Patent No. 692454, issued June 11, 1998 and entitled "Pharmaceutical compositions and use thereof for treatment of neurological diseases and etiologically related symptomology" is re-assigned from Secant Pharma, LLC to the plaintiff;

(17) injunctive relief in the form of a declaratory judgment to the effect that hereby Canadian Patent Application No. 2,166,383, Filing Date June 28, 1994 and entitled "Pharmaceutical Compositions and use thereof for treatment of neurological diseases and etiologically related symptomology" is re-assigned from Secant Pharma, LLC to the plaintiff;

48

(18) compensatory damages in the form of payment by any of Secant Pharma, LLC, Mr. Lombardi or Mr. DiRocco of all domestic and foreign patent re-assignment fees and all domestic and foreign patent application re-assignment fees, with payment obligation in the order of Secant Pharma, LLC, Mr. Lombardi and then Mr. DiRocco;

(19) compensatory damages in the form of payment by any of Secant Pharma, LLC, Mr. Lombardi or Mr. DiRocco of all domestic and foreign patent re-activation fees for patents abandoned while having been the property of Secant Pharma, LLC, with payment obligation in the order of Secant Pharma, LLC, Mr. Lombardi and then Mr. DiRocco;

(20) compensatory damages in the form of payment by any of Secant Pharma, LLC, Mr. Lombardi or Mr. DiRocco of all domestic and foreign patent application re-activation fees for patent applications abandoned while having been the property of Secant Pharma, LLC, with payment obligation in the order of Secant Pharma, LLC, Mr. Lombardi and then Mr. DiRocco;

(21) compensatory damages in the form financial restitution in the amount of $13,219.34, corresponding to the amount of royalty income that the plaintiff alleges was defrauded from him in the course of the alleged racketeering scheme of Mr. Lombardi and Mr. DiRocco, plus any additional amount revealed to have been defrauded from the plaintiff during the discovery proceedings of the present civil lawsuit;

(22) compensatory damages in the form financial restitution in the amount corresponding to all of the plaintiff's documented Court fees and costs of suit;

(23) injunctive relief in the form of mandate that Secant Pharma, LLC, any subsidiary of Secant Pharma, LLC, Mr. Lombardi, Mr. DiRocco or any other representative of said corporate entities cease and desist from any use of the name "SylvanLabs" or any obviously similar name in any public activities whatsoever;

(24) injunctive relief in the form of mandate that Secant Pharma, LLC, any subsidiary of Secant Pharma, LLC, Mr. Lombardi, Mr. DiRocco or any other representative of said corporate entities shall disclose to the plaintiff and their registration ownership be transferred to the plaintiff of any Internet name registrations for the term "SylvanLabs" or any close approximation thereof that are presently owned by any of said parties;

(25) injunctive relief in the form of mandate that Secant Pharma, LLC, any subsidiary of Secant Pharma, LLC, Mr. Lombardi, Mr. DiRocco or any other representative of said corporate entities shall disclose to the plaintiff and their registration ownership be transferred to the plaintiff of any copyright registrations for the term "SylvanLabs" or any close approximation thereof that are presently owned by any of said parties;

(26) injunctive relief in the form of mandate that Mr. DiRocco shall be instructed to return to the plaintiff via USPS first class postage any and all notes, photocopies and any other papers whatsoever regarding the medical journal article writing project entitled "The MRADS Protocol™ - A prototype *M*etformin/*R*iluzole/4-*A*minobenzoic acid *D*ietary *S*upplement protocol for treatment of ALS" that the plaintiff loaned to Mr. DiRocco during either June or July of 2006;

49

(27) incidental damages including plaintiff's travel expenses related to the present civil lawsuit, process server fees, other document delivery expenses, the cost of photocopies, and cost of legal instructional books;

(28) punitive damages in the amount of three-times the dollar amount of awarded compensatory damages; and

(29) payment of plaintiff's attorney fees.

## VERIFICATION

I, Howard Kenneth Shapiro, plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the Federal government of the United States of America, that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1).

Dated:    August 17, 2009


Signed:

_____

Printed:   Howard Kenneth Shapiro

## PROOF OF SERVICE

I, Howard Kenneth Shapiro, hereby certify, under penalty of perjury, under the laws of the Federal government of United States of America, that I am at least 18 years of age, a Citizen of the United States of America, and that I personally served the following document(s):

### COMPLAINT FOR BREACH OF CONTRACT
### AND COMPLAINT FOR DAMAGES

**:**

Title 18 U.S.C. § 2, § 1962(d), § 1341, § 1346, § 1708, § 1956 and § 2314, and Title 26 U.S.C. § 7206

by personal appearance at the Office of the Clerk of Court, the United States District Court for the Eastern District of Pennsylvania at Room 2609, *601 Market Street, Philadelphia, PA 19106-1797.*

Dated:    August 17, 2009


Signed:

_____

Printed:   Howard Kenneth Shapiro

Howard Kenneth Shapiro
Plaintiff in *Pro Se*
214 Price Avenue, Apt. F-32
Narberth, PA 19072
telephone 484-620-6750

email Howard.K.Shapiro@comcast.net
All Rights Reserved without Prejudice

51