# BUSINESS and REVENUE SHARE AGREEMENT

This Business and Revenue Share AGREEMENT ("Agreement") is made by and between **SECANT PHARMA, LLC,** a Pennsylvania limited liability company whose registered address is 907 Edgewood Lane, Langhorne, Pennsylvania 19053, USA ("SECANT"); and **HOWARD K. SHAPIRO, Ph.D.** residing at 214 Price Avenue, Apt. F-32, Narberth, Pennsylvania 19072, USA ("SHAPIRO").

**W H E R E A S:**

- SHAPIRO has exclusively assigned the patents and patent applications listed in Schedule 1. to SECANT as per Assignment Agreements executed on March 17, 2006 and attached hereto as Appendix 1.; and,

- SECANT intends to provide an outlet for the future development and commercialization of product opportunities that can be identified from information contained in the aforementioned patents and patent applications; and,

- In partial consideration for the aforementioned assignment and for providing SECANT with the intellectual property and rights therein to develop, and commercialize products, SECANT is prepared to pay to SHAPIRO compensation and other financial benefits as provided below.

NOW THEREFORE, in consideration of the mutual covenants and agreements herein contained, SECANT and SHAPIRO agree as follows:

## I. DEFINITIONS

1.1    In this Agreement, and the Schedules to it, the following words and expressions shall have the following meanings:

**"Accounting Dates"**     means 31 March, 30 June, 30 September, and 31 December.

**"Accounting Period"**     means a three (3) month period ending March 31st, June 30th, September 30th and December 31st of each calendar year. To avoid confusion, it is the period from the Effective Date until the next Accounting Date, each subsequent period terminating on the next following Accounting Date, and in the case of the final accounting period the lesser period ending on the date of expiry or termination.

**"Affiliate"**     means any organization, firm, or entity which, as of the date of this Agreement (A) (i) with respect to which SECANT has ownership interest of more than fifty percent (50%) or (ii) which directly or indirectly, through one or more intermediates, controls, is controlled by, or is in common control with SECANT and (B) is listed on Appendix II attached to this Agreement. If, after the Effective Date, SECANT incorporates or causes to be incorporated a new, affiliated company whose primary purpose is to develop Royalty-Bearing Products, SECANT may amend Appendix II to add such affiliated company to the list of Affiliates, provided SECANT has first given written notice to SHAPIRO of such amendment.

**EXHIBIT A**

Howard Shapiro v Secant Pharma

| | |
|---|---|
| **"Applicable Laws"** | means all laws, ordinances, rules and regulations of any kind whatsoever of any governmental or regulatory authority (international, foreign, federal, state or local), including, without limitation, all laws, ordinances, rules and regulations promulgated by the United States Food and Drug Administration ("FDA"). |
| **"Chargeable Transaction"** | means the manufacture, or use, or leasing, or sale, or gifting, or other disposal of a Royalty-Bearing Product (other than Royalty-Bearing Products returned under warranty or recall) by or on behalf of SECANT or any of its Affiliates or Licensee(s). |
| **"Combination Product"** | means any product that comprises a Royalty-Bearing Product(s) and at least one other active compound or ingredient. |
| **"Deductions"** | means normal trade discounts; and refunds and credits, actually given, for Royalty-Bearing Products returned under warranty; and (only where such items are specifically shown in the invoice and are actually incurred and paid by SECANT) purchase, sales, import or Value Added taxes as well as other compulsory taxes, sales commissions and discounts, duties and governmental charges; and the costs of delivery of and transit insurance for Royalty-Bearing Products. |
| **"Distributor"** | means any person or entity with whom SECANT or one or more of its Affiliates or Licensees establishes a business arrangement for the commercial marketing and/or sale of Royalty-Bearing Products. |
| **"Effective Date"** | means the day on which this Agreement is first executed on behalf of both parties. |
| **"Europe"** | the Member States from time to time of the European Economic Union. |
| **"Fair Market Value"** | means the cash consideration that SECANT or one or more of its Affiliates or Licensees or Distributors would realize from an unaffiliated, unrelated buyer in an arm's length sale of a Royalty-Bearing Product sold in the same quantity and at the same place of the transaction and during the same Accounting Period. |
| **"Field"** | means any and all fields covered by the claims in the Patents. |
| **"Final Form"** | means fully formulated and packaged in a form for ultimate consumer use, and suitable for purchase by a purchaser or distributor who is not undertaking substantial product support or marketing (for example, a drug wholesaler, a chain of drug retailers, a pharmacist or group of pharmacists or a hospital or central purchasing department for a group of hospitals). |
| **"Force Majeure"** | means strikes, lockouts, other industrial disturbances, rebellions, mutinies, epidemics, landslides, lightning, earthquakes, fires, storms, floods, sinking, drought, civil disturbances, explosions, acts or decisions of duly constituted municipal, stat or National Governmental authorities (including without limitation the FDA) or of Courts of Law, impossibility to obtain equipment, supplies, fuel or other required materials, or any other cause similar or completely different, all beyond the control of the Party pleading force majeure |

# EXHIBIT  A

Howard Shapiro v Secant Pharma

preventing the party from performing its rights and obligations and not to be overcome by due diligence of such party.

**"GAAP"**    means United States generally accepted accounting principles consistently applied.

**"IPR"**    means PATENTS, trademarks and the Know-How and the copyright therein, if any.

**"Know-How"**    means all confidential and proprietary technical information, data, knowledge, techniques, processes, samples, compounds, biological material, formulae and other materials, and information, which is or has already been disclosed or supplied to SECANT by or on behalf of SHAPIRO for the purpose of this Agreement.

**"Inventions"**    the inventions which are the subject of the Assigned Patents;

**"Licensee"**    means any third party that obtains a license from SECANT to practice any invention under any Patent or to utilize the know-how.

**"Major Markets"**    USA, Mexico, Canada, Japan, Europe

**"Marketing Approval"**    means the grant to SECANT or any Licensee by a body or bodies having responsibility for the regulation of medicinal Royalty-Bearing Products in a particular market of approval for Royalty-Bearing Products to be placed on that market.

**"Net Price"**    means (i) the gross price (before taxes, discounts and other Deductions) to customers as charged or invoiced for a Royalty-Bearing Product in Final Form which is the subject of a Chargeable Transaction, less any Sales Adjustments and other Deductions;

(ii) if SECANT disposes of a Royalty-Bearing Product in any transaction that is not at arm's length, then the Net Price in respect of such Royalty-Bearing Product shall be deemed to be the Fair Market Value less any Deductions;

(iii) if SECANT uses a Royalty-Bearing Product, or if SECANT disposes of a Royalty-Bearing Product at no charge or at a nominal charge, or for non-cash consideration, then this shall be deemed to be a sale of the Royalty-Bearing Product to a customer, and the Net Price shall be Fair Market Value which would have been charged by SECANT in an arm's length sale of such Royalty-Bearing Product in the relevant country to a customer at the date of commencement of such use, or at the date of the disposal (as the case may be), less any Deductions. For the purpose of this provision (iii), there shall be excluded from inclusion in "Net Price" disposal of reasonable quantities of Royalty-Bearing Product (a) for treatment IND or compassionate patient use only, and (b) for use by academic institutions for own internal non-commercial research only, and (c) for use by commercial entities for own internal non-commercial research only, and (d) for use as samples only;

(iv) in the event the Royalty-Bearing Product is sold as part of a Combination Product, the Net Price from the Combination Product shall be determined by

**EXHIBIT A**

Howard Shapiro v Secant Pharma

multiplying the Net Price of the Combination Product (as defined in the standard Net Price definition above) during the applicable Accounting Period, by the fraction, A/A+B, where A is the average sale price of the Royalty-Bearing Product when sold separately in Final Form and B is the average sale price of the other product(s) included in the Combination Product when sold separately in Final Form, in each case during the applicable Accounting Period in which sales of both occurred. In the event that such average sale price cannot be determined for both the Royalty-Bearing Product and all other product(s) included in the Combination Product, Net Price for the purposes of determining royalty payments shall be calculated by multiplying the Net Price of the Combination Product by the fraction C/C+D where C is the Fair Market Value of the Royalty-Bearing Product and D is the fair market value of all other product(s) included in the Combination Product;

(v) SECANT may determine that additional research, development and testing is required in order to effectively develop and commercialize a particular Royalty-Bearing Product. If SECANT incurs costs in connection with such additional research, development and testing for a particular Royalty-Bearing Product, SECANT may deduct such costs from royalties due under Net Price and payable to SHAPIRO for that particular Royalty-Bearing Product. Net Price shall not include funds paid to SECANT for the purchase of debt or equity securities services rendered or reimbursement of expenses.

(vi) patent expenses actually paid by SECANT on or after July 24, 2005 until the termination of this Agreement related to the filing, prosecution, and maintenance for any and all patents filed and/or issued within the United States and any and all foreign counterpart patents and patent applications; and all continuations, divisionals, continuations-in-part, extensions, reissued patents and reexamination certificates granted thereon, including Supplementary Protection Certificates will also be deductable against Net Price.

**"Net Revenue"**    means the total revenues received by SECANT (before taxes and discounts) for the sale of any Royalty-Bearing Product in Final Form by a Licensee or third party on behalf of SECANT and for which is the subject of a Chargeable Transaction, as well as all amounts received or receivable by SECANT and/or its Affiliates from Licensee(s) in consideration of any grant of rights with respect to the Patents, Royalty-Bearing Product, less any Deduction(s) already described above or as follows:

(i)    deductions for any past or ongoing patent expenses actually paid by SECANT on or after July 24, 2005 until the termination of this Agreement related to the filing, prosecution, and maintenance for any and all patents filed and/or issued within the United States and any and all foreign counterpart patents and patent applications; and all continuations, divisionals, continuations-in-part, extensions, reissued patents and reexamination certificates granted thereon, including Supplementary Protection Certificates.

(ii)    Net Revenue shall not include funds paid to SECANT for the purchase of debt or equity securities, services rendered or reimbursement of expenses.

