Howard K. Shapiro, Ph.D.

**EXHIBIT AA**

Howard Shapiro v Secant Pharma

From: "Howard K. Shapiro, Ph.D." <hshapiro@secantpharma.com>
To: "Dale Lombardi" <dlombardi@secantpharma.com>; <prfreadr@gmail.com>; <jharra@nyc.rr.com>; <bharra@abcmgmt.net>; <docwriter29@yahoo.com>
Cc: <rdirocco@secantpharma.com>; <mmistretta@secantpharma.com>; <dmurray@secantpharma.com>
Sent: Monday, March 09, 2009 2:24 PM
Subject: Re: termination of my business agreement with Secant

Dear Dale:

My present response to your communication of March 8, 2009 consists of the following two sections.

(1) I disagree with several of the statements you made. For example, you stated "As a **"non-voting"** manager member of Secant there is no specific obligation that any information needs to be made available to you unless we choose to do so…By the way, if you check the Operating Agreement carefully, there is no language that says that the voting members (Rich and I) have to release company information at your request." In making this statement, you have attested once again to your unwillingness to provide me with SECANT documentation that I have legitimately requested. By inference, you imply that I am so ignorant that I do not know the legal difference between a voting member and a non-voting member. More "smoke and mirrors" on your part. You seem to be ignorant of Schedule I of the 7-28-2007 Amended and Restated Limited Liability Company Operating Agreement of Secant Pharma, LLC, which plainly states that **I am a voting Member**. Since in fact it was you who wrote and co-signed the 7-28-2007 agreement, it was in fact you who upgraded me from being a non-voting member to being a voting member. Also, in your 3-8-09 email you announced that now there are TWO classes of SECANT Managers, those entitled to all company information and those entitled to almost no information. This definition of two different classes of managers only exists in your mind.

Your 3-8-09 assertions that I am only a non-voting Member of SECANT and that I am some kind of second-class Manager are yet additional acts on your part which constitute substantive violations of your contractual obligations.

And while I am on the subject of the 7-28-2007 Amended and Restated Limited Liability Company Operating Agreement of Secant Pharma, LLC, I would also like to draw your attention to Section 11.2. This Section reads as follows.

11.2 Books and Records. Dale Lombardi is hereby designated as the Manager to be responsible for the maintenance of the Company's books and records. The Company's books and records shall at all times be maintained in the principal office of the Company, and shall be open to the inspection and examination at reasonable times by any Member or his duly authorized representative.

In particular, I bring your attention to the statement "…*and shall be open to the inspection and examination at reasonable times by any Member or his duly authorized representative.*" That statement says that *any* Member, voting or non-voting, shall have unimpeded access to *all* Company records upon request. What part of that did you not understand?

You are not authorized to re-write the terms of your contractual obligations to me by personal fiat. I note your comments in your 3-8-09 email where you stated "At that time, in exchange for the additional equity you received in Secant (the additional 8.5% to bring you up to 15.5%) you agreed to accept a lower royalty of 10% and would no longer request patent reimbursement of the sunk expenses of $316,000…I can only speculate as to why you failed to mention that you agreed to such terms (10% royalty) in your previous email and of course you knew all along that these terms were the ones we were operating under since July 2007. That is why all of the money you have been sent to date since July 2007 is based on the 10% royalty rate. What is more startling and disturbing is that you believe that I personally would only give you 10% if you

4/13/2009

were owed 20%."

**EXHIBIT AA**

Howard Shapiro v Secant Pharma

However, in the statement quoted immediately above, you failed to state precisely what section(s) of the 7-28-2007 Amended and Restated Limited Liability Company Operating Agreement of Secant Pharma, LLC support your assertion. <u>In fact, there is no such supporting statement therein</u>. I am instructing you now that, if you wish to continue to assert that since 7-28-2007 that I am only due royalty payments at a rate of ten percent, than you should <u>quote me the section</u> that supports such a claim of yours.

In your 3-8-09 email to me, you repeatedly referred to your numerous telephone calls to me. Yet, (1) your unscheduled telephone calls to me left no record of what you actually said and (2) your numerous telephone calls to me were not that numerous. In fact, during 2007 and 2008 I believe you phoned me about one a month.

In your 3-8-09 email to me, you also referred to the numerous emails you sent me. Yet, the record of emails from you is dominated by copies of emails sent to other people to schedule conference telephone calls where I was not a party and to schedule meetings that I was not invited to attend. Your reference to having previously provided me with information I never asked for does not forgive your act of denying me particular information that I did request.

For several of your other comments contained within your email of 3-8-09, I am not providing itemized responses at this time. At present, doing so would only serve to further waste my time and unnecessarily draw me away from other professional activities and obligations. However, I am reserving the right to further respond to particular statements in your 3-8-09 email in the future, should it be necessary for me to do so.

(2) I am disconcerted that, for all of your carefully drafted comments of your 3-9-09 email communication, you still refused to answer my most basic question. I will state the question once again.