Page 4 of 24    Initials _____    Date: 5/3/06

# EXHIBIT  A

Howard Shapiro v Secant Pharma

**"Patents"** means (i) the patents and patent applications, and any patents issuing therefrom, listed on Schedule 1 and all foreign counterpart patents and patent applications; and (ii) all continuation, divisional, continuation-in-part, extension, reissue patents and reexamination certificates granted thereon, including SPCs.

**"Regulatory Approval"** means (i) in the United States, approval of a New Drug Application and satisfaction of any related applicable FDA registration and notification requirements, and (ii) in any Territory other than the United States, approval by any governmental or regulatory body comparable to the FDA that is necessary to make and sell Royalty-Bearing Products commercially in the Territory.

**"Royalty-Bearing Product"** means any and all products, pharmaceutical preparations, and any associated services or diagnostics, derived from SHAPIRO's technology, in Final Form (whether or not in kit form), for use in the FIELD, and which:

(a) falls within the scope of, or utilizes any method or process which falls within the scope of, any Valid Claim within the Patents, or

(b) embodies or utilizes any of the Know-How or the copyright therein.

**"Sales Adjustments"** means all adjustments to the invoiced price of Royalty-Bearing Products (whether in active ingredient form, semi-finished form, Final Form or otherwise) that are considered sales adjustments including, but not limited to, rebates, discounts, value-added taxes, chargebacks, and returns, as required under GAAP.

**"SPCs"** means supplementary protection certificates granted pursuant to Article 10 of the Council Regulation (EEC) No. 1768/92 and any other certificate of similar effect as may be granted in any patent territory.

**"Territory"** means the United States of America and other countries listed in Schedule 1. in which patents and/or patent applications have been filed.

**"Valid Claim"** shall mean a claim of an issued patent and unexpired patent of the Licensed Patents, which claim shall not have been irrevocably abandoned or held invalid in an unappealed or unappealable decision of a court or other authority of competent jurisdiction

1.2    In this Agreement the singular shall, where the context so permits, include the plural and vice versa. Headings to sections are added for convenience only and shall not affect the construction or interpretation of such sections. References in this Agreement to sections and schedules are to sections of and schedules to this Agreement.

## II.    COMMENCEMENT AND OTHER CONSIDERATIONS

2.1    This Agreement shall come into force on the Effective Date.

**EXHIBIT A**

Howard Shapiro v Secant Pharma

2.2    If by the third anniversary and each subsequent anniversary after the Effective Date, SECANT or a Licensee has not obtained Marketing Approval to market products in any of the Major Markets, or commercialized any Royalty-Bearing Products in any markets, then SECANT will pay to SHAPIRO the sum of fifty-thousand US dollars ($50,000) less any and all taxes and other duties payable thereon.

2.3    SECANT is obligated to pay all royalties and other payments specified in ARTICLE V.

2.4    All sums referred to in this Agreement are not refundable.

2.5    In respect of any sum payable by SECANT pursuant to the provisions of this Agreement, whether a lump sum or royalties, SECANT may, by giving SHAPIRO not less than seventy-five (75) days written notice before the due date for the relevant payment, offer to issue to SHAPIRO an additional membership interest in SECANT over and above what SHAPIRO is entitled to as defined in Article III, in whole or part substitution for paying the relevant sum. In such offer, SECANT will attribute a value to such additional membership interest and furnish information and explanations to support how such value has been calculated. If SHAPIRO accepts the said offer, and agrees to the value attributed to the additional membership interests, then SHAPIRO shall so notify SECANT, and SECANT shall issue to SHAPIRO the applicable additional membership  interest in SECANT, free of all charges, liens, and encumbrances, on the date on which the relevant sum would have been payable by SECANT.  SHAPIRO shall execute a subscription agreement containing standard investment representations and a joinder to SECANT's Limited Liability Company Operating Agreement, both in form and substance reasonably satisfactory to SECANT.

2.6    It is agreed that the total for patent costs previously expended by SHAPIRO that will be reimbursed to SHAPIRO as a result of sales of Royalty-Bearing Products that utilize the Patents and Know-How will be three-hundred and sixteen thousand US dollars ($316,000) payable only once whether it is derived from Net Revenue or Net Price.

## III.    ASSIGNMENT FEE AND OTHER BUSINESS CONSIDERATIONS

3.1    In partial consideration of this Agreement and in recognition of the SHAPIRO's decision to irrevocably assign the Patents (except as permitted in Section 16.2.1) as per assignment agreements (attached as Appendix 1.), SECANT agrees to pay to SHAPIRO a one-time, non-refundable assignment fee payable by the issuance to SHAPIRO of a seven percent (7%) membership interest of SECANT, LLC, which membership interest is issuable as of the date hereof, provided that the conditions to issuance set forth in the last sentence of Section 3.1 and Section 3.2 are satisfied.  Except as otherwise provided, the membership interests in SECANT owned by SHAPIRO will be non-voting.  The equity will be issued pursuant to a subscription agreement containing appropriate investment representations.

3.2    In connection with the issuance of membership interests of SECANT to SHAPIRO, SHAPIRO agrees to become a party to the Operating Agreement among SECANT and its security holders by executing the Joinder to the Operating Agreement.

3.3    In no event shall the terms of the operating agreement modify or change the terms of this Agreement which shall survive, the intention being that all terms of the operating agreement shall supplement the terms herein.

**EXHIBIT  A**

IV.    **KNOW-HOW**                    Howard Shapiro v Secant Pharma

4.1    SHAPIRO shall use all reasonable endeavors to ensure that SECANT is furnished with any Know-How relevant to the Patents which exists as of the Effective Date, and which has not already been furnished to SECANT. This shall then be implemented by consultation, during normal working hours at such times and in such manner as SHAPIRO and the SECANT shall agree.

4.2    In relation to the Know-How furnished by or on behalf of SHAPIRO to SECANT, and which either (a) is in documentary or other tangible form and which is, at the time of furnishing, identified as being confidential, or (b) is disclosed orally and which is reduced to documentary or other tangible form and delivered to SECANT within sixty (60) days after oral disclosure, and which is, at the time of such delivery, identified as being confidential, SECANT hereby undertakes that it will, by using at least the same degree of care which it uses with respect to its own information and material of a similar nature, keep such Know-How confidential to itself and to such of its employees, officers, and consultants, as are bound by obligations of confidence which extend to such Know-How and who are directly and necessarily involved in work relating to Royalty-Bearing Products. These obligations shall not apply to any of the Know-How so furnished which:

4.2.1    is, or becomes, in the public domain other than through a breach of this Agreement by SECANT or by persons or entities acquiring the same from or through SECANT; or

4.2.2    can be demonstrated to be already lawfully known to SECANT prior to it being furnished by or through SHAPIRO, and was not subject to any restrictions on disclosure or use; or

4.2.3    can be demonstrated to have been developed by SECANT independently of any of the Know-How; or

4.2.4    is necessarily disclosed by the sale or other disposal of Royalty-Bearing Products embodying any of the Know-How; or

4.2.5    becomes known to SECANT by the action of a third party not in breach of any obligation of confidentiality; or

4.2.6    is required to be disclosed by law, or to be disclosed to or by order of a court or tribunal of competent jurisdiction (and SECANT shall promptly inform SHAPIRO of such disclosure).

4.2.7    Without limiting the effect of this section, a combination of parts of the Know-How shall not be deemed to be in the public domain by reason only that each separate part is in the public domain.

4.3    SECANT may at its discretion disclose such of the Know-How to subcontractors or Licensees as such sub-contractors and Licensee(s) need to know and who are undertaking work relating to Royalty-Bearing Products subcontracted, licensed or sublicensed to them by SECANT

4.4    SHAPIRO shall not disclose the Know-How to any third party, during the period which is the longer of either (a) the subsistence of the last to expire of those of the Patents listed in

**EXHIBIT A**

Schedule 1. or (b) 10 years from the date when any Royalty-Bearing Product is first put on the market in any country by SECANT or any Licensee or sub-licensee.

## V.    ROYALTIES AND OTHER PAYMENTS

5.1    SECANT shall pay to SHAPIRO a royalty at the rate or rates specified below, payable in the manner hereinafter provided, on the Net Revenue and Net Price of all Royalty-Bearing Products that are the subject of each Chargeable Transaction.

   5.1.1    Subject to Sections 5.2 and 5.4 below, if SECANT obtains a Licensee who sells products based exclusively on the Patents then SHAPIRO will receive a twenty percent (20%) royalty of the Net Revenue up to the amount of reimbursable patent expenses of three-hundred and sixteen thousand US dollars ($316,000). After such patent expenses are recovered in totality, the royalty rate will decrease to ten percent (10%) of Net Revenue from that point on until the date of the last to expire of the Patents or marketing and sales of Royalty-Bearing Products ceases, whichever occurs first.

   5.1.2    Subject to Sections 5.2.and 5.4 below, if Secant, on its own, markets products based exclusively on the Patents, then SHAPIRO will receive a twenty percent (20%) royalty of the Net Price of sales up to the amount of reimbursable patent expenses ($316,000). After SHAPIRO's patent expenses are recovered in totality, the royalty rate will decrease to ten percent (10%) of Net Price from that point on until the date of the last to expire of the Licensed Patents or the sales of Royalty-Bearing Products or marketing and sales of Royalty-Bearing Products ceases, whichever occurs first.

   5.1.3    Secant shall provide to SHAPIRO a reduced royalty rate on all Royalty-Bearing Products that utilize Know-How but would not, absence a license from Secant, infringe at least one Valid Claim of one or more of the Patents. The royalty rate will be reduced to one-half (1/2) of the royalty rates specified in Section 5.1.1 and Section 5.1.2.

   5.1.4    In addition, if Secant, on its own, manufactures and markets products based exclusively on the Patents, then SHAPIRO will receive one-time only bonus payments based on Net Price in the following amounts:

      5.1.4.1    For Net Price on sales of all Royalty-Bearing Products so marketed within a calendar year that for the first time reach ten million ($10,000,000) dollars, SHAPIRO will receive a one-time bonus payment of five hundred ($500,000) thousand dollars.

      5.1.4.2    For Net Price on sales of all Royalty-Bearing Products so marketed within a calendar year that for the first time reach twenty-five ($25,000,000) million dollars, SHAPIRO will receive a one-time bonus payment of one million ($1,000,000) dollars.