In the event that (1) you choose to accept my terms of departure from SECANT and you in fact provide me with a complete set of termination of business agreements [including new patent assignment documents that re-assign ownership of the IP that I assigned to SECANT on 3-17-06, and either (a) full and complete legal documentation that the name of SylvanLabs LLC has been changed so as to not use or infer the use of the term "SylvanLab" or (b) full and complete legal documentation that SylvanLabs LLC has been disincorporated as of the date of re-assignment back to me of the IP that were transferred from my ownership to SECANT on March 17, 2006], (2) you provide me with a check in the full amount corresponding to my twenty percent of all royalties received from TRx/Zylera from the fourth quarter of 2007 through the third quarter of 2008 (as well as a complete set of escrow bank account statements covering that period), (3) you provide me with a personally signed written statement attesting that by no later than March 31, 2009 you will provide me with a copy of my IRS Form 1099 for tax year 2008 and a detailed statement that defines and itemizes the income that was provided to me, (4) you provide me with a personally signed written statement attesting that by no later than January 31, 2010 you will provide me with a check in the full amount corresponding to my twenty percent of all royalties received from TRx/Zylera from the fourth quarter of 2008 through the first quarter of 2009 (as well as a complete set of escrow bank account statements covering that period), and (5) you provide me with a personally signed written statement attesting that by no later than January 31, 2010 you will provide me with a copy of my IRS Form 1099 for tax year 2009 and a detailed statement that defines and itemizes the income that was provided to me, than I am willing to forego (i.e., cease and desist from further inquiry related to) any further request for any other bank statement copies as noted above for SECANT, Enteron Therapeutics LLC, SylvanLabs LLC, the SECANT/TRx-Zylera escrow account and any other bank account for SECANT or an affiliate thereof and I am willing to abandon further consideration of SECANT's past failures to provide me with full payment of royalties due to me in 2007 and 2008 as described above. If you provide me with the five categories of items listed immediately above, I will consider my interactions with SECANT to be terminated.

As per my rights under Section 16.2.1 of my May 3, 2006 Business and Revenue Share Agreement with SECANT, I am presently informing you once again that it is my decision that the licenses with TRx/Zylera,

4/13/2009

Altheus Therapeutics Inc. and M & M Veterinary Health Care, LLC SHALL BE TERMINATED, NOT TRANSFERRED TO ME.

I also note that the documents involved in the process of terminating my interactions with SECANT should have the required number of signatory parties.

Are you willing to accept these terms and conditions or not?

I am disconcerted on the point that you refuse to provide me with a simple and direct answer. Rather than simply provide me with a direct answer, first in your email communication of 2-24-09 you suggested that I accept your proposed transfer of ownership of SylvanLabs, LLC. I regard this as a kind of "piñata option," since I would not really know the contents of what I agreed to own until it was too late to back out of the deal. Then in your email yesterday (i.e., 3-8-09), you mysteriously instructed me to agree to personally meet with you. So, you deliberately proposed a form of communication whereby there would be no legal record, like your earlier telephone calls. But in my view, it is too late for informal, off-the-record communications. I am now in the formal process of negotiating the termination of my business agreement with SECANT and everything is a matter of legal record.

I believe that the comments contained within your email communication of 3-8-09 only serve to better define and support my grounds for terminating my business agreement with SECANT. At this point, you should understand both my opinions and my legal rights perfectly. I await your direct answer to whether you will accept my terms of departure as stated once again above.

Regards, Howard K. Shapiro, Ph.D.

----- Original Message -----
From: Dale Lombardi
To: 'Howard K. Shapiro, Ph.D.' ; prfreadr@gmail.com ; jharra@nyc.rr.com ; bharra@abcmgmt.net ; docwriter29@yahoo.com
Cc: rdirocco@secantpharma.com ; mmistretta@secantpharma.com ; dmurray@secantpharma.com
Sent: Sunday, March 08, 2009 2:43 PM
Subject: RE: termination of my business agreement with Secant

Howard,

Thanks again for your detailed email. Let me respond to some of the points you listed so you understand my perceptions and where I am coming from. I will not address all of the points you listed because some of them were repetitious and are fully dealt with in the responses below.

First, you offered the following language from our agreement as a basis for you requesting information. *"Each of the parties will from time to time at the other's reasonable request and expense, and without further consideration, execute and deliver such other documents and take such further action as the other party may reasonably require to more effectively evidence, perfect, or complete any matter provided for herein."* However, you failed to realize that any request(s) for information based on that language is solely to be focused on information related to your agreement. It does not now, nor has it ever meant that you have a right to any information about the operations/activities of Secant as a whole or even SylvanLabs as a whole. Your agreement allows for you to get information related to the commercialization of your technology, and in that regard, we have certainly provided you the full scope of that information all along, whether it was through emails, written documentation or phone calls. The fact remains; you know what we know concerning your IP and technology(s). And, all of what we have done to date satisfies our obligations. Even though we did provide other information, we were never under any obligation to give you information that is unrelated to your technology, and that means all of the rest of the dealings of Secant, Enteron or SylvanLabs with other parties or companies.

Your second point: *As regards your verbal statement on 2-6-09 that you will not accept USPS mail letters*

4/13/2009