      5.1.4.3    For Net Price on sales of all Royalty-Bearing Products so marketed within a calendar year that for the first time reach fifty million ($50,000,000) dollars, SHAPIRO will receive a one-time bonus payment of two million ($2,000,000) dollars.

5.1.4.4    For Net Price on sales of all Royalty-Bearing Products so marketed within a calendar year that for the first time reach one hundred million ($100,000,000) dollars, SHAPIRO will receive a one-time bonus payment of five million ($5,000,000) dollars.

5.1.4.5    For avoidance of doubt, the bonus payments will only be paid once for each of the conditions above.

5.2    For each of the above conditions, whether a Licensee sells Royalty-Bearing Products based on the Patents or Secant on its own sells Royalty-Bearing Products based on the Patents, the royalties due from Net Revenue and Net Price will be decreased by one-third (1/3) or thirty-three and one-third (33.3%) percent if the sales of Royalty-Bearing Products is/are only partially based on the Patents and/or Know-How.  Under these conditions and for the avoidance of confusion, the royalty rate on Net Revenue and Net Price will be reduced to thirteen point three-four percent (13.34%) and six point six-seven percent (6.67%) of sales respectively.

5.3    In respect of the same Royalty-Bearing Product, royalty under section 5.1 shall only be payable once.

5.4    In the event SECANT or its Affiliates are required to make royalty payments or upfront fee payments  to one or more third parties to obtain a license or similar right to patent protected technology necessary to make, use or sell Royalty-Bearing Products, SECANT or its Affiliates may deduct the actual cost of such royalty payments and upfront fees paid to the third parties in accordance with the royalty payment and upfront fee schedule outlined in Schedule 2 attached hereto and made a part hereof provided, however, SECANT may not deduct other payments, including, but not limited to, milestone fees or option fees, from royalties due to SHAPIRO. Such a deduction will be reported to SHAPIRO in accordance with Article VI below.

## VI.    ACCOUNTING FOR ROYALTIES

6.1    SECANT shall:

6.1.1    Keep true and detailed accounts and records of all Chargeable Transactions and all royalties and other sums due under this Agreement;

6.1.2    within forty (40) days after each Accounting Date, deliver to SHAPIRO a statement of all royalties and other sums due for the preceding Accounting Period showing separately the Chargeable Transactions and (where relevant), the rate of exchange used or, if it be the case, a statement that no royalties are due;

6.1.3    send with the above statement the amount shown to be due; and

6.1.4    immediately and without demand send to SHAPIRO the difference between an amount already paid and the correct amount shown to be due and payable as a result of verification under Article VIII.

6.2    On termination or expiry of this Agreement, SECANT shall (for purposes of Article XVI) deliver to SHAPIRO the final statement within thirty (30) days after the date of such termination or expiry, and such statement shall include details of royalties on all Royalty-

Bearing Products in the course of being manufactured and of all Royalty-Bearing Products manufactured but not yet disposed of.

6.3    If SECANT defaults in payment of the royalties and other sums due within the relevant period stated above, and for all royalties that remain unpaid for more than thirty (30) days after their due date will bear interest from the due date until paid at a rate two percent (2%) greater than the prime interest rate published in the New York edition of The Wall Street Journal, provided, however, that in no event shall such rate exceed the maximum legal annual interest rate.

## VII.    CURRENCY AND TAXES

7.1    All cash sums payable to SHAPIRO pursuant to this Agreement will be paid in United States Dollars and shall be made by check or wire transfer to an account specified by SHAPIRO. If royalties or other cash amounts accrue in a currency other than United States Dollars, those royalties and other cash amounts will be converted to United States Dollars at the average exchange rate listed in The Wall Street Journal for the sixty (60)-day period ending on the last day of the Accounting Period during which the royalties accrued. SECANT's reports, as required by Section 6.1, will contain a statement setting forth any such computation of the number of United States Dollars remitted.

7.2    Payments shall be made without set-off or deduction, other than such amount as SECANT is required to deduct or withhold by law. In regard to any such deduction, SECANT shall use all reasonable endeavors to enable or assist SHAPIRO to claim recovery or exemption therefrom under any double taxation or similar agreement. Evidence as to the payment of such tax or sum withheld shall, on request, be given by SECANT to SHAPIRO.

## VIII.    VERIFICATION

8.1    SECANT will, and will require and cause its Affiliates, Licensee(s) and Distributors to, keep records that are adequate to establish the accuracy of the reports and the computation of royalties due under this Agreement for a period of not less than three (3) calendar years including the three (3) years following termination or expiration of the Patents. SECANT shall permit any authorized representative appointed by SHAPIRO, upon reasonable notice, access to the premises of SECANT, and access to the accounts, records and relevant documentation of SECANT, and shall provide such information and explanations as the representative shall require to verify that the provisions of this Agreement are being complied with. The representative shall also be permitted to take copies and extracts. If the verification discloses an underpayment to SHAPIRO of more than 5% of the amount due, SECANT shall promptly remit to SHAPIRO the amount of underpayment of royalties due and on demand reimburse SHAPIRO the fees and costs of the representative, and the reasonable costs incurred by SHAPIRO in respect of the verification. SECANT shall also provide to such representative, if so requested, reasonable assistance and information to establish that the relevant transactions are at arm's length.

8.2    SHAPIRO shall keep confidential any information that it may acquire in the exercise of its rights under Section 8.1 with the exception of information which was already lawfully known to it, or which SHAPIRO is required to disclose by law, or which is or becomes in the public domain otherwise than by any default of SHAPIRO.

8.3    Royalties shall be due upon all Royalty-Bearing Products manufactured during the term of this Agreement that remain unsold at the expiration or termination of this Agreement, and

shall be calculated and paid in accordance with Section 5.1, only if and when such inventory is sold. SECANT shall have no obligation to attempt to sell or pay any royalties to SHAPIRO with respect to any such inventory.

8.4    The provisions of this Article VIII and of Articles V, VI, IX, and XI of this Agreement shall remain in full force and effect, notwithstanding the expiry or sooner termination of this Agreement, until the settlement of all subsisting claims thereunder of SHAPIRO.

## IX.    DILIGENCE; COMMERCIALIZATION OF THE ROYALTY-BEARING PRODUCTS.

9.1    SECANT will provide SHAPIRO with semi-annual updates on the progress of its plans for commercial exploitation and marketing of the Royalty-Bearing Products.

9.2    SECANT shall use all commercially reasonable efforts to manufacture, market and sell Royalty-Bearing Products, either directly or through third parties.

9.3    In the event that SECANT is unable for reasons beyond its control (i.e. Force Majeure) to meet any of the above diligence Sections 9.1, 9.2, or if there are significant delays in the commercialization of Royalty-Bearing Products, then the parties shall meet to discuss future actions that can be taken to cure such delays or problems.

9.4    SECANT will comply in all material respects with all Applicable Laws relating to the manufacture, distribution, development, if any, marketing, promotion, importing and exporting of the Royalty-Bearing Products.

9.5    As of the Effective Date, SECANT shall be responsible, financially and otherwise, for all manufacture, development, Regulatory Approval efforts, if any, promotion, marketing and sale of the Royalty-Bearing Products conducted by or for SECANT, and SHAPIRO will have no responsibility or liability for any actions or omissions in connection therewith.

## X.    MARKING

10.1    SECANT shall legibly mark and cause its Affiliates or Licensee(s) to mark the Royalty-Bearing Products or, if not practicable, then any associated packaging or literature, with:

10.1.1   The relevant patent or application number and,

10.1.2   the Universal Copyright Convention copyright symbol or any other symbol or words required or allowed under the laws of any country to indicate copyright ownership.

## XI.    INTELLECTUAL PROPERTY

11.1    SECANT hereby assumes and will have sole responsibility for the prosecution and maintenance of the Patents for the Territory(s) and for all direct and indirect costs, fees, and expenses associated therewith. SECANT or its designees shall keep SHAPIRO informed of the filing, prosecution and maintenance of the Patents; shall furnish to SHAPIRO copies of substantive documents (including office actions and responses) sufficiently in advance to enable SHAPIRO to review and provide comments on such documents; and shall in good faith take SHAPIRO's comments into account.    Notwithstanding the foregoing, SECANT shall give at least sixty (60) days prior written notice to SHAPIRO before SECANT (i) abandons any issued patent within the Licensed Patents; or (ii) abandons or discontinues prosecution of any pending patent application within the Patents in any country or countries;

or (iii) abandons any provisional patent application within the Patents without claiming the benefit of it in a non-provisional patent application; or (iv) withhold payment of any fee necessary or advisable for procuring or keeping in force any Patent. SHAPIRO will have the right by written notice to SECANT within an additional sixty (60) day notice period, to require that SECANT continue to maintain the issued patents, or continue prosecuting the pending patent application in the country or countries proposed for abandonment, or file a non-provisional patent application claiming the benefit of the provisional patent application (as the case may be) or pay the fees necessary or advisable for procuring or keeping in force any Patents, but at SECANT's expense rather than SHAPIRO's. In that event, SHAPIRO will reimburse SECANT for all costs and expenses that SECANT thereafter incurs in connection with such matters within thirty (30) days after receipt of an invoice from SECANT and all other supporting documentation reasonably requested by SHAPIRO. However, SECANT agrees and acknowledges that if SECANT gives notification of abandonment, discontinuation or withholding of payments with respect to any of the Patents as contemplated in any of subsections (i) through (iv) above, and SHAPIRO chooses not to require SECANT to continue to maintain, prosecuting or paying the fees for the relevant Patent(s), then the source of the Patent(s), in this case SHAPIRO, has the right and option to obtain re-assignment of that relevant Patent and to and grant licenses in the relevant Patent to third parties.

## XII.  NEW INTELLECTUAL PROPERTY

12.1    In the event that any new IPR is developed by either SECANT or SHAPIRO separately then the following terms shall apply:

12.1.1    All IPR ownership will be based on inventorship as defined by the United States Patent and Trademark Office and will consist of those Parties or individuals making a significant and material contribution to the discovery, invention or reduction to practice of the new IPR.

12.1.2    All discoveries, inventions, improvements and Know-How and other new IPR developed solely by SECANT or its employees will be beneficially owned by SECANT with no further rights or obligations to SHAPIRO.

12.1.3    All discoveries, inventions, improvements and Know-How and other new IPR developed solely by SHAPIRO will be owned by SHAPIRO with no further rights or obligations to SECANT.

12.2    In the event that SECANT and SHAPIRO engage in a collaborative effort and develop new IPR and SECANT and/or one or more of its employees or AFFILIATES in addition to SHAPIRO are co-inventors on new IPR, then SECANT and SHAPIRO shall be joint owners of the invention(s), all Know-How and information relating to the Invention(s), any applications for patent(s) which may be filed on the Invention(s), or any improvements thereon which arise from continued collaborative research between the parties, and each and every patent covering the Invention(s), or such improvements, that may be issued in the United States of America and in any foreign country. SECANT and SHAPIRO shall each have an undivided interest in the entirety of the invention as defined above.

12.2.1    SHAPIRO offers and SECANT hereby accepts the first right to negotiate for the acquisition of any and all rights, including assignment that SHAPIRO may have in the jointly owned invention. Both Parties agree to negotiate in good faith for not less than ninety (90) days for a license agreement that specifies terms which SECANT may

develop and commercialize the invention in a way that would be beneficial to both Parties.

12.2.2 If after ninety days of good faith negotiations an agreement is not agreed between SECANT and SHAPIRO for the acquisition of SHAPIRO's rights in any jointly owned inventions, then both Parties are free to exercise their unrestricted undivided rights (as defined in section 12.8 below) in the invention and may offer to third parties a non-exclusive royalty-bearing license to make, have made use, lease, sell and otherwise dispose of products or services that may fall under any Valid Claim contained in the jointly owned invention.

12.3   Responsibility for preparing, filing, prosecuting, and maintaining all jointly owned patent applications and patents embodying the invention(s) shall be decided between the parties. Prosecution or maintenance of any patent or patent application shall not be abandoned by SECANT or SHAPIRO without the written consent of the other party.

12.4   SECANT and SHAPIRO will each use their reasonable efforts to assure that the respective co-inventors fully cooperate in the preparation, filing, prosecution, and maintenance of all patent applications and patents embodying the jointly owned invention. Any compensation or payment to an inventor for reasonable expenses for his/her cooperation in the preparation, filing, prosecution, and maintenance of such patent applications and patents shall be borne by SECANT and SHAPIRO respectively.   Each Party shall be responsible for the reimbursement, if any, of their respective inventor.

12.5   SECANT and SHAPIRO will share equally all expenses associated with preparing, filing, prosecuting, and maintaining all patent applications and patents relating to the invention. SECANT shall maintain adequate records showing all expenses incurred, which shall be made available to SHAPIRO for inspection on reasonable notice. In the event that SECANT anticipates the possibility of any extraordinary expenditures arising from the preparation, filing, prosecution, or maintenance of any patent application or patent contemplated by this Agreement, SECANT will provide SHAPIRO with full particulars and shall discuss with SHAPIRO a mutually acceptable course of action prior to incurring such expenditures. SHAPIRO shall reimburse SECANT for its equal share of expenses within sixty (60) days of receiving an invoice from SECANT for such expenses.

12.6   Either party may elect to discontinue its obligation to pay or reimburse expenses ("Terminating Party") associated with any jointly owned patent application or patent within any national jurisdiction upon sixty (60) days written notice to the other party (the "Continuing Party"). The allocation of ownership of the selected patents and patent applications shall be made pursuant to section 12.9 and Article XIII.

12.7   For any Invention(s) that resulted from research sponsored by the Federal Government, the party that receives the related research funding shall be separately responsible for making all reports required by the Federal Government.

12.8   For any jointly owned inventions SECANT and SHAPIRO shall each cooperate to achieve the commercial utilization and exploitation of the Invention and shall keep each other informed of all inquiries and offers by third parties concerning commercial utilization or exploitation. SECANT and SHAPIRO may seek one or more licensees for the commercial development of the invention, and for negotiating, on behalf of itself and the other Party, terms of a license agreement with a prospective licensee. SECANT or SHAPIRO shall negotiate reasonable terms and provisions which preserve the rights of all parties hereto. All

**EXHIBIT A**

Howard Shapiro v Secant Pharma

negotiated agreements shall include adequate provisions (1) to assure that both parties are protected from the unauthorized use of their names in conjunction with this particular invention and (2) to indemnify, defend, and hold both parties harmless from any and all claims, actions, and proceedings, judicial or otherwise, judgments, damages, costs, expenses, and attorneys' fees, arising from or in connection with patent infringement and product liability claims. SECANT and SHAPIRO shall consult with each other and keep each other fully informed as to any licensing negotiations. All licenses with respect to the invention shall be made jointly in the name of both parties. Mutually agreed upon and documented reasonable expenses incurred by either party in an effort to license this Invention shall be repaid to that party out of the proceeds before division of any net proceeds.

12.9    All proceeds received from the licensing or other commercial utilization of the jointly owned invention(s) shall be shared by SECANT and SHAPIRO in the ratio of fifty percent (50%) to SECANT and fifty percent (50%) to SHAPIRO, respectively.

12.10    If, in accordance with Article XIII, a Terminating Party elects to discontinue payment of expenses with respect to any jointly owned patent or patent application in any particular country, then, notwithstanding the other provisions of this Section 12.10 such party shall have no further right to receive any proceeds from the commercial exploitation of such patent application or patent in such country.

12.11    Subject to the rights of publication set forth in Section 12.12, hereof, SECANT and SHAPIRO will retain in confidence and will use reasonable efforts not to disclose to any third party without the consent of the other, the invention(s), including Know-How necessary for practicing the jointly owned invention(s), at any time prior to the filing of the U.S. application.

12.12    Notwithstanding the provisions of Section 12.11, SECANT and SHAPIRO will be free to publish information relating to the jointly owned invention in scientific journals. In furtherance of that publication right, SECANT and SHAPIRO will use their reasonable efforts to assure that their inventor(s) supply the other party with a copy of any manuscript prior to its submission for publication, to permit the other party to evaluate such manuscript in order to determine whether it contains patentable subject matter relating to the invention. At the request of the party to whom the manuscript is submitted, the submission of the manuscript for publication will be delayed in order to enable the preparation and filing of a patent application on any patentable subject matter described in the manuscript. In implementation of the foregoing, within forty-five (45) days after receipt of a manuscript intended for publication, the party receiving the manuscript will notify the other party in writing whether or not a patent application would be filed in accordance with the terms and conditions of this Agreement. If at the end of such forty-five (45) day period, the parties are not able to agree to a mutually acceptable date for submission of the manuscript for publication to enable the implementation of the decision to file a patent application, the party supplying the manuscript shall notify the other party in writing of its intention to submit such manuscript for publication without the party's approval and may do so sixty (60) days after giving such notice.

12.13    Nothing herein contained shall preclude SECANT or SHAPIRO from making required reports or disclosures to any government sponsors or regulatory authorities (i.e., National Institutes of Health, FDA) or any other organizations that provided funding which in whole or in part resulted in the invention and which organization requires reports or disclosures to be made. Each party will comply with its own reporting requirements.

12.14  Nothing herein contained shall preclude SECANT or SHAPIRO from disclosing to third-party Licensees those aspects of the invention necessary for that third party to practice the jointly owned invention as far as necessary in its limited role as Licensee.

12.15  Any disclosure to a third party arising under Section 12.13, or 12.14, of the invention or part of the invention covered by this agreement, shall be protected from further disclosure by requiring the third party to execute a non-disclosure agreement. Disclosure to such a third party shall be contingent upon the execution of such a non-disclosure agreement. The form of the non-disclosure agreement shall be approved by both SECANT and SHAPIRO.

12.16  SECANT and SHAPIRO, and the inventors shall have the right to use the invention for research purposes.

## XIII.  ALLOCATION OF JOINTLY OWNED IPR RIGHTS AND OBLIGATIONS UPON TERMINATION

13.1  The Continuing Party may elect to request assignment of the selected patent rights owned by the Terminating Party in the invention(s) and any licenses issued for said invention(s). The Continuing Party shall make its election and shall advise the Terminating Party in writing within thirty (30) days after receipt of a notice of discontinuance (under Section 12.6). Subject to the assumption by the Continuing Party of sole responsibility for the management and expense of the invention(s), the Terminating Party shall convey to the Continuing Party assignment of the invention(s) and licenses, and shall do all things necessary to transfer file wrappers and other files related to such rights and licenses to the Continuing Party or its designee. The Terminating Party hereby grants to Continuing Party a power of attorney for the Continuing Party to make all such transfers and take all such other actions as necessary.

13.2  Upon perfection of assignments provided for in Section 13.1, the Terminating Party shall have no further rights or obligations with respect to the invention(s), except that the Continuing Party shall: (a) reimburse the Terminating Party pursuant to Section 12.5 its expenses incurred prior to termination and (b) distribute to all inventors any revenues accrued and accruing under continuing licensing arrangements entered into prior to termination.

13.3  Upon perfection of assignments in accordance with this Article XIII, the Continuing Party may thereafter separately license the invention(s), without accounting to the Terminating Party.

13.4  In the event neither SECANT nor SHAPIRO wishes to retain patent rights to invention(s), the inventors of SECANT and SHAPIRO will be duly informed and their viewpoints considered by SECANT in disposing of the invention.

## XIV.  REPRESENTATIONS, WARRANTIES AND DISCLAIMERS.

14.1  SHAPIRO represents and warrants that, as of the Effective Date of this Agreement:

14.1.1  SHAPIRO has the legal power and authority to enter into and perform this Agreement and to transfer the assignment rights defined in Article III to SECANT under this Agreement.

14.1.2  No license or covenant not to sue has been granted to any third party to make, have made, use, have used, develop, have developed, improve, have improved, import, have imported, export, have exported, lease, have leased, sell, and/or have sold any product under the Patents.

# EXHIBIT A

Howard Shapiro v Secant Pharma

14.1.3    SHAPIRO has not made any claim against a third party alleging any infringement, misappropriation or violation of any of the Patents.

14.1.4    There have been no claims or judicial proceedings commenced by or against SHAPIRO concerning any of the Patents or the Know-How.

14.1.5    SHAPIRO has granted no lien or encumbrance involving the Patents or Know-How.

14.1.6    As of the Effective Date, SHAPIRO has not received written notice from any person or entity alleging or claiming that any third party rights would be infringed by practicing the claims of the Patents.

14.1.7    As of the Effective Date, SHAPIRO (a) has not received written notice from any third party alleging or claiming that the Patents are invalid or unenforceable and (b) has no actual knowledge of any fact or circumstance that would render the Patents invalid or unenforceable.

14.2    SECANT    represents and warrants that it has the power and authority to enter into and perform this Agreement.  Each party represents and warrants that this Agreement has been duly authorized and duly executed and delivered by both parties, and it is valid, binding and enforceable against both parties in accordance with its terms.

**14.3    *Except as set forth in this Article XV, neither party makes or extends any other representations or warranties, and SHAPIRO makes no representation or warranties, express, implied or statutory, with respect to the Patents or Know-How that is not expressly set forth in this Article.  Except as expressly provided herein, all Patents and Know-How are made available to SECANT on an "as is" basis; SHAPIRO does not warrant that the Patents are valid or enforceable; or that the exploitation of the Patents does not or will not infringe any existing or future patent of another person.  ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NONINFRINGEMENT OF THIRD PARTY PATENTS, ARE EXPRESSLY DISCLAIMED AND EXCLUDED.  The entire risk to SHAPIRO as to the results obtained by practicing under the Patents and utilizing the Know-How, or performance of the Royalty-Bearing Products, is assumed by SECANT.***

14.4    SHAPIRO and SECANT specifically agree that in no event shall either party be liable for indirect, incidental, special or consequential damages of any kind, including without limitation economic damage or lost profits, even if the party has been advised or is aware of the possibility of such damages.

## XV.    FORCE MAJEURE

15.1    Neither party shall be liable for non-performance of this Agreement due to Force Majeure.

15.2    The parties agree that if either of the find themselves wholly or partially unable to fulfill their respective obligations in this Agreement by reasons of force majeure, the party pleading Force Majeure will as soon as possible notify the other party of its inability to perform giving a detailed explanation of the occurrence which excuses performance.  If said notice is given, the performance of the notifying party shall be abated for as long as performance may be prevented by Force Majeure.

# EXHIBIT A
Howard Shapiro v Secant Pharma

## XVI.  TERM AND TERMINATION.

16.1    The term of this Agreement specifically in regards to the royalty provisions shall commence upon its Effective Date and shall remain in force until the date of expiration of the last to expire of the Patents. All of the other provisions, including those defined in Article III, entitled Assignment Fee and Other Business Considerations shall survive beyond termination of this Agreement.

16.2    If SECANT terminates this Agreement prior to the expiration of the Agreement term ("Termination Date"), then the following will take effect upon the effective date of such termination:

16.2.1  All rights under the Patents, including assignment transferred by SHAPIRO to SECANT pursuant to Article III will terminate, and all rights therein will immediately revert to SHAPIRO with no further notice or action required on SHAPIRO's behalf. Further, any license(s) or sublicense(s) granted by SECANT or its Affiliates shall, at SHAPIRO's sole discretion, either be terminated, or be assigned by SECANT to SHAPIRO such that the license and sublicense becomes a direct license between SHAPIRO and the applicable Licensee.

16.2.2  Upon the Termination date of this Agreement as described above in Section 16.2., the sole responsibility for preparing, filing, prosecuting and maintaining the Patents will revert to SHAPIRO with no further notice or action required on SECANT's behalf; provided, however, that if the termination relates only to a specific country, then only the patent maintenance obligations pertaining to such country will revert to SHAPIRO. In such case, SECANT will maintain their patent responsibilities for all other Patents.

The provisions of Articles V, VI, VIII, XII and XIII shall survive any termination or expiration of this Agreement

## XVII.  NOTICES AND OTHER COMMUNICATIONS.

17.1    Any notice or other communication required or permitted to be made or given to either party shall be sent to the other party by overnight courier service (Federal Express or the like), addressed to the party at its address set forth below, or to such other address as the party may designate by written notice given to the other party.
In the case of SHAPIRO:

**Howard K. SHAPIRO. Ph.D.**
214 Price Avenue,
Apt. F-32,
Narberth, Pennsylvania 19072, USA

## EXHIBIT  A

In the case of SECANT:        Howard Shapiro v Secant Pharma
**Secant Pharma, LLC**
907 Edgewood Lane
Langhorne, Pennsylvania 199053
Attention:  Dale M. Lombardi
Chief Executive Officer


If to SECANT, copy to:
Duane Morris, LLP
30 South 17th Street
Philadelphia, Pennsylvania 19103-4196
Attention: Kathleen M. Shay, Esq.

## XVIII.  ASSIGNMENTS; SUCCESSORS.

18.1    This Agreement and any of the rights or obligations created herein, except for the right to receive any remuneration hereunder, may be assigned by SECANT, in whole or in part, without the prior written consent of SHAPIRO.

18.2    SECANT shall be free to assign this agreement in connection with any merger, consolidation, share exchange or sale of all or substantially all of its assets relating to a line of business to which the Patents or Know-How relate. In addition, SECANT shall be free to assign this Agreement: (i) to a subsidiary or limited partnership of which SECANT is a general partner or (ii)  This Agreement shall bind and inure to the benefit of the successors and permitted assigns of the parties hereto.

18.3    SHAPIRO will not assign any of its rights or privileges under this Agreement, or delegate or subcontract any of its obligations under this Agreement, without the prior written consent of SECANT, which consent will not be unreasonably withheld, conditioned or delayed.

18.4    Subject to any limitations on assignment under this Article XVIII, this Agreement binds all successors in interest and assigns of SECANT and SHAPIRO.  Any successor or assignee of SECANT's or SHAPIRO's interest will expressly assume in writing the performance of all the terms and conditions of this Agreement to be performed by SECANT or SHAPIRO, as the case may be.

## XIX.  MISCELLANEOUS.

19.1    Each of the parties will from time to time at the other's reasonable request and expense, and without further consideration, execute and deliver such other documents and take such further action as the other party may reasonably require to more effectively evidence, perfect, or complete any matter provided for herein.

19.2    Any consent by any party to, or waiver of, a breach by the other party, whether express or implied, will not constitute a consent to, or waiver of, any other different or subsequent breach.

19.3    If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, it shall be severed from this Agreement and the remaining provisions shall remain in full force without being impaired or invalidated in any way.

# EXHIBIT  A

Howard Shapiro v Secant Pharma

19.4   The parties are independent contractors.  Neither party has any express or implied right or authority to assume or create any obligations on behalf of the other or to bind the other to any contract, agreement or undertaking with any third party.

19.5   No amendment or modification of this Agreement shall be valid or binding upon the parties unless made in writing and signed by or on behalf of the party against which enforcement is sought.

19.6   This Agreement will be construed and enforced in accordance with the laws of the Commonwealth of the State of Pennsylvania.  The Pennsylvania State Courts of Philadelphia County, Pennsylvania (or, if there is exclusive federal jurisdiction, the United States District Court for the Eastern District of Pennsylvania ) shall have exclusive jurisdiction and venue over any dispute arising out of this Agreement, and SHAPIRO and SECANT hereby consents to the jurisdiction of such courts.

19.7   This Agreement embodies the entire understanding of the parties and shall supersede all previous communications, representations, or understandings, either oral or written, between the parties relating to the subject matter hereof.

Signature  Page  Follows:

Page 19 of 24   Initials _____   Date: __5/3/06__

# EXHIBIT  A

Howard Shapiro v Secant Pharma

**IN WITNESS WHEREOF**, the parties intending to be legally bound, have caused this Agreement to be duly executed in duplicate original on the dates set forth below, the later of which is the Effective Date.

_____
Howard K. Shapiro, Ph.D.

Date:    _____

SECANT PHARMA, LLC

By:    _____
Dale M. Lombardi

Title:    Chief Executive Officer

Date:    _____

**SCHEDULE 1**          **EXHIBIT  A**
Howard Shapiro v Secant Pharma

**Patents Assigned to SECANT**

In the US

> **Serial No. US 5,668,117** entitled  "Methods Of Treating Neurological Diseases And Etiologically Related Symptomology Using Carbonyl Trapping Agents In Combination With Previously Known Medicaments" issued on 1997-16-09; and

> **Serial No. US 6.444.221** entitled "Methods Of Treating Chronic Inflammatory Diseases Using Carbonyl Trapping Agents" issued on 2002-03-09; and

> **Serial No. US 6,746, 678** entitled "Method Of Treating Neurological Diseases And Etiologically Related Symptomology Using Carbonyl Trapping Agents In Combination With Medicaments" issued on 2004-08-06; and

> **Serial No. US 20050090553** application entitled "Compositions and method for treatment of chronic inflammatory diseases filed on 2004-24-08;

And in Mexico identified as follows:

> **Serial No. MX 218894** entitled "Compositions And Use Of Pharmaceutical Compositions In The Treatment Of Disorders Related To Chronic Inflammatory Diseases And Etiologically Related Symptomology" issued on 2004-03-02; and,

> **Serial No. MX 219655** "Method Of Treating Neurological Diseases And Etiologically Related Symptomology" Mexican, Issued On  2004-31-03; and

And in Canada identified as follows:

> **Serial No. CA 2,104,594** entitled "Use Of Pharmaceutical Compounds In The Treatment Of Symptoms Of Disorders Related To Neurological Diseases And Etiologically Related Symptomology" issued on 2004-11-05; and

> **Serial No. CA 2,120,367** entitled "Compositions And Use Of Pharmaceutical Compositions In The Treatment Of Symptoms Of Disorders Related To Chronic Inflammatory Diseases And Etiologically Related Symptomology" issued on 2004-11-05 ; and

> **Serial No. CA 2190107** application entitled "Compositions For Treatment Of Chronic Inflammatory Diseases" filed on 1995-11-05;

Page 21 of 24    Initials _____   _____  Date: __5/3/06__

**Serial No. CA 2166383** application entitled "Pharmaceutical Compositions And Use Thereof For Treatment Of Neurological Diseases And Etiologically Related Symptomology

And in Australia as follows:

**Australian Standard Patent No. 668682** entitled "Use Of Pharmaceutical Compounds In The Treatment Of Symptoms Of Disorders Related To Neurological Diseases And Etiologically Related Symptomology", issued on 1996-04-09; and,

**Australian Standard Patent No. 674330** entitled "Compositions Containing Amine And Amine-Related Derivatives Of Benzoic Acid And Uses Therefore Including Treating Inflammatory Diseases", issued on 1997-09-04; and,

**Australian Standard Patent No. 692454** entitled "Pharmaceutical Compositions And Use Thereof For Treatment Of Neurological Diseases And Etiologically Related Symptomology", issued on 1998-11-06; and,

**Australian Standard Patent No. 698881** entitled "Compositions For Treatment Of Chronic Inflammatory Diseases", issued on 1999-25-02; and,

And in Europe as follows:

**European Patent No. EP 0-604-641 B1** entitled "Use Of A Combination Containing An Amine Or Amine-Related Derivative Of Benzoic Acid And An Amino-Polysaccharide In The Manufacture Of A Medicament For The Treatment Of Inflammatory Diseases", issued on 2002-20-03; and,

**European Patent No. EP 0-572-560 B1** entitled "Use Of Pharmaceutical Compounds In The Treatment Of Symptoms Of Disorders Related To Neurological Diseases And Etiologically Related Symptomology", issued 2003-29-01.

<u>**Schedule 2**</u>                    **EXHIBIT  A**
Howard Shapiro v Secant Pharma

**Royalty Payment and Upfront Fee Payment Schedule to Third Parties**

<u>**Upfront fees**</u>

Applies only when SECANT enters into an agreement with one or more third parties to obtain a license or similar right to patent protected technology necessary to research, develop, make, use or sell Royalty-Bearing Products.  SECANT or its Affiliates may reduce royalty or other payments due to SHAPIRO up to the full amount of the upfront fee.  The amount of the upfront fee may be amortized over no more than one (1) year from the actual date of the upfront payment made to third party(s) and during which period royalties may be due to SHAPIRO.  SECANT or its Affiliate shall be permitted to deduct upfront fees against royalties only once during the term of this Agreement with SHAPIRO.  For avoidance of doubt, the following examples shall serve as guidance:

<u>Example 1.    Upfront Fee Deduction When No Royalty-Bearing Product Is on the Market</u>
1.    If no Royalty-Bearing Product is marketed within twelve (12) months from the date the upfront fee to a third party is remitted, then no reduction against future royalties due SHAPIRO is permitted.

<u>Example 2.    Upfront Fee Deduction When Sales of Royalty-Bearing Products Occur Within 12 Months</u>
2.    If sales of Royalty-Bearing Products occur within twelve (12) months from the date the upfront fee is remitted to a third party, then royalties may be reduced up to the full amount of the upfront fee and can amortized over the number of accounting period(s) that occur within twelve (12) months of the date of the upfront payment.

<u>Example 3.    Upfront Fee Deduction When Sales of Royalty-Bearing Products Are Ongoing</u>
3.    If an upfront fee is remitted to a third party after the start of sales of Royalty-Bearing Products, then royalties may be reduced up to the full amount of the upfront fee and can amortized over the following four (4) accounting period(s) that occur within one (1) year of the date of the upfront payment.

<u>**Royalty Stacking Formula for SHAPIRO Royalties Rates (before patent expenses are recovered)**</u>

Applies only when SECANT on its own sells Royalty-Bearing Products but requires an additional agreement with one or more third parties to obtain a license or similar right to patent protected technology necessary to research, develop, make, use or sell Royalty-Bearing Products.  SECANT or its Affiliates may reduce royalty payments up to the maximum reimbursable patent expenses ($316,000) due to SHAPIRO according to the following schedule:

| SECANT Royalty to 3rd parties (%) | % deductible against SHAPIRO royalty | Allowable deduction on Royalty to SHAPIRO (%) | Total Royalty to SHAPIRO (%) | MAX Royalty Burden (%) |
|---|---|---|---|---|
| 12.01 and up | max 35.5% of 12.0 | 4.27 | 15.73 - | NA |
| 10.01 to 12.00 | 35.5% | 3.55 - 4.26 | 15.74 – 16.45 | 27.74 |
| 8.01 to 10.00 | 42.6% | 3.41 - 4.26 | 15.74 – 16.59 | 25.74 |
| 6.01 to 8.00 | 53.25% | 3.19 - 4.26 | 15.74 – 16.81 | 23.74 |
| 4.01 to 6.0 | 71% | 2.84 - 4.26 | 15.74 – 17.26 | 21.74 |
| 0.01 to 4.00 | 100% | 0 - 4.0 | 16.00 – 19.99 | 20.00 |

## Schedule 2 (continued)    EXHIBIT A
Howard Shapiro v Secant Pharma

**Royalty Stacking Formula for SHAPIRO Royalties Rates (after patent expenses are recovered)**

Applies only when SECANT on its own sells Royalty-Bearing Products but requires an additional agreement with one or more third parties to obtain a license or similar right to patent protected technology necessary to make, use or sell Royalty-Bearing Products. SECANT or its Affiliates may reduce ongoing royalty payments due to SHAPIRO according to the following schedule:

| SECANT Royalty to 3rd parties (%) | % deductible against SHAPIRO royalty | Allowable deduction on Royalty to SHAPIRO (%) | Total Royalty to SHAPIRO (%) | MAX Royalty Burden (%) |
|---|---|---|---|---|
| 12.01 and up | max 35.5% of 12.0 | 4.27 | 5.73 | N/A |
| 10.01 to 12.00 | 35.5% | 3.55 - 4.26 | 5.74 – 6.45 | 17.74 |
| 8.01 to 10.00 | 42.6% | 3.41 - 4.26 | 5.74 – 6.59 | 15.74 |
| 6.01 to 8.00 | 53.25% | 3.19 - 4.26 | 5.74 – 6.81 | 13.74 |
| 4.01 to 6.0 | 71% | 2.84 - 4.26 | 5.74 – 7.16 | 11.74 |
| 0.01 to 4.00 | 100% | 0 - 4.0 | 6.0 - 10.0 | 10 |

## EXHIBIT   A
Howard Shapiro v Secant Pharma

## ASSIGNMENT

**WHEREAS,** I Howard K. Shapiro herein after referred to as the Assignor, residing at 214 Price Avenue, Apt. F-32, Narberth, Pennsylvania 19072, USA, am the inventor of certain inventions or improvements for which I made application(s) for Letters Patent(s) of the United States, identified as follows:

> **Serial No.   US 5,668,117** entitled, "Methods Of Treating Neurological Diseases And Etiologically Related Symptomology Using Carbonyl Trapping Agents In Combination With Previously Known Medicaments" issued on 1997-16-09; and

> **Serial No. US 6.444.221** entitled, "Methods Of Treating Chronic Inflammatory Diseases Using Carbonyl Trapping Agents" issued on 2002-03-09; and

> **Serial No. US 6,746,678** entitled "Method Of Treating Neurological Diseases And Etiologically Related Symptomology Using Carbonyl Trapping Agents In Combination With Medicaments" issued on 2004-08-06; and

> **Serial No. US 20050090553** application entitled "Compositions and method for treatment of chronic inflammatory diseases filed on 2004-24-08;

WHEREAS, Secant Pharma, LLC, hereinafter referred to as the Assignee is desirous of obtaining the entire interest (one hundred percent) in and to the said inventions or improvements and in and to said applications, and in, and to and under any and all Letters Patent(s) which either have or may be granted on or as a result thereof in any and all countries:

NOW, THEREFORE for and in consideration of the sum of One Dollar ($1.00) to me in hand paid by said Assignee, and other good and valuable consideration the receipt of which is hereby acknowledged, I, the said Assignor have sold, assigned, transferred and set over and by these presents do hereby sell, assign, transfer and set over to assignee a one-hundred percent (100%) undivided interest in and to said inventions or improvements and said patents, applications and any and all continuations, divisionals and renewals of and substitutes for said patents, inventions, improvements, applications, and in, to and under any and all Letters Patent (s) which either have or may be granted on or as a result thereof in the United States and any and all other countries, and any re-issue or re-issues or extension or extensions of said Letters Patent(s), and assign to and authorize said Assignee to file in my name applications for Letters Patent(s) in all countries, the same to be held and enjoyed by said Assignee, its successors, assigns, nominees or legal representatives, to the full end of term or terms for which said Letters Patent(s) respectively have or may be granted, re-issued or extended, as fully and entirely as the same would have been held and enjoyed by me had the assignment, sale and transfer not been made.

Page 1 of 3    Initials _____    Date: 3/17/06

And I hereby covenant that I have the full right to convey the interest herein assigned, and that I have not executed and will not execute any agreement in conflict herewith, and I further covenant and agree that I will each time request is made and without undue delay, execute and deliver all such papers as may be necessary or desirable to perfect the title to said inventions or improvements, said applications and said Letters Patent(s) to said Assignee, its successors, assigns, nominees or legal representatives, and I agree to communicate to said Assignee , or to its nominee all known facts respecting said inventions or improvements, said applications and said Letters Patent(s)  to testify in any legal proceedings, to sign all lawful papers, to execute all disclaimers and divisionals, continuing, re-issue and foreign applications, to make all rightful oaths and generally do everything possible to aid said Assignee, its successors, assigns, nominees and legal representatives to obtain and enforce for its or their own benefit proper patent protection for said inventions or improvements, said applications, and said Letters Patent(s) in any and all countries.

And, I hereby authorize and request the Commissioner of Patents and Trademarks of the United States and any official of any country or countries foreign to the United States whose duty it is to issue patents of applications as aforesaid, to issue to said Assignee as an Assignee of the entire undivided interest (one-hundred percent), any and all Letters Patent(s) for said inventions or improvements including any and all Letters Patent(s) which either have or may be issued and granted on or as a result of aforesaid applications, in accordance with the terms of this assignment.

Signature page Follows:

Howard Shapiro v Secant Pharma

IN WITNESS WHEREOF, I have hereunto set my hand and seal.

For Assignor _____ (L.S.)
                    Howard K. Shapiro, Ph.D.


For Assignee _____ (W.S.)
                    Dale M. Lombardi
                    Chief Executive Officer
                    Secant Pharma, LLC


_____ :

                                        SS

County of _Philadelphia_ :


On this ___17___ day of ___March___ 2006, before me personally came the
above named _Howard K Shapiro_ and _Dale M Lombardi_ to me
personally known and known to me to be the same individuals who executed the foregoing assignment,
and who acknowledged to me that execution of the same was of each person's own free will for the use
and purposes therein set forth.


_____ (seal)
                    Notary Public


NOTARIAL SEAL
Mary Ann Clarke, Notary Public
Philadelphia, Philadelphia County
My commission expires November 14, 2007


Page 3 of 3   Initials _____   Date: __3/17/06__

# EXHIBIT A

Howard Shapiro v Secant Pharma

## ASSIGNMENT

**WHEREAS,** I Howard K. Shapiro herein after referred to as the Assignor, residing at 214 Price Avenue, Apt. F-32, Narberth, Pennsylvania 19072, USA, am the inventor of certain inventions or improvements for which I made application(s) for Letters Patent(s) of Mexico, identified as follows:

> **Serial No. MX 218894** entitled "Compositions And Use Of Pharmaceutical Compositions In The Treatment Of Disorders Related To Chronic Inflammatory Diseases And Etiologically Related Symptomology" issued on 2004-03-02; and,

> **Serial No. MX 219655** entitled "Method Of Treating Neurological Diseases And Etiologically Related Symptomology" Mexican, Issued On 2004-31-03; and

WHEREAS, Secant Pharma, LLC, hereinafter referred to as the Assignee is desirous of obtaining the entire interest (one hundred percent) in and to the said inventions or improvements and in and to said applications, and in, and to and under any and all Letters Patent(s) which either have or may be granted on or as a result thereof in any and all countries:

NOW, THEREFORE for and in consideration of the sum of One Dollar ($1.00) to me in hand paid by said Assignee, and other good and valuable consideration the receipt of which is hereby acknowledged, I, the said Assignor have sold, assigned, transferred and set over and by these presents do hereby sell, assign, transfer and set over to assignee a one-hundred percent (100%) undivided interest in and to said inventions or improvements and said patents, applications and any and all continuations, divisionals and renewals of and substitutes for said patents, inventions, improvements, applications, and in, to and under any and all Letters Patent (s) which either have or may be granted on or as a result thereof in Mexico and any and all other countries, and any re-issue or re-issues or extension or extensions of said Letters Patent(s), and assign to and authorize said Assignee to file in my name applications for Letters Patent(s) in all countries, the same to be held and enjoyed by said Assignee, its successors, assigns, nominees or legal representatives, to the full end of term or terms for which said Letters Patent(s) respectively have or may be granted, re-issued or extended, as fully and entirely as the same would have been held and enjoyed by me had the assignment, sale and transfer not been made.

And I hereby covenant that I have the full right to convey the interest herein assigned, and that I have not executed and will not execute any agreement in conflict herewith, and I further covenant and agree that I will each time request is made and without undue delay, execute and deliver all such papers as may be necessary or desirable to perfect the title to said inventions or improvements, said applications and said Letters Patent(s) to said Assignee, its successors, assigns, nominees or legal representatives, and I agree to communicate to said Assignee , or to its nominee all known facts respecting said

Page 1 of 3    Initials *[handwritten]*    Date: 3/17/06

**EXHIBIT A**

Howard Shapiro v Secant Pharma

inventions or improvements, said applications and said Letters Patent(s) to testify in any legal proceedings, to sign all lawful papers, to execute all disclaimers and divisionals, continuing, re-issue and foreign applications, to make all rightful oaths and generally do everything possible to aid said Assignee, its successors, assigns, nominees and legal representatives to obtain and enforce for its or their own benefit proper patent protection for said inventions or improvements, said applications, and said Letters Patent(s) in any and all countries.

And, I hereby authorize and request the Commissioner of Patents and Trademarks of Mexico and any official of any country or countries foreign to Mexico whose duty it is to issue patents of applications as aforesaid, to issue to said Assignee as an Assignee of the entire undivided interest (one-hundred percent), any and all Letters Patent(s) for said inventions or improvements including any and all Letters Patent(s) which either have or may be issued and granted on or as a result of aforesaid applications, in accordance with the terms of this assignment.

Signature page Follows:

Page 2 of 3    Initials _[signature]_    Date: 3/17/06

**EXHIBIT A**

Howard Shapiro v Secant Pharma

IN WITNESS WHEREOF, I have hereunto set my hand and seal.

For Assignor        _Howard K. Shapiro_ (L.S.)

Howard K. Shapiro, Ph.D.

For Assignee        _Dale M. Lombardi_ (W.S.)

Dale M. Lombardi
Chief Executive Officer
Secant Pharma, LLC

_____ :

SS

County of _Philadelphia_ :

On this _17_ day of _March_ 2006, before me personally came the above named _Howard K Shapiro_ and _Dale M Lombardi_ to me personally known and known to me to be the same individuals who executed the foregoing assignment, and who acknowledged to me that execution of the same was of each person's own free will for the use and purposes therein set forth.

_Mary Ann Clarke_
Notary Public        (seal)

NOTARIAL SEAL
Mary Ann Clarke, Notary Public
Philadelphia, Philadelphia County
My commission expires November 14, 2007

Page 3 of 3    Initials _____    Date: _3/17/06_

# EXHIBIT  A
Howard Shapiro v Secant Pharma
## ASSIGNMENT

**WHEREAS,** I Howard K. Shapiro herein after referred to as the Assignor, residing at 214 Price Avenue, Apt. F-32, Narberth, Pennsylvania 19072, USA, am the inventor of certain inventions or improvements for which I made application(s) for Letters Patent(s) of the European Patent Office, identified as follows:

> **European Patent No. EP 0-604-641 B1** entitled "Use Of A Combination Containing An Amine Or Amine-Related Derivative Of Benzoic Acid And An Amino-Polysaccharide In The Manufacture Of A Medicament For The Treatment Of Inflammatory Diseases", issued on 2002-20-03; and,

> **European Patent No. EP 0-572-560 B1** entitled "Use Of Pharmaceutical Compounds In The Treatment Of Symptoms Of Disorders Related To Neurological Diseases And Etiologically Related Symptomology", issued 2003-29-01.

WHEREAS, Secant Pharma, LLC, hereinafter referred to as the Assignee is desirous of obtaining the entire interest (one hundred percent) in and to the said inventions or improvements and in and to said applications, and in, and to and under any and all Letters Patent(s) which either have or may be granted on or as a result thereof in any and all countries:

NOW, THEREFORE for and in consideration of the sum of One Dollar ($1.00) to me in hand paid by said Assignee, and other good and valuable consideration the receipt of which is hereby acknowledged, I, the said Assignor have sold, assigned, transferred and set over and by these presents do hereby sell, assign, transfer and set over to assignee a one-hundred percent (100%) undivided interest in and to said inventions or improvements and said patents, applications and any and all continuations, divisionals and renewals of and substitutes for said patents, inventions, improvements, applications, and in, to and under any and all Letters Patent (s) which either have or may be granted on or as a result thereof in the European Patent Office and any and all other countries, and any re-issue or re-issues or extension or extensions of said Letters Patent(s), and assign to and authorize said Assignee to file in my name applications for Letters Patent(s) in all countries, the same to be held and enjoyed by said Assignee, its successors, assigns, nominees or legal representatives, to the full end of term or terms for which said Letters Patent(s) respectively have or may be granted, re-issued or extended, as fully and entirely as the same would have been held and enjoyed by me had the assignment, sale and transfer not been made.

And I hereby covenant that I have the full right to convey the interest herein assigned, and that I have not executed and will not execute any agreement in conflict herewith, and I further covenant and agree that I will each time request is made and without undue delay, execute and deliver all such papers as may be necessary or desirable to perfect the title to said inventions or improvements, said applications and said Letters Patent(s) to said Assignee, its successors, assigns, nominees or legal representatives,

Page 1 of 3    Initials _Owl / HK_ ——    Date: _3/17/06_

**EXHIBIT A**

Howard Shapiro v Secant Pharma

and I agree to communicate to said Assignee , or to its nominee all known facts respecting said inventions or improvements, said applications and said Letters Patent(s)  to testify in any legal proceedings, to sign all lawful papers, to execute all disclaimers and divisionals, continuing, re-issue and foreign applications, to make all rightful oaths and generally do everything possible to aid said Assignee, its successors, assigns, nominees and legal representatives to obtain and enforce for its or their own benefit proper patent protection for said inventions or improvements, said applications, and said Letters Patent(s) in any and all countries.

And, I hereby authorize and request the Commissioner of Patents and Trademarks of the European Patent Office and any official of any country or countries foreign to the European Patent Office whose duty it is to issue patents of applications as aforesaid, to issue to said Assignee as an Assignee of the entire undivided interest (one-hundred percent), any and all Letters Patent(s) for said inventions or improvements including any and all Letters Patent(s) which either have or may be issued and granted on or as a result of aforesaid applications, in accordance with the terms of this assignment.

Signature page Follows:

**EXHIBIT  A**

Howard Shapiro v Secant Pharma

IN WITNESS WHEREOF, I have hereunto set my hand and seal.

For Assignor _____ (L.S.)

Howard K. Shapiro, Ph.D.

For Assignee _____ (W.S.)

Dale M. Lombardi

Chief Executive Officer

Secant Pharma, LLC

_____ :

County of _Philadelphia_ : SS

On this ___17___ day of ___March___ 2006, before me personally came the above named _Howard K Shapiro_ and _Dale M Lombardi_ to me personally known and known to me to be the same individuals who executed the foregoing assignment, and who acknowledged to me that execution of the same was of each person's own free will for the use and purposes therein set forth.

_____

Notary Public                    (seal)

NOTARIAL SEAL
Mary Ann Clarke, Notary Public
Philadelphia, Philadelphia County
My commission expires November 14, 2007

Page 3 of 3    Initials _____    Date: 3/17/06

# EXHIBIT A

Howard Shapiro v Secant Pharma

## ASSIGNMENT

**WHEREAS,** I Howard K. Shapiro herein after referred to as the Assignor, residing at 214 Price Avenue, Apt. F-32, Narberth, Pennsylvania 19072, USA, am the inventor of certain inventions or improvements for which I made application(s) for Letters Patent(s) of Canada, identified as follows:

> **Serial No. CA 2,104,594** entitled "Use Of Pharmaceutical Compounds In The Treatment Of Symptoms Of Disorders Related To Neurological Diseases And Etiologically Related Symptomology" issued on 2004-11-05; and

> **Serial No. CA 2,120,367** entitled "Compositions And Use Of Pharmaceutical Compositions In The Treatment Of Symptoms Of Disorders Related To Chronic Inflammatory Diseases And Etiologically Related Symptomology" issued on 2004-11-05 ; and

> **Serial No. CA 2190107** application entitled "Compositions For Treatment Of Chronic Inflammatory Diseases" filed on 1995-11-05;

> **Serial No. CA 2166383** application entitled "Pharmaceutical Compositions And Use Thereof For Treatment Of Neurological Diseases And Etiologically Related Symptomology

WHEREAS, Secant Pharma, LLC, hereinafter referred to as the Assignee is desirous of obtaining the entire interest (one hundred percent) in and to the said inventions or improvements and in and to said applications, and in, and to and under any and all Letters Patent(s) which either have or may be granted on or as a result thereof in any and all countries:

NOW, THEREFORE for and in consideration of the sum of One Dollar ($1.00) to me in hand paid by said Assignee, and other good and valuable consideration the receipt of which is hereby acknowledged, I, the said Assignor have sold, assigned, transferred and set over and by these presents do hereby sell, assign, transfer and set over to assignee a one-hundred percent (100%) undivided interest in and to said inventions or improvements and said patents, applications and any and all continuations, divisionals and renewals of and substitutes for said patents, inventions, improvements, applications, and in, to and under any and all Letters Patent (s) which either have or may be granted on or as a result thereof in Canada and any and all other countries, and any re-issue or re-issues or extension or extensions of said Letters Patent(s), and assign to and authorize said Assignee to file in my name applications for Letters Patent(s) in all countries, the same to be held and enjoyed by said Assignee, its successors, assigns, nominees or legal representatives, to the full end of term or terms for which said Letters Patent(s) respectively have or may be granted, re-issued or extended, as fully and entirely as the same would have been held and enjoyed by me had the assignment, sale and transfer not been made.

Page 1 of 3   Initials _____   Date: 3/17/06

Howard Shapiro v Secant Pharma

And I hereby covenant that I have the full right to convey the interest herein assigned, and that I have not executed and will not execute any agreement in conflict herewith, and I further covenant and agree that I will each time request is made and without undue delay, execute and deliver all such papers as may be necessary or desirable to perfect the title to said inventions or improvements, said applications and said Letters Patent(s) to said Assignee, its successors, assigns, nominees or legal representatives, and I agree to communicate to said Assignee , or to its nominee all known facts respecting said inventions or improvements, said applications and said Letters Patent(s)  to testify in any legal proceedings, to sign all lawful papers, to execute all disclaimers and divisionals, continuing, re-issue and foreign applications, to make all rightful oaths and generally do everything possible to aid said Assignee, its successors, assigns, nominees and legal representatives to obtain and enforce for its or their own benefit proper patent protection for said inventions or improvements, said applications, and said Letters Patent(s) in any and all countries.

And, I hereby authorize and request the Commissioner of Patents and Trademarks of Canada and any official of any country or countries foreign to the Canada whose duty it is to issue patents of applications as aforesaid, to issue to said Assignee as an Assignee of the entire undivided interest (one-hundred percent), any and all Letters Patent(s) for said inventions or improvements including any and all Letters Patent(s) which either have or may be issued and granted on or as a result of aforesaid applications, in accordance with the terms of this assignment.

Signature page Follows:

Page 2 of 3    Initials _____    Date: 3/17/06

# EXHIBIT A
Howard Shapiro v Secant Pharma

IN WITNESS WHEREOF, I have hereunto set my hand and seal.

For Assignor _____ (L.S.)
Howard K. Shapiro, Ph.D.

For Assignee _____ (W.S.)
Dale M. Lombardi
Chief Executive Officer
Secant Pharma, LLC

_____ :

County of _Philadelphia_ :   SS

On this __17__ day of __March__ 2006, before me personally came the above named _Howard K Shapiro_ and _Dale M Lombardi_ to me personally known and known to me to be the same individuals who executed the foregoing assignment, and who acknowledged to me that execution of the same was of each person's own free will for the use and purposes therein set forth.

_____
Notary Public          (seal)

NOTARIAL SEAL
Mary Ann Clarke, Notary Public
Philadelphia, Philadelphia County
My commission expires November 14, 2007

Page 3 of 3    Initials ___  ___    Date: 3/17/06

# EXHIBIT  A
Howard Shapiro v Secant Pharma
## ASSIGNMENT

**WHEREAS,** I Howard K. Shapiro herein after referred to as the Assignor, residing at 214 Price Avenue, Apt. F-32, Narberth, Pennsylvania 19072, USA, am the inventor of certain inventions or improvements for which I made application(s) for Letters Patent(s) of Australia, identified as follows:

**Australian Standard Patent No. 668682** entitled "Use Of Pharmaceutical Compounds In The Treatment Of Symptoms Of Disorders Related To Neurological Diseases And Etiologically Related Symptomology", issued on 1996-04-09; and,

**Australian Standard Patent No. 674330** entitled "Compositions Containing Amine And Amine-Related Derivatives Of Benzoic Acid And Uses Therefore Including Treating Inflammatory Diseases", issued on 1997-09-04; and,

**Australian Standard Patent No. 692454** entitled "Pharmaceutical Compositions And Use Thereof For Treatment Of Neurological Diseases And Etiologically Related Symptomology", issued on 1998-11-06; and,

**Australian Standard Patent No. 698881** entitled "Compositions For Treatment Of Chronic Inflammatory Diseases", issued on 1999-25-02; and,

WHEREAS, Secant Pharma, LLC, hereinafter referred to as the Assignee is desirous of obtaining the entire interest (one hundred percent) in and to the said inventions or improvements and in and to said applications, and in, and to and under any and all Letters Patent(s) which either have or may be granted on or as a result thereof in any and all countries:

NOW, THEREFORE for and in consideration of the sum of One Dollar ($1.00) to me in hand paid by said Assignee, and other good and valuable consideration the receipt of which is hereby acknowledged, I, the said Assignor have sold, assigned, transferred and set over and by these presents do hereby sell, assign, transfer and set over to assignee a one-hundred percent (100%) undivided interest in and to said inventions or improvements and said patents, applications and any and all continuations, divisionals and renewals of and substitutes for said patents, inventions, improvements, applications, and in, to and under any and all Letters Patent (s) which either have or may be granted on or as a result thereof in Australia and any and all other countries, and any re-issue or re-issues or extension or extensions of said Letters Patent(s), and assign to and authorize said Assignee to file in my name applications for Letters Patent(s) in all countries, the same to be held and enjoyed by said Assignee, its successors, assigns, nominees or legal representatives, to the full end of term or terms for which said Letters Patent(s) respectively have or may be granted, re-issued or extended, as fully and entirely as the same would have been held and enjoyed by me had the assignment, sale and transfer not been made.

Page 1 of 3    Initials _____    Date: 3/17/0 9

**EXHIBIT A**

Howard Shapiro v Secant Pharma

And I hereby covenant that I have the full right to convey the interest herein assigned, and that I have not executed and will not execute and agreement in conflict herewith, and I further covenant and agree that I will each time request is made and without undue delay, execute and deliver all such papers as may be necessary or desirable to perfect the title to said inventions or improvements, said applications and said Letters Patent(s) to said Assignee, its successors, assigns, nominees or legal representatives, and I agree to communicate to said Assignee , or to its nominee all known facts respecting said inventions or improvements, said applications and said Letters Patent(s)  to testify in any legal proceedings, to sign all lawful papers, to execute all disclaimers and divisionals, continuing, re-issue and foreign applications, to make all rightful oaths and generally do everything possible to aid said Assignee, its successors, assigns, nominees and legal representatives to obtain and enforce for its or their own benefit proper patent protection for said inventions or improvements, said applications, and said Letters Patent(s) in any and all countries.

And, I hereby authorize and request the Commissioner of Patents and Trademarks of Australia and any official of any country or countries foreign to the Australia whose duty it is to issue patents of applications as aforesaid, to issue to said Assignee as an Assignee of the entire undivided interest (one-hundred percent), any and all Letters Patent(s) for said inventions or improvements including any and all Letters Patent(s) which either have or may be issued and granted on or as a result of aforesaid applications, in accordance with the terms of this assignment.

Signature page Follows:

Initials _Paul_ _NK_ _____   Date: _3/17/0 6_

# EXHIBIT A

Howard Shapiro v Secant Pharma

IN WITNESS WHEREOF, I have hereunto set my hand and seal.

For Assignor        _____ (L.S.)

Howard K. Shapiro, Ph.D.

For Assignee        _____ (W.S.)

Dale M. Lombardi
Chief Executive Officer
Secant Pharma, LLC

_____ :

County of _Philadelphia_ :    SS

On this _17_ day of _March_ , 2006, before me personally came the above named _Howard K Shapiro_ and _Dale M Lombardi_ to me personally known and known to me to be the same individuals who executed the foregoing assignment, and who acknowledged to me that execution of the same was of each person's own free will for the use and purposes therein set forth.

_____
Notary Public        (seal)

```
NOTARIAL SEAL
Mary Ann Clarke, Notary Public
Philadelphia, Philadelphia County
My commission expires November 14, 2007
```

Page 3 of 3   Initials _____   Date: 3/17/04